UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

      Plaintiff,

      - v. -

THE M/Y *AMADEA*, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,

      Defendant-*In-Rem*.

23 Civ. 9304 (DEH)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES OF AMERICA'S MOTION FOR INTERLOCUTORY SALE

JENNIFER JUDE
MICHAEL LOCKARD
Assistant United States Attorneys

JOSHUA L. SOHN
Trial Attorney,
Money Laundering and Asset
Recovery Section

YIFEI ZHENG
Trial Attorney,
Counterintelligence and Export
Control Section

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007

MARGARET A. MOESER
Acting Chief
Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

JENNIFER KENNEDY GELLIE
Acting Chief
Counterintelligence and Export
Control Section, National Security
Division
U.S. Department of Justice

Plaintiff United States of America (the "Government"), by its attorneys, Damian Williams, United States Attorney for the Southern District of New York, Margaret A. Moeser, Acting Chief of the Money Laundering and Asset Recovery Section, and Jennifer Kennedy Gellie, Acting Chief of the Counterintelligence and Export Control Section, respectfully submits this motion for interlocutory sale pursuant to Rule G(7)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## PRELIMINARY STATEMENT

The Government respectfully requests that the Court order interlocutory sale of the Defendant Asset, a 106-meter superyacht known as the M/Y *Amadea*, whose upkeep is costing the Government roughly $600,000 per month. Such a monthly expenditure easily qualifies as an "excessive" cost that justifies interlocutory sale under Supplemental Rule G(7)(b)(i)(B). Alternatively, interlocutory sale is justified under Rule G(7)(b)(i)(D), which allows sale for "other good cause." Even if the monthly carrying costs for the *Amadea* are not found to be "excessive" (which they are), they certainly are *significant* and thus pose a drain on the public fisc sufficient to establish good cause. Moreover, the other affected parties—Claimants Khudainatov and Millemarin—can raise no valid objection to interlocutory sale, given that they recently told another federal court that they have always viewed the *Amadea* as an investment property that they wanted to sell. When the Government is bearing major carrying costs, Claimants are unwilling to pay those costs, the Government wishes to sell the vessel to end those costs, and Claimants themselves stated that they built the *Amadea* to be sold, good cause exists for a prompt interlocutory sale.

**BACKGROUND**

This is a civil forfeiture case against the M/Y *Amadea*, a 106-meter superyacht. The Government alleges that the *Amadea* is beneficially owned by sanctioned Russian oligarch Suleiman Kerimov and has been maintained with payments that went to U.S. companies or passed through the U.S. financial system, in violation of the sanctions against Kerimov and his property. *See* ECF No. 1.

In April 2022, while the *Amadea* was docked in Fiji, the Government obtained a seizure warrant for the vessel from a U.S. Magistrate Judge. Declaration of Joshua L. Sohn ("Sohn Decl.") ¶ 3. After contested litigation in Fiji, the Fijian courts domesticated the seizure warrant in June 2022 and the Government sailed the *Amadea* to the United States. *Id.* The Government has since borne the costs to maintain the *Amadea*. Declaration of Jennifer Crane ("Crane Decl.") ¶¶ 3-5.[1] Shortly after the vessel reached the United States, the Government was approached by counsel for Eduard Khudainatov and his alleged holding company Millemarin Investments Ltd. (together, "Claimants"), the current claimants in this case. Sohn Decl. ¶ 3. In a series of presentations in 2022 and early 2023, counsel for Claimants sought to convince the Government that the yacht was not beneficially owned by Kerimov but rather was owned by Claimants. *Id.*

By early summer 2023, the Government informed Claimants that it was unpersuaded by the evidence they presented in light of the contrary evidence and intended to move forward with a forfeiture case against the *Amadea*. *Id.* The parties then conducted several months' worth of settlement negotiations, in which they explored whether there could be an agreed resolution of

---

[1] U.S. Marshals Service declarations are regularly deemed sufficient to evidence costs for purposes of interlocutory sale. *See, e.g., United States v. One 2005 Lagoon 440 Sailing Catamaran*, No. CV 13-9262, 2017 WL 10573808, at *1 (C.D. Cal. Sept. 22, 2017).

this matter to avoid contested litigation. *Id.* The parties conducted these negotiations under cover of a litigation standstill agreement, under which both sides agreed not to file legal actions while negotiations were ongoing. *Id.* On Friday, October 20, 2023, Claimants' counsel informed the Government that no resolution was possible and that they would end settlement discussions. *Id.* The Government filed this civil forfeiture case the next business day. ECF No. 1.

