UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
----------------------------:

UNITED STATES OF AMERICA,    : Case No.: 23-cv-9304
                 Plaintiff,  :
      v.                     :
THE M/Y AMADEA,a Motor Yacht:
Bearing International        :
Maritime Organization No.    :
1012531, Including All       :
Fixtures, Fittings, Manuals,:
Stocks, Stores, Inventories,: New York, New York
and Each Lifeboat, Tender    :
                 Defendants. : February 22, 2024

----------------------------:
```

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE DALE E. HO

UNITED STATES DISTRICT JUDGE


APPEARANCES:

```
For Government:      UNITED STATES ATTORNEY'S OFFICE
                     BY: Joshua Sohn, AUSA
                         Jennifer Jude, AUSA
                         Yifei Zheng, AUSA
                     86 Chambers Street - 3rd Floor
                     New York, New York 10007


For Claimant         FORD O'BRIEN LANDY
Eduard Khudainatov BY:  Renee L. Jarusinsky, Esq.
                        Adam C. Ford, Esq.
                        Bryan McCracken, Esq.
                     275 Madison Avenue
                     New York, New York 10016
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

1           THE DEPUTY CLERK:  Good afternoon,
2     everyone.  The judge has entered the conference, so
3     we can begin.
4           The Honorable Dale E. Ho presiding in the
5     matter of United States of America v. The M/Y
6     Amadea; Docket Number: 23cv9304.
7           Counsel, can you please state your names
8     for the record.
9           MR. SOHN:  Joshua Sohn for the United
10    States.
11          MS. JUDE:  You also have Jennifer Jude from
12    the United States.
13          MS. ZHENG:  Yifei Zheng for the United
14    States.
15          MS. JARUSINSKY:  Is that it for the United
16    States?
17          MS. JUDE:  Yes.
18          MS. JARUSINSKY:  Thank you.  Renee
19    Jarusinsky from Ford O'Brien Landy on behalf of
20    claimants, Eduard Khudainatov and Millemarin
21    Investments.  And with me also on the line are my
22    colleagues, Adam Ford and Bryan McCracken.
23          THE DEPUTY CLERK:  Sorry, just give me one
24    moment.
25          Counsel, this is a reminder that this is a

1    public proceeding.  Members of the public and press
2    can access the proceeding with a public dial in
3    number.
4         Please be aware that just as if you were
5    physically present in the courtroom, you are
6    prohibited from recording, rebroadcasting, or
7    disseminating any recording of court proceedings,
8    including this one.
9         Your Honor.
10         THE COURT:  Good afternoon, everyone.
11   Thank you for jumping on the phone for this
12   conference.
13         We're here on the claimant's motion for
14   expedited discovery.  There's also an application to
15   file something under seal, which hopefully we can
16   get to briefly at the end here.  But I've reviewed
17   the submissions.
18         Why don't I let the claimants give me a
19   sort of overview of their request, and then I may
20   interrupt with questions.
21         Ms. Jarusinsky, are you going to speak for
22   the claimants?
23         MS. JARUSINSKY:  Yes, I am.  Thank you,
24   Your Honor.
25         THE COURT:  Okay.

```
 1              MS. JARUSINSKY:  Your Honor, the claimants
 2    will -- intend to oppose the government's motion for
 3    interlocutory sale on the merits.  But we also
 4    intend to oppose it because there is an important
 5    preliminary issue that we've brought to Your Honor's
 6    attention that must be addressed before the
 7    interlocutory sale is decided.  And that issue is
 8    whether or not the government even has lawful
 9    possession of the Amadea to begin with.
10              After all, our view and common sense is
11    that the government shouldn't be permitted to sell
12    something it doesn't possess legally.
13              Claimants came forward with evidence
14    raising serious questions about the veracity of the
15    Bergen affidavit.  The affidavit that was used to
16    obtain the seizure of the Amadea that was filed here
17    in the United States on April 13th of 2022.
18              That affidavit is redacted, as we've
19    informed Your Honor, and we've repeatedly asked the
20    government for it, including going as far back as
21    September of 2022.  But they have up until now
22    refused to produce an unredacted copy of it.
23              So, just to be clear, the evidence that
24    we've presented about the Bergen affidavit is
25    basically the Bergen affidavit that was subsequently
```