Around the same time, Claimants filed an action in the U.S. District Court for the Southern District of California seeking to take possession of the *Amadea* pursuant to Federal Rule of Criminal Procedure 41(g). *Khudainatov, et al. v. United States*, No. 3:23-cv-1946, ECF No. 1 (S.D. Cal. Oct. 22, 2023). In their papers in support of this request, Claimants represented that Khudainatov built the *Amadea* in large part "because of the prospect of making large profits from selling the vessel," that he has been trying to sell it since 2018, and that in mid-2021 he "continued to push his brokers to sell the Amadea." *Id.*, ECF No. 1-2 at 7-8. The Government opposed Claimants' motion and the Court denied it based on lack of jurisdiction and improper venue and dismissed Claimants' case on November 13, 2023, while upbraiding Claimants for their "apparent gamesmanship" in bringing the case at all. *Id.*, ECF No. 13.

Meanwhile, in the instant civil forfeiture action, by the end of the claims period in late December 2023, Claimants had filed the only claim. ECF No. 9. In the last several weeks, the Government and Claimants have met and conferred about the possibility that Claimants would agree to bear the carrying costs for the vessel going forward, which could avoid the need for an interlocutory sale. *See* ECF No. 12 at 3; ECF No. 18 at 1; ECF No. No. 31. However, Claimants did not agree to pay these costs and took the position that they are unwilling to further discuss the issue unless and until this case passes the motion-to-dismiss stage. Sohn Decl. ¶ 4; *see* ECF

3

No. 31. As a result, the Government is currently facing, at minimum, several months of paying approximately $600,000 to maintain the *Amadea*. *See* Crane Decl. ¶¶ 3-4, 6.

## ARGUMENT

Supplemental Rule G(7)(b)(i) states that "[o]n motion by a party or a person having custody of the property, the court may order all or part of the property sold if" one of four enumerated conditions is met. This rule gives "considerable discretion" to the Court in deciding whether to allow an interlocutory sale and "what factors to consider, and what weight to give them." *U.S. v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009).

### A. Interlocutory Sale Is Warranted to Avoid "Excessive" Carrying Costs under Rule G(7)(b)(i)(B)

Supplemental Rule G(7)(b)(i)(B) allows interlocutory sale if "the expense of keeping the property is excessive or is disproportionate to its fair market value." This rule thus sets a disjunctive test: interlocutory sale may be ordered if the expense of keeping the property is "disproportionate to its fair market value" or if this expense is simply "excessive." [2] Here, the $600,000 monthly cost of maintaining the *Amadea* is "excessive."

While there is no bright-line test for determining when carrying costs for a vessel are "excessive," caselaw precedent is instructive. To the Government's knowledge, the most analogous precedent is *United States v. M/Y Galactica Star*, No. 4:17-cv-02166 (S.D. Tex.). Like

---

[2] Unlike the "disproportionate" prong of Rule G(7)(b)(i)(B), the "excessive" prong does not weigh the carrying costs against the value of the *res*. *See, e.g.*, *United States v. M/Y Galactica Star*, No. 4:17-cv-02166, 3.20.19 Minute Order (S.D. Tex. March 20, 2019) (ordering interlocutory sale based on "excessive" costs without comparing them to the value of the vessel); *accord United States v. Woodland Dream*, No. 5:13-CV-279-JMH, 2013 WL 5775298, at *5 (E.D. Ky. Oct. 24, 2013) ("while the testimony may not show that the costs of maintaining Woodland Dream are 'disproportionate to her fair market value,' the specific day-to-day maintenance requirements of Woodland Dream may cause the costs to be considered 'excessive'.").