1    filed in Fiji, which is unredacted, as well as

2    contemporaneous notes taken by crew members who were

3    interviewed by law enforcement.  And when you review

4    the contemporaneous notes, you see that none of

5    those notes say that any crew member said that

6    Kerimov owned the Amadea.  Whereas when you look at

7    the Bergen affidavit that was submitted in Fiji, it

8    states that multiple crew members stated that

9    Kerimov owns the vessel.

10          And another sort of key issue there is that

11    certain of the notes reflect the fact that some of

12    the crew members actually identified our client,

13    claimant, Mr. Khudainatov as the owner of the vessel

14    or the guy who'd always owned it.  And that

15    information is conspicuously absent from the

16    affidavit that was submitted in Fiji.

17          So these discrepancies, as well as some

18    other discrepancies about the Bergen affidavit that

19    we can see that was filed in Fiji, raise serious

20    questions as to whether the US version includes

21    materially false statements and material omissions

22    that go to the heart of probable cause, which is

23    whether Suleyman Kerimov owned the vessel and

24    whether the agent, the affiant, intentionally

25    presented misleading information to the magistrate.

1    So as a result of that --

2            THE COURT:  May I ask you -- apologies for

3    interrupting you, but just so I'm clear, is there

4    anything else that you want in addition to the

5    Bergen affidavit?  That wasn't entirely clear to me.

6    Are there underlying notes that you seek as well?

7            MS. JARUSINSKY:  Yes, Exhibit -- I believe

8    it was Exhibit L -- Yes, I believe it is Exhibit L

9    to our request -- to our first letter.  Let me see.

10   No, Exhibit K actually includes our document request

11   that we served on the government.

12           And to be clear, we are requesting the

13   unredacted Bergen affidavit.  There are three

14   requests.  One, the unredacted Bergen affidavit;

15   number two, documents that Bergen relied on when

16   writing his affidavit, which includes 302s, any sort

17   of memorialization of witness statements, whether

18   they were taken by the FBI or Fiji police or other

19   law enforcement, et cetera.  And number three, we've

20   also asked for documents that Bergen didn't

21   necessarily rely on, but were part of the

22   investigation up until that point.

23           So those were the three requests.  And

24   obviously the third request is borne from our need

25   to see if there were any other sort of material

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    omissions or misleading statements made in the

2    affidavit, which is why we want to see the

3    investigative file.

4         THE COURT:  Thank you.  That clarification

5    is helpful.  Thank you.  I appreciate it.

6         MS. JARUSINSKY:  Sure.

7         THE COURT:  I understand your Fourth

8    Amendment argument, and I have some questions for

9    both sides about that.  But before I get to that, is

10   there any other basis other than your Fourth

11   Amendment argument for which you need the discovery

12   in order to file your opposition to the motion for

13   interlocutory sale?

14        Does it rest and fall on whether or not you

15   have a potentially viable Fourth Amendment argument,

16   your request for expedited discovery?