4

this case, *Galactica Star* was a civil forfeiture action over a 65-meter luxury superyacht under U.S. custody. The *Galactica Star* court ordered interlocutory sale of the vessel because its continued upkeep was costing the public $170,000 per month, which the Court held was "excessive" under Rule G(7)(b)(i)(B). *See Galactica Star*, 3.20.19 Minute Order ("The Court finds that continued possession of the Galactica Star would result in excessive costs for maintenance and storage, estimated at around $170,000 per month. Supp. R. G(7)(b)(i)(B) . . . The Government's motion for interlocutory sale is GRANTED."). If the $170,000-per-month carrying costs in *Galactica Star* were "excessive" under Rule G(7)(b)(i)(B), then the $600,000-per-month carrying costs in this case are "excessive" as well.

Beyond *Galactica Star*, there are numerous other cases in which courts ordered interlocutory sale of vessels based on "excessive" carrying costs even when such costs were far below the $600,000 per month that the Government is currently paying to maintain the *Amadea*. *See, e.g.*, *Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1342 (5th Cir. 1981) (interlocutory sale justified where "excessive" costs totaled $17,000 per month, or roughly $60,000 adjusted for inflation); *Glander Int'l Bunkering Inc. v. M/V Teresa, et al.*, 586 F. Supp. 3d 189, 197-98 (E.D.N.Y. 2022) (ordering interlocutory sale of barge and tugboat where combined carrying costs were roughly $47,000 per month); *Waterfront Newport Beach LLC v. P/V Royal Princess*, No. 8:20-CV-01420, 2021 WL 5862167, at *2 (C.D. Cal. Aug. 18, 2021) (granting interlocutory sale of pilot vessel based on roughly $13,000 in monthly costs); *Vineyard Bank v. M/Y Elizabeth I*, No. 08-CV-2044, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009) (interlocutory sale justified where "excessive" costs totaled "several thousand dollars per month"); *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983) (interlocutory sale justified where "excessive" costs were approximately

5

$13,800 per month, or $43,000 adjusted for inflation).[3] Conversely, the Government is unaware of any case where a court *denied* interlocutory sale when carrying costs were even close to the $600,000 per month in this case.

Furthermore, the likely length of this case also weighs in favor of interlocutory sale now. While the Government intends to prosecute this case as quickly as possible, given the complex nature of this case and the fact that a large part of discovery will need to be conducted abroad, it is likely to take considerable time to get to a final resolution. *See* ECF No. 12 at 1-2 (joint letter proposing deadlines "longer than the suggested deadlines" because of the "transnational" nature of the cases and the need to use foreign discovery tools). That the approximately $600,000 per month will, without interlocutory sale, recur for many months (and possibly longer) further supports a finding that such costs are "excessive."[4] *See United States v. 2003 BMW X5 SUV*, Civil No. WDQ-14-0912, 2015 WL 845661, at *1 (D. Md. Feb. 24, 2015) (granting interlocutory sale, noting that claimant was abroad which "may prolong litigation and increase costs"); *United States v. Hailey*, No. 11-CR-0540-WDQ, 2011 WL 6202787, at *1 (D. Md. Dec. 8, 2011) (granting interlocutory sale where "[t]his case is unlikely to go to trial for several months, at the

---

[3] In these private admiralty cases, interlocutory sale was conducted under Rule E(9)(a) instead of Rule G(7)(b), but both rules authorize interlocutory sale based on "excessive" carrying costs.

[4] For this same reason, the Court should reject Claimants' unsupported argument that interlocutory sale is "premature" and should not be considered until after this case passes the motion-to-dismiss stage. *See* ECF No. 30 at 1. Such an argument, if accepted, would saddle the Government with many months of additional costs, as the motion-to-dismiss stage of this case will not be over for several months at the earliest. As Claimants know, the Government plans to supersede their current motion to dismiss by filing an amended complaint by mid-February. Claimants' new motion to dismiss (should they file one) would presumably not be filed until March, would not be fully briefed until late March or early April, and might not be decided until June, July, or even later.

earliest" and sale now "instead of at the conclusion of the trial," avoids "costs that the Government would otherwise incur over the next several months").