17        MS. JARUSINSKY:  I think so.  I'm trying to

18   imagine what else it could rest and fall on.  But,

19   yes, our argument is that there are serious concerns

20   here as to whether or not the affidavit was false

21   and misleading or contained material omissions.  And

22   under *Franks*, we are entitled to make a substantial

23   preliminary showing, assuming we have the unredacted

24   affidavit as to whether or not that took place to

25   warrant a hearing.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  Okay.  Thanks.  I appreciate
 2    it.  I'm just trying to clarify your position to
 3    make sure that I understand it.
 4              MS. JARUSINSKY:  Okay.
 5              THE COURT:  With respect to the Fourth
 6    Amendment argument, how do you get around
 7    Verdugo-Urquidez?  It seems to pretty plainly say
 8    that the Fourth Amendment is inapplicable in
 9    situations where we have a non-resident alien with
10    no ties to the United States, and the search or
11    seizure happens extraterritorially.  But what am I
12    missing from your perspective?
13              MS. JARUSINSKY:  The government is still
14    required under the Fourth Amendment to seek a lawful
15    seizure and to set forth probable cause based on the
16    Fourth Amendment.
17              So the government drafted a seizure
18    warrant.  They submitted it to a magistrate judge in
19    the US.  In order to seize the vessel from Fiji, the
20    mutual assistance treaty requires a seizure warrant
21    obtained by probable cause.  Without it, the US
22    would not have been able to seize the Amadea from
23    Fiji's territorial waters or anywhere.
24              So it cannot be the case that the
25    government is exempted from lawfully establishing
```

1    probable cause simply because they're going to use

2    that seizure warrant to seize property overseas.

3         I mean, that position would mean that the

4    FBI agents can say whatever they want in an

5    affidavit, so long as they're going to operate

6    outside of the U.S.  I mean, this theory or this

7    idea would undo all of the government's mutual

8    assistance treaties, which are premised on our

9    assertion that they've been reviewed by a federal

10   judge and they've met the required standards.

11   Standards that are required under the Fourth

12   Amendment.

13        So that is our position on that, Your

14   Honor.  And I think the judges are still required to

15   determine whether or not that the agent established

16   probable cause in a lawful way.

17        THE COURT:  Thank you for that, Ms.

18   Jarusinsky.  The government also argues that --

19   well, that you're late with this request, that

20   discovery opened in January but you didn't propound

21   the request until February.  What's your response to

22   that?

23        MS. JARUSINSKY:  Your Honor, we didn't want

24   to make the request prior to knowing whether or not

25   they were going to file the motion for interlocutory

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  sale.  And they didn't tell us they were selling the

2  boat.  They mentioned an intention to do it, but we

3  wanted to wait and see what their motion would say.

4       THE COURT:  Okay.  All right.  Thank you,

5  Ms. Jarusinsky.  Is there anything that you wanted

6  to address before I cut you off that you would still

7  like to, before I turn to the government?

8       MS. JARUSINSKY:  I just want to make a

9  couple of points, your Honor, if I may.

10       I think it's very clear that the Fourth

11  Amendment applies to civil forfeiture cases.

12  There's second circuit precedent for that.  In

13  addition to that, motions for *Franks* hearings have

14  been brought and considered in civil forfeiture

15  actions.  And there must be a probable cause

16  determination even in the instance where there was

17  an arrest warrant issued.

18       So I think that, again, we're requesting

19  limited discovery on this issue, and we think it's

20  very narrowly tailored to the issue, Your Honor.

21       THE COURT:  Thank you, Ms. Jarusinsky.  One

22  quick question.  Do you have an example of where a

23  *Franks* hearing was held where in a situation like

24  this, where we have a non-resident alien and the

25  search or seizure happened extraterritorially?  I

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    know it's a very unusual circumstance, but I just

2    thought I would ask.

3         MS. JARUSINSKY:  Not off the top of my

4    head.

5         THE COURT:  Okay.

6         MS. JARUSINSKY:  Yes, of course, and I

7    understand why you would ask.  Not off the top of my

8    head.  Obviously, we do have cases where *Franks*

9    hearings were considered in the context of a civil

10   forfeiture action.

11        THE COURT:  Okay.  Thank you, Ms.

12   Jarusinsky.

13        Why don't I turn to the government, and

14   will it be Mr. Sohn?

15        MR. SOHN:  Yes, Your Honor.

16        THE COURT:  Go ahead and give me your kind

17   of overview here.  And as with Ms. Jarusinsky, I may

18   interrupt you with a question.

19        MR. SOHN:  Of course, your Honor.  We

20   believe that claimant's request for expedited

21   discovery should be denied both procedurally and

22   substantively.  Procedurally, as Your Honor pointed

23   out, discovery opened as early as January 17th.  And

24   by that day, claimants well knew that we were

25   planning to seek interlocutory sale.  In the joint

1    letter that preceded the January 17th conference, we
2    told the other side and the Court that we intend to
3    move for interlocutory sale.  If they felt like they
4    needed these documents to oppose interlocutory sale
5    by collaterally trying to attack the seizure
6    warrant, they could have and should have made those
7    requests as early as possible.

8            Instead, they sat on their hands for nearly
9    a month and then served a document request on
10   February 13th demanding production on a severely
11   expedited basis of just a week.  That's not proper.
12   Particularly when their document requests bleed
13   heavily into work product and require very careful
14   work product judgment calls.

15           As Ms. Jarusinsky said, they're effectively
16   asking for the entire FBI case file, everything that
17   Agent Bergen relied on and everything he reviewed or
18   created and didn't rely on, so they can try and find
19   supposed omissions.  That's the entire case file,
20   Your Honor.

21           So procedurally, we think it is really
22   improper for them to wait a month, then serve a
23   document request and demand severely expedited
24   discovery on an entire case file rife with work
25   product.