Accordingly, the Government respectfully requests that the Court order interlocutory sale of the *Amadea* under Rule G(7)(b)(i)(B), on the grounds of "excessive" carrying costs.

### B. Interlocutory Sale Is Warranted for "Other Good Cause" under Rule G(7)(b)(i)(D)

Supplemental Rule G(7)(b)(i)(D) states that "[o]n motion by a party or a person having custody of the property, the court may order all or part of the property sold if . . . the court finds other good cause." Even if the Court were to find that the *Amadea*'s carrying costs fall short of "excessive" under Rule G(7)(b)(i)(B), the Court should nonetheless find "other good cause" for interlocutory sale under Rule G(7)(b)(i)(D). Other civil forfeiture courts have found that even modest carrying costs—such as the cost of garaging an automobile—can constitute "good cause" for interlocutory sale under Rule G(7)(b)(i)(D). *See, e.g.*, *United States v. One 2010 Dodge Ram*, No. 14-1065, 2015 WL 685208, at *1 (D. Md. Feb. 18, 2015). Here, the carrying costs for the *Amadea* are far from modest, and there is good cause to spare the Government and the public from bearing these costs.

Furthermore, the fact that Claimants have repeatedly tried to sell the *Amadea* weighs heavily in favor of finding good cause for interlocutory sale.[5] This is not a situation in which a court would be ordering sale of a precious heirloom that a claimant desperately wishes to keep for sentimental reasons. To the contrary, Claimants told the California court that they repeatedly tried to sell the *Amadea* over the past several years. Given this position, it is difficult to see how

---

[5] To the extent that Claimants argue that they are no longer seeking to sell the *Amadea*, it is the Government's position that such a change in posture is consistent with Claimants having already sold it in 2021 to Kerimov. *See* ECF No. 1 ¶¶ 27-36.

a prompt interlocutory sale could prejudice anyone. If the boat were successfully sold through interlocutory sale, then carrying costs would be ended, Claimants would have achieved a sale *that they themselves sought for years*, and this case would continue against the sales proceeds as substitute *res*. *See* Supp. R. G(7)(b)(iv). Alternatively, if Claimants have a change of heart and agree to bear carrying costs before the boat is sold, the Court could end the interlocutory sale process and remove the boat from the market.[6] Finally, if Claimant's motion to dismiss were granted with prejudice before the boat is sold, the interlocutory sale process would end on its own accord because there would no longer be any civil forfeiture case. None of these outcomes would prejudice Claimants. Thus, there is no reason not to commence interlocutory sale now.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court order interlocutory sale of the *Amadea*. If the Court grants this motion, the Government will immediately draft a detailed sales proposal, send this proposal to Claimants for their input, and submit the proposal to the Court for its review.

---

[6] Assuming, of course, that the sales process had not progressed so far that ending it abruptly would be unfair to the Government or potential buyers.

Dated: New York, New York
       February 9, 2024

                                                  Respectfully submitted,

MARGARET A. MOESER             DAMIAN WILLIAMS
Acting Chief                        United States Attorney for the
Money Laundering and Asset Recovery    Southern District of New York
Section, Criminal Division             U.S. Department of Justice
U.S. Department of Justice

                                         By: /s/ *Jennifer Jude*
By: /s/ *Joshua L. Sohn*                  JENNIFER JUDE
     JOSHUA L. SOHN                  MICHAEL LOCKARD
     Trial Attorney                       Assistant United States Attorneys
     Money Laundering and Asset        Southern District of New York
     Recovery Section

JENNIFER KENNEDY GELLIE
Acting Chief
Counterintelligence and Export Control
Section, National Security Division
U.S. Department of Justice

 By: /s/ *Yifei Zheng*
     YIFEI ZHENG
     Trial Attorney
     Counterintelligence and Export
     Control Section