```
 1              THE COURT:  Thank you, Mr. Sohn.
 2              If I may, and I'll obviously let you
 3    address your additional point, but let me just ask
 4    you on this.  Are you planning on producing, and
 5    maybe you're still formulating your views here since
 6    the time to produce hasn't elapsed yet, but do you
 7    have an objection to producing the Bergen affidavit
 8    on the merits, or is it the timing of it?  Is that
 9    the only thing at issue?
10              MR. SOHN:  So on the question of what will
11    we produce, I would expect that we would produce
12    some, but not all of what they're requesting, but
13    this will require careful judgment calls.
14              THE COURT:  I understand with respect to
15    the underlying files, that sounds complicated and
16    would require a lot of judgment.  But what about the
17    Bergen affidavit itself?
18              MR. SOHN:  I suspect we would probably turn
19    over the affidavit, though I do think there are
20    pretty significant relevance concerns for some of
21    the substantive reasons why their *Franks* request
22    fails.  So, sitting here today, I don't know that I
23    can say for sure.  I think we would need to make
24    both relevance and privilege work product calls, but
25    subject to relevance objections, I suspect we would
```

1    turn over the affidavit.  But to be perfectly frank,

2    Your Honor, again, I do think we need to make

3    careful both relevance and work product calls in the

4    context of Rule 26.

5            THE COURT:  Okay.  I just wanted to see if

6    you had made any determination already about the

7    discoverability of the affidavit; and if so, if the

8    only objection here right now was as to the timing

9    of its production.  But it sounds like you're not

10   quite there yet.

11           I know I cut you off.  Please continue.

12           MR. SOHN:  Of course.

13           So, substantively claimants have said that

14   they need these materials to oppose interlocutory

15   sale by attacking the seizure warrant.  But

16   interlocutory sale is based on this court's

17   jurisdiction and the government's custody.  This

18   court, of course, has jurisdiction based on the

19   civil forfeiture complaint.  The government has

20   custody now based on the arrest warrant in rem.

21   Attacks on the 2022 seizure warrant would not

22   disturb either the complaint or the arrest warrant

23   in rem, and, thus, they could not preclude an

24   interlocutory sale order.

25           And then, furthermore, their entire

1    argument for attacking the seizure warrant, even if

2    undoing the seizure warrant could somehow unravel

3    interlocutory sale or preclude interlocutory sale,

4    which it can't, but even if it could, their entire

5    argument for attacking the seizure warrant is based

6    on alleged Fourth Amendment violations.  I believe

7    Ms. Jarusinsky admitted that.

8         But as Your Honor pointed out, the Fourth

9    Amendment does not apply when the US government

10   seizes property of a non-resident alien in a foreign

11   country.  From the very first two sentences of

12   Verdugo-Urquidez, "The question presented by this

13   case is whether the Fourth Amendment applies to the

14   search and seizure by the United States agents of

15   property that is owned by a non-resident alien and

16   located in a foreign country."  We hold that it does

17   not.

18        So our position is that Verdugo-Urquidez

19   squarely precludes the Fourth Amendment argument

20   that underpins their entire request for a *Franks*

21   hearing and associated relief.

22        Now, Ms. Jarusinsky said that we got a

23   seizure warrant.  Yes, we did.  As a matter of DOJ

24   policy, we tend to get seizure warrants when we try

25   to restrain and seize property abroad.  As a matter

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  of international comity, both unwritten and

2  potentially under treaty obligations, many of our

3  foreign counterparts expect that, but it does not

4  implicate the Fourth Amendment.  And the Fourth

5  Amendment, as Ms. Jarusinsky admitted, is the sole

6  basis for their request.  So we believe their

7  request fails out of the gate.

8          THE COURT:  Okay.  Thank you for that, Mr.

9  Sohn.

10          MS. JARUSINSKY:  Your Honor, may I respond

11  to some of those points?

12          THE COURT:  Yes.  I do have a question for

13  Mr. Sohn first.  But I will give you a chance to

14  respond, Ms. Jarusinsky.

15          Mr. Sohn, just so I understand how this all

16  unfolds, and it's probably not necessary for me to

17  resolve this discovery dispute, but just so that I

18  understand how all of this works.  If ultimately,

19  and I don't have an opposition yet on the motion for

20  interlocutory sale, but let's say I grant your

21  motion for interlocutory sale but then I

22  subsequently rule in favor of the claimants on the

23  motion to dismiss.  What happens if the sale has

24  already taken place at that point?

25          MR. SOHN:  Well, once the sale takes place,

1    the substitute res becomes the sale proceeds.  So at

2    that point, assuming we have an effectuated

3    consummated sale, under Your Honor's authority, an

4    innocent third party would have sailed off with the

5    boat.  The substitute res would be the sales

6    proceeds.  And if our case is dismissed with

7    prejudice, claimants would get the sales proceeds,

8    because that is now the res.

9              THE COURT:  That's what I assumed, but I

10   just wanted to confirm that.  And I appreciate the

11   remedial lesson.  So thanks for clarifying that.

12             Okay, Ms. Jarusinsky, I want to give you a

13   chance to respond to Mr. Sohn.

14             MS. JARUSINSKY:  Sure.  I want to go to the

15   point that Mr. Sohn made about the arrest warrant.

16   So the arrest warrant is issued.  If you look at

17   Rule -- and like I said, there must be a probable

18   cause determination, and that's sort of written

19   within the rules.  If you look at Rule G(3), I'm

20   talking about the supplemental rules and the rule

21   pursuant to which the arrest warrant here was

22   issued.  Rule G(3)(b)(i), that states that The clerk

23   must issue a warrant to arrest the property upon the

24   filing of a forfeiture complaint if it is already in

25   the government's possession, custody or control.

1    That means that the government has already somehow
2    seized the property pursuant to legal process; for
3    example, a search warrant based on probable cause.
4    And it's clear -- so my point is that even though
5    the arrest warrant comes into play, it doesn't
6    validate -- in fact, it almost sort of subsumes or
7    sort of relies on the fact that the property is
8    already within the government's possession, custody
9    or control pursuant to some sort of legal process;
10   for example, search warrant based on probable cause.
11       If you look in the next provision, for
12   example, Rule G(3)(b)(ii), if the property is not in
13   the government's possession, custody or control, the
14   court must find probable cause to issue a warrant to
15   arrest the property.
16       Now, clearly, there has to be some probable
17   cause determination in either case.  And the point
18   is, a finding of probable cause must have been made
19   at some point, either in a pre-litigation seizure or
20   at the time the complaint is filed.  And there's no
21   carve out in these rules for property that's
22   overseas.
23       So I just wanted to make that point, Your
24   Honor.
25       THE COURT:  Okay.  Thank you, Ms.

1    Jarusinsky.

2         MS. JARUSINSKY:  Yes.  Sure.  Sure.

3         THE COURT:  I'll let you make an additional

4    point, but since I haven't heard that point before,

5    I want to give the government a chance to respond to

6    it before you turn to your next point.  And maybe

7    it's the first time you've heard it, too, Mr. Sohn,

8    but would you care to respond?

9         MR. SOHN:  Sure.  As I understand it, Ms.

10   Jarusinsky is arguing that, well, the arrest warrant

11   is not really independent of the seizure warrant

12   because the seizure warrant is what put the property

13   in the government's custody, and, therefore, enabled

14   the clerk to issue the arrest warrant under Rule

15   G(b)(i).

16         Well, even if the Court were inclined to

17   credit that argument, as Ms. Jarusinsky pointed out,

18   when the property is not in the government's

19   possession, the Court issues an arrest warrant upon

20   probable cause.  And that's based on the four

21   corners of the complaint.  The court analyzes the

22   complaint to see whether it evinces probable cause

23   to issue a warrant.

24         So in other words, Your Honor, if Your

25   Honor felt that Ms. Jarusinsky's motion was

1    otherwise meritorious, but the arrest warrant was

2    the only thing hanging it up, Your Honor could

3    analyze the four corners of the complaint to decide

4    whether there's probable cause to say, okay, would

5    the government have a right to possess this property

6    absent a seizure warrant.  Because even absent a

7    seizure warrant, the complaint exists.  And again,

8    in a hypothetical no seizure warrant world, this

9    court would be analyzing the four corners of the

10   complaint under Rule (b)(ii) to decide whether to

11   issue an arrest warrant.

12        So if the Court felt that it needed to

13   decide whether there is or would be a valid arrest

14   warrant absent the seizure warrant, then certainly

15   it could say, okay, would I have issued an arrest

16   warrant anyway?  Does the four corners of the

17   complaint show probable cause?

18        But I think Your Honor need not get there

19   because, frankly, the Fourth Amendment issues are

20   dispositive.  They're seeking a *Franks* hearing under

21   the Fourth Amendment.  They're seeking to unravel

22   the seizure warrant under the Fourth Amendment.

23   They're seeking to exclude evidence under the Fourth

24   Amendment.  And we think that really does fail out

25   of the gate.

1           But to circle back again, yeah, if Your
2   Honor wished to kind of test the arrest warrant or
3   whether an arrest warrant should issue, it certainly
4   could examine probable cause on the four corners of
5   the complaint if it wished.
6           THE COURT:  Okay.  Thank you, Mr. Sohn.
7           Ms. Jarusinsky, you were going to make
8   another point before I cut you off.
9           MS. JARUSINSKY:  Yes.  Let me see.  Let me
10  just take a look at my notes.
11          Yeah, I mean, I just want to go back to,
12  Your Honor, some of the questions you had for
13  Mr. Sohn about turning over the affidavit and
14  responding to his point about work product calls.
15          Like I said, some of the things that we're
16  requesting, the unredacted affidavit, 302s witness
17  statements.  We tried to narrow the scope of our
18  request, with respect -- when we were in discussions
19  with the government prior to coming to Your Honor
20  for intervention.  And we don't think that there
21  would be any sort of tedious work product judgment
22  calls with respect to the affidavit and with respect
23  to witness statements such as 302s and other
24  documents that reflect summaries of what the
25  witnesses said.

1          So I just would like to make that point,
2     Your Honor.
3          THE COURT:  Okay.  Thank you, Ms.
4     Jarusinsky.  Anything else?
5          MS. JARUSINSKY:  I just want to point out a
6     case, Your Honor, on this topic of, you know,
7     whether or not the Fourth Amendment applies.
8          The government still -- like I said, still
9     needs to obtain warrants with probable cause.  I
10    mean, this cannot be that when you go outside of the
11    country, all bets are off in terms of what is
12    required of our law enforcement in terms of
13    obtaining people's property.  That just cannot be
14    the case.  And we're happy to brief it if you'd like
15    some briefing on that issue, Your Honor.  On any of
16    the issues that are implicated by our discovery
17    request.
18          THE COURT:  Okay.  Thank you.  I'll let the
19    parties know if I require further briefing, but at
20    this time, I don't think that I do.
21          I think that's all I need to hear on the
22    request for discovery.  And I'll put something out,
23    hopefully quickly, so you all know where things
24    stand, as I know currently, your opposition is due
25    tomorrow.  Or I should say the claimant's opposition

AMM TRANSCRIPTION SERVICE - 631.334.1445

 1  is due tomorrow.

 2          If I could turn briefly now to the request

 3  to file something under seal.  And I know that there

 4  are statements that have been filed in redacted

 5  form, and I think I've made clear that I've accepted

 6  those for filing on the public docket in redacted

 7  form.  But there's a letter that the claimants have

 8  asked to file under seal.  And I will say that it's

 9  not obvious to me what the basis is for that.

10          So I'll let -- Ms. Jarusinsky, I'll let you

11  address that.  Why don't you go ahead.

12          MS. JARUSINSKY:  Sure.  Your Honor, the

13  letter can be public.  I was really just hoping to

14  keep from the public the attachments that were

15  unredacted.

16          THE COURT:  I understand.  The unredacted

17  attachments will, I think, remain under seal, and

18  that's fine.  So we will put that letter on the

19  public docket within the next 24 hours.

20          Well, I really appreciate everyone's time.

21  Is there anything else that the parties would like

22  to raise?  Let me start with the government.

23          Mr. Sohn?

24          MR. SOHN:  Nothing from the government,

25  Your Honor.


        AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  Okay.  Thank you, Mr. Sohn.
 2              For the claimants, Ms. Jarusinsky?
 3         MS. JARUSINSKY:  No, Your Honor, just to
 4    reiterate, you know, if we could even get limited
 5    discovery of the unredacted affidavit for starters,
 6    that would certainly be helpful with requests in
 7    connection with our opposition.
 8              THE COURT:  Understood.
 9         MR. FORD:  Your Honor, this is Adam Ford
10    just jumping in for the first time.  Maybe I would
11    just say it at the end, and I understand Your Honor
12    did just say that you don't think you require
13    further briefing on any of these issues.  But as
14    I've sat here and listened in, I do wonder if maybe
15    our -- because I know Your Honor had asked us for a
16    case regarding in connection with the Verdugo and
17    obviously the application of the Fourth Amendment
18    overseas.  We don't have that at our fingertips.
19    But based on our research on this issue and our firm
20    belief that there is applicability, I wonder if we
21    couldn't be given an opportunity to submit something
22    to Your Honor by tomorrow at noon on this issue.
23    Because it does sound like this is a threshold
24    issue.  And at this point, I think the government
25    has written one paragraph on it, and I think we put
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    in a couple of sentences.  And given the

2    significance of this, I do wonder if we shouldn't be

3    allowed to provide Your Honor with some additional

4    citations on this point.

5           THE COURT:  Thank you, Mr. Ford, and I do

6    appreciate your request.  I do think I have

7    everything that I need right now.  And I, and my

8    Chambers are capable of looking at the issue more

9    closely.  So right now I don't think that we need

10   anything, but obviously, if something changes, I

11   will let you know, but I appreciate the offer.

12          MR. FORD:  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          Okay.  Well, as I said, we'll get a letter

15   from the claimants on the docket, and we will try to

16   get a ruling on the discovery request as quickly as

17   possible in light of the claimant's opposition

18   deadline tomorrow.

19          Thank you, all, very much for your time.

20          MR. SOHN:  Thank you, Your Honor.

21          MS. JARUSINSKY:  Thank you.

22          MR. FORD:  Thank you, Your Honor.  Have a

23   good day.

24

25                              OOO

```
 1                    C E R T I F I C A T E

 2

 3        I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   USA v. The M/Y Amadea; Docket #23cv9304 was prepared

 6   using digital transcription software and is a true

 7   and accurate record of the proceedings.

 8

 9

10   Signature   _Adrienne M. Mignano_____

11             ADRIENNE M. MIGNANO, RPR

12

13   Date:      March 5, 2024

14

15

16

17

18

19

20

21

22

23

24

25
```