# EXHIBIT B

IN THE HIGH COURT OF FIJI AT SUVA
[CIVIL JURISDICTION]

Civil Action HBM NO. of 2022

BETWEEN:      THE DIRECTOR OF PUBLIC PROSECUTIONS of the Republic of Fiji, 25 Gladstone Road, Suva, for and on behalf of the STATE.

Applicant

AND   :      Suleiman Abusaidovich Kerimov being the beneficial owner of the Motor Yacht Amadea with International Maritime Organisation Number 1012531 having his address of service at Haniff Tuitoga, 12 Vesi Street, Flagstaff.

Respondent

---

## AFFIDAVIT IN SUPPORT OF SUMMONS

---

I, **NIMISHA SHANKAR**, Legal Officer of the Office of the Director of Public Prosecutions, Suva, make oath and state as follows:

1. I am a Legal Officer at the Office of the Director of Public Prosecutions based in Suva.

2. I am familiar with matters pertaining to these proceedings and dispose this, my affidavit, from my personal knowledge and as a result of information obtained in my official capacity unless otherwise stated, and the contents of which are true to the best of my knowledge, information and belief.

3. A request for the registration and enforcement of a warrant to seize property subject to forfeiture was requested by the United States of America Department of Justice. The request is annexed hereto and marked as 'AA 1'.

4. The request contains the warrant to seize property subject to forfeiture. Annexed hereto and marked 'AA 2' is a copy of the warrant.

5. The purpose of this request is to restrain the motor yacht Amadea with international maritime organisation number 1012531 which is believed to be beneficially owned by Russian oligarch Suleiman Abusaidovich Kerimov.

6. Mr Kerimov is subject to United States of America sanctions. The yacht is currently berthed at the Lautoka wharf. A copy of the Executive Order 13661 and sanction is annexed as 'AA 3'.

7. The specific assistance sought is to restrain the Amadea to prevent its transfer, sale or other encumbrance or dissipation. The requesting authority has requested the restraint as a preliminary step for forfeiture under the laws of the United States of America.

8. This application is made ex parte to prevent irreparable mischief, that is, the yacht leaving Fiji and therefore the Fijian authorities would be unable to effect the approved mutual legal assistance request.

**SWORN** by the said N. Stanbet at Suva .   ]

Suva this ...19........day of April    2022.   ].................................................

**BEFORE ME:**

.............................................................

**COMMISSIONER FOR OATHS**

Armish Amendra Pal - LLB, PDLP
Barrister & Solicitor
Commissioner for Oaths
Suva, Fiji.



This is the annexure marked "AA1"
referred to in the annexed affidavit

Nimasha Shankar

sworn before me on the 19th day
April 20 22

Commissioner



**U.S. Department of Justice**

Criminal Division

VAA:CJS:JMO:ES:ad
DOJ No.: CRM-182-82816

*Office of International Affairs*

*Washington, D.C.  20530*

TO:        The Central Authority of the Republic of Fiji

SUBJECT:   **URGENT** Supplemental Request for Assistance in the Investigation of
           Suleiman Abusaidovich Kerimov

DOJ No.:   CRM-182-82816

DATE:      April 13, 2022

The Central Authority of the United States, the U.S. Department of Justice, Office of
International Affairs (Department of Justice), requests <u>urgent</u> supplemental assistance of the
Central Authority of the Republic of Fiji (Fiji) pursuant to Articles 13 and 18 of the United
Nations Convention against Transnational Organized Crime (UNTOC), to which the United
States and Fiji are parties. The request is made for the purpose of investigating and prosecuting
conduct required to be criminalized under the UNTOC, namely, participation in an organized
criminal group and conspiracy to commit a serious crime to obtain a financial benefit and to
launder the proceeds of crime, under Articles 5 and 6 of the UNTOC. The types of assistance
requested herein are set forth in Articles 13 and 18, paragraph 3, of the UNTOC.

The U.S. Department of Justice, National Security Division, Counterintelligence &
Export Control Section and Criminal Division, Money Laundering and Asset Recovery Section,
along with the Federal Bureau of Investigation (FBI) (collectively, the U.S. authorities), are

1

continuing to investigate whether Suleiman Abusaidovich Kerimov (KERIMOV), a Specially Designated National (SDN) on the Blocked Persons List as described below, has violated U.S. criminal laws, including violating U.S. sanctions.

On April 1, 2022, the Department of Justice, on behalf of the U.S. authorities, submitted a request for assistance in this matter seeking interviews and documents (original request). This supplemental request incorporates by reference the facts, offenses, and persons and entities involved as set forth in the original request.

As noted in the original request, KERIMOV and his property are designated by and subject to U.S. sanctions. The U.S. authorities believe the 106-meter superyacht known as the Motor/Yacht (M/Y) *Amadea* (AMADEA) to be beneficially owned by KERIMOV. Pursuant to this supplemental request, the Department of Justice requests the assistance of the appropriate authorities in Fiji to give effect to a seizure warrant (included as **Attachment A**) to restrain the AMADEA to prevent its transfer, sale, or other encumbrance or dissipation, as a preliminary step to forfeiture under U.S. law. The Department of Justice also requests assistance to serve notice of the seizure warrant on the AMADEA.

## **URGENCY**

The Department of Justice asks that this request be executed **urgently** and as soon as possible, as the AMADEA is a mobile asset and could leave Fijian waters at any time. Indeed, the U.S. authorities have received notification from authorities in Fiji that the AMADEA is making plans to leave Fiji on or about April 14, 2022.

According to paperwork filed by the AMADEA, its next destination is the Philippines. However, there is reason to believe that its ultimate intended destination is Vladivostok or other waters in Russian territory. For example, one crew member's phone had a text message that read

2

"We're not going to Russia," followed by the shush emoji. Furthermore, following the March 2022 designations by the Treasury Department of several Russian oligarchs, many such designated individuals made efforts to move their yachts to Russia. Given the route the AMADEA has taken (from the Caribbean, through the Panama Canal, to Mexico, then to Fiji), KERIMOV may likewise be making plans for the AMADEA to travel to Russia in an effort to avoid U.S. efforts to seize the vessel.

## CONFIDENTIALITY

The details of this U.S. investigation are considered sensitive. Therefore, pursuant to Article 18, paragraph 20 of the UNTOC, please treat this document, its contents, and the fact that this request has been made as confidential and do not disclose it publicly or share it with the subjects of the investigation, except as is necessary in executing the restraint of the AMADEA. Also, please instruct all those who must be made aware of this request for assistance for purposes of its execution that the request, its contents and subject matter are to be kept confidential and should not be shared with the subjects of the investigation nor disclosed publicly. If this request cannot be executed without breaching such confidentiality, the Department of Justice asks that the Fijian authorities notify the Department of Justice and postpone execution of the request until further notice.

## ADDITIONAL FACTS

As described in the original request, on April 6, 2018, the Office of Foreign Assets Control sanctioned KERIMOV. Specifically, KERIMOV was designated pursuant to authority provided under Executive Order 13661, an authority codified by the Countering America's Adversaries Through Sanctions Act. KERIMOV was simultaneously added to the Office of Foreign Assets Control's (OFAC) Specially Designated Nationals (SDN) List.

3

In imposing sanctions, OFAC made a determination that KERIMOV benefited from the regime of Vladimir Putin, President of the Russian Federation, and played a key role in advancing Russia's malign activities. Specifically, KERIMOV is an official of the Government of the Russian Federation and serves as a member of the Russian Federation Council.

Based on those sanctions, all of KERIMOV's assets subject to U.S. jurisdiction, and of any other entities blocked by operation of law as a result of their ownership by KERIMOV, are frozen, and U.S. persons are generally prohibited from dealings with them. Additionally, non-U.S. persons could face sanctions in the United States for knowingly facilitating significant transactions for or on behalf of KERIMOV.

### A.    The AMADEA

#### i.   KERIMOV's Ownership of the AMADEA

In addition to the information provided in the original request, the U.S. authorities have developed further information to believe that KERIMOV is the true beneficial owner of the AMADEA.

In or about 2021, the AMADEA was the subject of a sale by a yacht brokerage company ("Company A") to legal entities beneficially owned by KERIMOV. W-1, a high-level employee at a yacht brokerage company, explained to the FBI that in connection with its sale of yachts, Company A assists its customers in concealing their ownership. Specifically, W-1 described a yacht purchase program offered by Company A to prospective owners that included Company A setting up a chain of shell companies tied to the yacht so that the owner would never be known. In doing so, Company A would also list an individual who was not the actual user or owner of the vessel at the end of the audit chain of shell companies so even if law enforcement, the media, or

4

regulatory authorities uncovered that ownership document, the yacht would not be tied to the real owner.

As described in the original request, three yacht brokers independently reported to the FBI that they believe the yacht was sold by Company A to KERIMOV. W-1 reported that in or about late 2020 or early 2021 he had personally worked to arrange an inspection of the AMADEA by KERIMOV and was informed by a representative of his brokerage company employer that KERIMOV personally toured the yacht. Although the circumstances appeared to W-1 as if the AMADEA had in fact been sold thereafter, W-1 and his company were cut out of the final sale by Company A.

W-2, a high-level employee of another yacht brokerage company who has had personal contact with KERIMOV, reported that in 2021 his company entered into an agreement with Company A to assist them in the marketing of the AMADEA for sale. W-2 knew that W-1 had scheduled an inspection of the AMADEA by KERIMOV. W-2 reported that after the inspection, Company A ceased communication with W-1 and W-2. When W-2 heard that the AMADEA had been sold and inquired of Company A, Company A denied that was the case.

In addition, W-3, an associate of KERIMOV with a long, close relationship, reported that Kerimov used the AMADEA in the last few years, although W-3 was unsure if KERIMOV owned the yacht or merely regularly rented it.

That the AMADEA was, in fact, sold in or about August 2021 is corroborated by Cayman Islands records: the AMADEA is flagged in the Cayman Islands. The Cayman Islands government maintains a Shipping Registry as a division of Maritime Authority of the Cayman Islands. According to its publicly available website, the Shipping Registry provides "maritime administration and related services" for Cayman Islands-flagged vessels.

5

Business records of the Caymans Islands Shipping Registry show that the AMADEA was initially registered in the Cayman Islands in 2017, but that on August 16, 2021, a new certificate of British registry was issued on transfer of ownership in the name of Millemarin Investment Ltd. On September 5, 2021, a fee for "Registration of Transfer or Transmission" was paid for by a Cayman Islands-based law firm.

Additionally, in July 2021, a yacht broker corresponded with a representative of Company A about viewing the AMADEA on behalf of a potential purchaser. The Company A representative indicated that the vessel was available for viewing. However, on October 12, 2021, the Company A representative abruptly stated that the vessel was no longer available for viewings. This further corroborates that the vessel was sold (and thus went off the market) sometime between July and October 2021.

As detailed in the original request, in mid-March 2022, authorities from another country conducted a search of the AMADEA. The captain of the vessel provided an email from Company A with attachments detailing the purported beneficial ownership of the AMADEA. The documents purport to show that the ultimate beneficial owner is a Russian national ("Individual-1"), by way of Millemarin Investment Ltd. (a BVI company), International Finance LTD (a BVI company), and the Boltenko Trust (a Swiss structure). Individual-1 is not a subject of U.S. sanctions but is the former president of the Russian state-controlled oil company Rosneft. In the course of its investigation, the FBI has found that Individual-1 appears as the purported owner of multiple superyachts owned by sanctioned Russian oligarchs. For example, open-source reporting indicates that Individual-1 has been held out to Italian authorities as the owner of the M/Y *Scheherazade*, a superyacht linked to Russian President Vladimir Putin. The AMADEA and the *Scheherazade* were constructed at the behest of Company A in or about 2015. The fact that Individual-1 is being held

out as the owner of two of the largest superyachts on record, both linked to sanctioned individuals, suggests that Individual-1 is being used as a clean, unsanctioned straw owner to conceal the true beneficial owners of these vessels.[1]

On or about April 12, 2022, the FBI participated in the interviews of crew members of the AMADEA employed by Company A. As a general matter, the crew of the AMADEA had limited direct interaction with guests and measures were taken to ensure privacy. However, as detailed below, multiple crew members identified KERIMOV as the true owner of the AMADEA and others witnessed KERIMOV's family using it on multiple occasions.

One of the AMADEA crew members (Crew-1) understood KERIMOV to be the owner of the AMADEA. Specifically, Crew-1 explained that the AMADEA crew had been given code names for the KERIMOV family by Company A: G-0 for KERIMOV; G-1 for his wife; G-2 for his daughter; and G-3 for his son. Crew-1 identified a photograph of KERIMOV's daughter and stated that she had been on the AMADEA along with her children in St. Barts in January 2022. Later during that same trip, KERIMOV's other daughter, KERIMOV's son, and a friend of KERIMOV's son joined them onboard the AMADEA. During the approximately four-month tour that Crew-1 was on the AMADEA, KERIMOV's family members were the only guests onboard. Crew-1 could not identify Individual-1 and did not recognize a photograph of him.

Another AMADEA crew member (Crew-2) stated that KERIMOV had owned the AMADEA since Fall 2021 and that it had been transferred in a "backdoor Russian deal." Crew-2 had seen KERIMOV's family members on the AMADEA several times. Crew-2 identified a

---

[1] While Individual-1 is wealthy, there is no reason to believe he has the financial resources to purchase the AMADEA and the *Scheherazade*, nor is there any apparent reason why a single individual would own multiple superyachts of their size.

7

photograph of KERIMOV's daughter and said that he/she had seen her on the yacht in January 2022. Crew-2 was also aware from discussions with fellow crew members that KERIMOV personally had been on the AMADEA. Crew-2 could not identify Individual-1 and did not recognize a photograph of him.

Another AMADEA crew member (Crew-3) recognized a photograph of KERIMOV's daughter as "G2" and stated that she had come aboard the AMADEA in February 2022 from St. Maarten. Crew-3 explained that the "G" codes are provided by Company A and designed so the crew does not know the names of the actual guests. Crew-3 recognized a photograph of Individual-1 as someone who had been on board the AMADEA a couple of times, most recently approximately two years ago. Crew-3 believed Individual-1 to be the owner of the AMADEA.

Another AMADEA crew member (Crew-4) recognized a photograph of KERIMOV's daughter and recalled that she came on board the AMADEA in October 2021 in France. Crew-4 also recognized a photograph of Individual-1 as someone who had boarded the AMADEA in July 2021 in Greece.

Another AMADEA crew member (Crew-5) had never met KERIMOV or seen him on the yacht but recalls that people with similar surnames to KERIMOV were on board (FBI understands that KERIMOV's daughters' surnames are "Kerimova."). Crew-5 also heard from another crew member that KERIMOV had been on board the yacht as a client while the vessel was up for sale.

As noted in the original request, according to open-source reporting, the AMADEA turned off its automated information system (AIS) [2] on February 24, 2022, almost immediately after the

---

[2]      According to MarineTraffic, which provides a commercial AIS service, the International Maritime Organization requires an AIS to be fitted on every ship, with exceptions for warships, leisure craft, and fishing boats. The system was introduced primarily for safety reasons by helping

start of the Russian invasion of Ukraine and did so intermittently thereafter. The automated information system is generally a safety precaution because it allows the location of a vessel to be transmitted for other ocean-going vessels for navigational purposes.

### ii. Unlicensed U.S. Dollar Payments for the AMADEA

As noted in the original request, according to open-source reports, the AMADEA has an annual running cost of between \$25 and \$30 million.[3] Following the April 6, 2018, designation, KERIMOV caused entities and persons to make U.S. dollar payments, described below, which transited U.S. financial institutions on his behalf and for his benefit related to the AMADEA. To conduct a transaction involving a sanctioned party, an individual or entity involved in the transaction must obtain proper authorization from OFAC in the form of a license. According to OFAC, KERIMOV and those acting on his behalf failed to obtain licenses for all of the below-described U.S. dollar transactions.

Crew-4 reported that the AMADEA's expenses at its recent ports of call were as follows:

a. St. Maarten: \$200,000

b. Antigua: \$200,000

c. Panama: \$50,000

d. Mexico: \$60,000

e. Fiji: \$250,000

---

government authorities to identify vessels, assist in search and rescue operations as well as provide supplementary information from other navigational systems such as radar. AIS automatically transmits the ship's position and a timestamp. The ship's operator may also manually update the navigational status, ship's draft, hazardous cargo information, destination and ETA, and waypoints. *See* https://www.marinetraffic.com/blog/information-transmitted-via-ais-signal.

[3] All currency amounts are in U.S. dollars unless otherwise indicated.

Crew-4 further explained that the purpose of the AMADEA's stop in Fiji was for refueling, crew change, provisions, and garbage offload.,

On or about April 13, 2022, authorities from Fiji conducted a search of the AMADEA. In the course of the search, authorities found numerous documents detailing transactions engaged in on behalf of the AMADEA. Within just the past four months, those financial transactions included:

a. A pro forma invoice from a Fijian company dated April 1, 2022, for $280,900 in "[d]iesel duty free" fuel;

b. Invoices from a U.S. company dated March 18 and 21, 2022, totaling $263,415 for fuel delivery while in Mexico;

c. Invoices from a U.S. company dated March 21 and 22, 2022, for crew and galley provisions while in Mexico;

d. A pro forma invoice from a U.S. company dated March 20, 2022, for $13,854.56 for various harbor, dockage, and inspection fees while in Mexico;

e. A pro forma invoice from a Panamanian company dated March 4, 2022, for $55,720 for Panama Canal transit;

f. Invoice from an Antiguan company dated March 18, 2022, for "5600 litres of sludge and 240 LT grease trap disposal" while in Antigua;

g. Invoice from an Antiguan company dated March 18, 2022, for various fees while in Antigua, including health inspection and dockage;

h. Invoices from an Antiguan company dated March 2022 for provisions while in Antigua;

10

    i.   Multiple invoices from a St. Maarten company dated December 2021 through February 2022 for various maintenance services, including hull inspection, garbage disposal, sea chest cleaning, oil analysis, as well as harbor fees; and

    j.   Multiple invoices from a St. Maarten company dated December 2021 through February 2022 for guest and crew provisioning.

Each of the above invoices was addressed to Millemarin Investments Limited and included wire transfer instructions to be paid in U.S. dollars. The U.S. company invoices were to be paid directly to a U.S. bank, while the others all included international transfer instructions with a listed U.S. correspondent bank and/or SWIFT code.

On other occasions, Company A paid U.S. dollar fees on behalf of the AMADEA directly. For example, on or about February 2, 2022, Company A caused a U.S. dollar wire transfer in the amount of $6,651.50 to transit through a U.S. correspondent bank with a notation that it was for "AMADEA N2552 ANGUILLA ENTRY AND EXIT CLEARANCE AND AGENT FEES."

Business records of the Caymans Islands Shipping Registry show that the AMADEA has been registered in the Cayman Islands and had various recurring registration and other fees paid on its behalf. Since August 2021, when the Registry reflects the AMADEA transferred ownership, approximately 19 U.S. dollar transactions have been made to the Registry.

Crew-2 said in an interview that the AMADEA kept both U.S. dollars and Euros on board, and that a Mastercard was regularly used for transactions. When the AMADEA was in Mexico on or about March 24, 2022, crew provided authorities with a customs declaration form indicating the vessel was carrying $102,675.46 and €17,177.86.

11

B.      **U.S. Proceedings**

The U.S. authorities are continuing to investigate KERIMOV and others for their participation in the criminal conduct described above. The U.S. authorities also intend to bring a non-conviction-based civil *in rem* forfeiture action related to the AMADEA.

On April 13, 2022, the United States District Court for the District of Columbia (the District Court) issued a seizure warrant authorizing the seizure of the AMADEA, as the District Court found probable cause to believe the vessel is subject to forfeiture under U.S. law as proceeds traceable to conspiracy to commit sanctions violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and/or property involved in money laundering, pursuant to Title 18, United States Code, Section 981(a)(1)(A).

### ADDITIONAL OFFENSES

**Title 18, United States Code, Section 981.   Civil forfeiture**

(a)(1)   The following property is subject to forfeiture to the United States:

> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

* * *

> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

* * *

(b)(3)  . . . a seizure may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed . . . and may be . . . transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement . . . .

12

## <u>ASSISTANCE REQUESTED</u>

A.   **Restraint**

Please request the assistance of the appropriate authorities in Fiji to give effect to the seizure warrant (included as **Attachment A**) to restrain or otherwise detain the M/Y AMADEA, IMO 1012531, currently located at the port Lautoka, Fiji, as a preliminary step to forfeiture under U.S. law.

B.   **Service of Seizure Warrant**

Please ask the appropriate Fijian authorities to provide a copy of the seizure warrant to the M/Y AMADEA, currently located at the port Lautoka, Fiji.

## <u>PROCEDURES TO BE FOLLOWED</u>

A.   **Restraint**

Please notify the U.S. Central Authority when the M/Y AMADEA has been restrained pursuant to this request. If necessary and legally permissible under the laws of Fiji, the United States, through U.S. law enforcement authorities, can provide assistance in either paying any expenses necessary to maintain, dock, or store the vessel in Fiji and/or making any arrangements necessary to transport the vessel into U.S. custody to preserve the asset's value during pending or future U.S. criminal investigations and/or confiscation proceedings.

B.   **Service of Seizure Warrant**

Please ask the appropriate Fijian authorities to take the following steps with respect to serving the seizure warrant:

1.   Take the necessary steps to deliver the seizure warrant (**Attachment A**) to the M/Y AMADEA at the location provided above.

13

2.   Cause the authority who delivered the documents to complete an Affidavit for Service of Forfeiture Notice (**Attachment B**) attesting that the document was delivered;[4] and

3.   Return the Affidavit for Service of Forfeiture Notice to the U.S. Central Authority — the Office of International Affairs, United States Department of Justice at 1301 New York Avenue, NW, Washington, D.C. 20005.

## CONTACT INFORMATION

Please contact Emily Siedell, Trial Attorney at the Office of International Affairs of the U.S. Department of Justice, with any questions. She may be reached at +1-202-307-9960 or Emily.Siedell@usdoj.gov.

## CONCLUSION

We extend our gratitude to the Fijian authorities for their cooperation in legal assistance matters, and thank you for your attention to this particular request pertaining to Suleiman Abusaidovich KERIMOV, made pursuant to the United Nations Convention against Transnational Organized Crime.   We extend the assurance of our highest consideration.

13 April 2022

_____
Date

_____
Jeffrey M. Olson
Associate Director
Office of International Affairs
United States Department of Justice

---

[4] Alternatively, if service is made through registered mail, a return receipt will be sufficient.

14

**ATTACHMENT B**

**AFFIDAVIT FOR PROVIDING NOTICE OF FORFEITURE ACTION**

Plaintiff:  United States of America
Property:  The Motor Yacht *Amadea* with IMO 1012531
Addressee:  Port - Lautoka, Fiji

Type:  Provision of Notice of Forfeiture Action

I, _____, acting on behalf of the Central Authority of Fiji pursuant to a Request for Legal Assistance from the United States of America dated April 13, 2022, certify, in accordance with the instructions set forth in the referenced request:

1. That I provided a copy of the seizure warrant of on the _____ day of _____, 2022, to the following address:

   _____ .

   (STREET ADDRESS, CITY, COUNTRY)

   By one of the following methods (CIRCLE THE APPROPRIATE OPTION)

   a.  By hand delivery to the addressee who accepted it voluntarily.
   b.  By mail or other carrier.

   The documents referred to herein have been delivered to:

   _____

   (NAME AND DESCRIPTION OF PERSON RECEIVING DOCUMENTS)

   _____

   (RELATIONSHIP TO ADDRESSEE, E.G., FAMILY, BUSINESS, OR OTHER)

2. That the seizure warrant has not been delivered to the above-listed addressee for the following reasons (please describe steps taken to attempt to locate and provide the documents to addressee):

   _____

I declare that the foregoing is true and correct.

                                                _____
                                                Signature of Affiant

Executed on this _____ day of _____, 2022.

15



This is marked "AA2"
annexed Affidavit of
Nimisha  Shankar
on the   19th
April                    day

(Rev. 12/09) Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| THE MOTOR YACHT AMADEA, | ) | Case No.   22-sz-9 |
| WITH INTERNATIONAL MARITIME | ) | |
| ORGANIZATION NUMBER 1012531 | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that in property located in the   jurisdiction of the _____ District of _____ Columbia _____ be seized as subject to forfeiture to the United States of America.  The property is described as follows:

MOTOR YACHT AMADEA, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 531, pursuant to 50 U.S.C. § 1705(a); 18 U.S.C. § 1956(a)(2) & (h); 18 U.S.C. § 981(a)(1)(A) & and 28 U.S.C. § 2461

FURTHER DESCRIBED IN THE AFFIDAVIT
that the affidavit(s) and any recorded testimony establish probable cause to seize the property.
**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 04/27/2022 _____

*(not to exceed 14 days)*

☐ in the daytime – 6:00 a.m. to 10:00 p.m.          ☑ at any time in the day or night, as I find reasonable
cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the erty taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt e place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any erty seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to ted States Magistrate Judge _____ G. Michael Harvey _____

*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay ial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be ched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*

☐ until, the facts justifying, the later specific date of _____

e and time issued:   04/13/2022

*Judge's signature*

y and state:   District of Columbia          G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

9 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| | Return | |
|---|---|---|
| No.: 22-sz-9 | Date and time warrant executed: | Copy of warrant and inventory left with: |

ntory made in the presence of:

ntory of the property taken:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant he designated judge.

te: _____

_____
*Executing officer's signature*

_____
*Printed name and title*



15535

al Register
79, No. 53
uesday, March 19, 2014

3—

President

# Presidential Documents

Executive Order 13661 of March 16, 2014

## Blocking Property of Additional Persons Contributing to the Situation in Ukraine

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq.*) (NEA), section 212(f) of the Immigration and Nationality Act of 1952 (8 U.S.C. 1182(f)), and section 301 of title 3, United States Code,

I, BARACK OBAMA, President of the United States of America, hereby expand the scope of the national emergency declared in Executive Order 13660 of March 6, 2014, finding that the actions and policies of the Government of the Russian Federation with respect to Ukraine—including the recent deployment of Russian Federation military forces in the Crimea region of Ukraine—undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets, and thereby constitute an unusual and extraordinary threat to the national security and foreign policy of the United States. Accordingly, I hereby order:

**Section 1.** (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person (including any foreign branch) of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in:

(i) the persons listed in the Annex to this order; and

(ii) persons determined by the Secretary of the Treasury, in consultation with the Secretary of State:

(A) to be an official of the Government of the Russian Federation;

(B) to operate in the arms or related materiel sector in the Russian Federation;

(C) to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly:

(1) a senior official of the Government of the Russian Federation; or
(2) a person whose property and interests in property are blocked pursuant to this order; or

(D) to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of:

(1) a senior official of the Government of the Russian Federation; or
(2) a person whose property and interests in property are blocked pursuant to this order.

(b) The prohibitions in subsection (a) of this section apply except to the extent provided by statutes, or in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order.

**Sec. 2.** I hereby find that the unrestricted immigrant and nonimmigrant entry into the United States of aliens determined to meet one or more of the criteria in section 1(a) of this order would be detrimental to the interests of the United States, and I hereby suspend entry into the United

States, as immigrants or nonimmigrants, of such persons. Such persons shall be treated as persons covered by section 1 of Proclamation 8693 of July 24, 2011 (Suspension of Entry of Aliens Subject to United Nations Security Council Travel Bans and International Emergency Economic Powers Act Sanctions).

**Sec. 3.** I hereby determine that the making of donations of the type of articles specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to section 1 of this order would seriously impair my ability to deal with the national emergency declared in Executive Order 13660, and I hereby prohibit such donations as provided by section 1 of this order.

**Sec. 4.** The prohibitions in section 1 of this order include but are not limited to:

(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and

(b) the receipt of any contribution or provision of funds, goods, or services from any such person.

**Sec. 5.** (a) Any transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order is prohibited.

(b) Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.

**Sec. 6.** For the purposes of this order:

(a) the term "person" means an individual or entity;

(b) the term "entity" means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization;

(c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States; and

(d) the term the "Government of the Russian Federation" means the Government of the Russian Federation, any political subdivision, agency, or instrumentality thereof, including the Central Bank of the Government of the Russian Federation, and any person owned or controlled by, or acting for or on behalf of, the Government of the Russian Federation.

**Sec. 7.** For those persons whose property and interests in property are blocked pursuant to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or other assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render those measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in Executive Order 13660, there need be no prior notice of a listing or determination made pursuant to section 1 of this order.

**Sec. 8.** The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government consistent with applicable law. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.

**Sec. 9.** The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to determine that circumstances no longer warrant the blocking of the property and interests in property of a person

listed in the Annex to this order, and to take necessary action to give effect to that determination.

**Sec. 10.** This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

**Sec. 11.** This order is effective at 12:01 a.m. eastern daylight time on March 17, 2014.

THE WHITE HOUSE,
*March 16, 2014.*

Billing code 3295–F4–P

**15538**   Federal Register / Vol. 79, No. 53 / Wednesday, March 19, 2014 / Presidential Documents

## ANNEX

1. Yelena Mizulina [State Duma Deputy, born December 9, 1954]

2. Leonid Slutsky [State Duma Deputy, born January 4, 1968]

3. Andrei Klishas [Chairman of the Russian Federation Council Committee on Constitutional Law, Judicial and Legal Affairs and the Development of Civil Society, born November 9, 1972]

4. Valentina Ivanovna Matviyenko [Federation Council Speaker, born April 7, 1949]

5. Dmitry Olegovich Rogozin [Deputy Prime Minister of the Russian Federation, born December 21, 1963]

6. Vladislav Yurievich Surkov [Presidential Aide to the President of the Russian Federation, born September 21, 1964]

7. Sergey Glazyev [Presidential Advisor to the President of the Russian Federation, born January 1, 1961]

[FR Doc. 2014–06141
Filed 3–18–14: 8:45 am]
Billing code 4811–33–C

*Amadea* -Attachment B

the Federal Railroad Administration (FRA) seeking approval to discontinue or modify a signal system. FRA assigned the petition Docket Number FRA–2018–0042.

*Applicant:* CSX Transportation, Mr. Carl Walker, Chief Engineer Communications & Signals, 500 Water Street, Speed Code J—350, Jacksonville, FL 32202.

CSX seeks approval to discontinue the signal system on the main tracks between control point (CP) Strick, milepost (MP) OWI 208.1 on the EK Subdivision, Winchester, KY, and CP Blackey, MP OVB 267.1 on the Rockhouse Subdivision, Blackey, KY. CSX proposes to discontinue the CP–511 and TC–510 Rules in the track segment and operate under TWC–D–505 Rules.

CSX states the reason for the proposed change is that CP–511 and TC–510 Rules are no longer needed for present day operation.

A copy of the petition, as well as any written communications concerning the petition, is available for review online at *www.regulations.gov* and in person at the U.S. Department of Transportation's (DOT) Docket Operations Facility, 1200 New Jersey Avenue SE, W12–140, Washington, DC 20590. The Docket Operations Facility is open from 9 a.m. to 5 p.m., Monday through Friday, except Federal Holidays.

Interested parties are invited to participate in these proceedings by submitting written views, data, or comments. FRA does not anticipate scheduling a public hearing in connection with these proceedings since the facts do not appear to warrant a hearing. If any interested parties desire an opportunity for oral comment and a public hearing, they should notify FRA, in writing, before the end of the comment period and specify the basis for their request.

All communications concerning these proceedings should identify the appropriate docket number and may be submitted by any of the following methods:

• *Website: http:// www.regulations.gov.* Follow the online instructions for submitting comments.

• *Fax:* 202–493–2251.

• *Mail:* Docket Operations Facility, U.S. Department of Transportation, 1200 New Jersey Avenue SE, W12–140, Washington, DC 20590.

• *Hand Delivery:* 1200 New Jersey Avenue SE, Room W12–140, Washington, DC 20590, between 9 a.m. and 5 p.m., Monday through Friday, except Federal Holidays.

Communications received by June 15, 2018 will be considered by FRA before

final action is taken. Comments received after that date will be considered if practicable.

Anyone can search the electronic form of any written communications and comments received into any of our dockets by the name of the individual submitting the comment (or signing the document, if submitted on behalf of an association, business, labor union, etc.). In accordance with 5 U.S.C. 553(c), DOT solicits comments from the public to better inform its processes. DOT posts these comments, without edit, including any personal information the commenter provides, to *www.regulations.gov,* as described in the system of records notice (DOT/ALL–14 FDMS), which can be reviewed at *https://www.transportation.gov/privacy.* See also *https://www.regulations.gov/ privacyNotice* for the privacy notice of *regulations.gov.*

Issued in Washington, DC.

**Robert C. Lauby,**

*Associate Administrator for Railroad Safety, Chief Safety Officer.*

[FR Doc. 2018–09123 Filed 4–30–18; 8:45 am]

**BILLING CODE 4910–06–P**

---

## DEPARTMENT OF THE TREASURY

### Office of Foreign Assets Control

### Notice of OFAC Sanctions Actions

**AGENCY:** Office of Foreign Assets Control, Treasury.

**ACTION:** Notice.

---

**SUMMARY:** The Department of the Treasury's Office of Foreign Assets Control (OFAC) is publishing the names of one or more persons that have been placed on OFAC's Specially Designated Nationals and Blocked Persons List based on OFAC's determination that one or more applicable legal criteria were satisfied. All property and interests in property subject to U.S. jurisdiction of these persons are blocked, and U.S. persons are generally prohibited from engaging in transactions with them.

**DATES:** See **SUPPLEMENTARY INFORMATION** section.

**FOR FURTHER INFORMATION CONTACT:** OFAC: Associate Director for Global Targeting, tel.: 202–622–2420; Assistant Director for Licensing, tel.: 202–622–2480; Assistant Director for Regulatory Affairs, tel.: 202–622–4855; Assistant Director for Sanctions Compliance & Evaluation, tel.: 202–622–2490; or the Department of the Treasury's Office of the General Counsel: Office of the Chief Counsel (Foreign Assets Control), tel.: 202–622–2410.

**SUPPLEMENTARY INFORMATION:**

**Electronic Availability**

The list of Specially Designated Nationals and Blocked Persons (SDN List) and additional information concerning OFAC sanctions programs are available on OFAC's website (*http:// www.treasury.gov/ofac*).

**Notice of OFAC Actions**

On April 6, 2018, OFAC determined that the property and interests in property subject to U.S. jurisdiction of the following persons are blocked under the relevant sanctions authorities listed below.

*Individuals*

1. AKIMOV, Andrey Igorevich, Russia; DOB 1953; POB Leningrad, Russia; Gender Male; Chairman of the Management Board of Gazprombank (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of Executive Order 13661 of March 16, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine" (E.O. 13661) for being an official of the Government of the Russian Federation.

2. BOGDANOV, Vladimir Leonidovich, Russia; DOB 28 May 1951; POB Suyerka, Uporovsky District, Tyumen Region, Russian Federation; Gender Male (individual) [UKRAINE–EO13662]. Designated pursuant to section 1(a)(i) of Executive Order 13662 of March 20, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine" (E.O. 13662) for operating in the energy sector of the Russian Federation economy.

3. DERIPASKA, Oleg Vladimirovich, Moscow, Russia; 64 Severnaya Street, Oktyabrsky, Khutor, Ust-Labinsky District, Krasnodar Territory 352332, Russia; 5, Belgrave Square, Belgravia, London SW1X 8PH, United Kingdom; DOB 02 Jan 1968; POB Dzerzhinsk, Nizhny Novgorod Region, Russia; citizen Russia; alt. citizen Cyprus; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(C)(1) of E.O. 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the of the Government of the Russian Federation.

Also designated pursuant to section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation economy.

4. DYUMIN, Alexey Gennadyevich (a.k.a. DYUMIN, Alexei), Russia; DOB 28 Aug 1972; POB Kursk, Russian Federation; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

5. FRADKOV, Mikhail Efimovich (Cyrillic: ФРАДКОВ, Михаил Ефимович), Russia; DOB 01 Sep 1950; POB Kurumoch, Kuibyshev Region, Russia; Gender Male; Director of the Russian Institute for Strategic Studies (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

Federal Register / Vol. 83, No. 84 / Tuesday, May 1, 2018 / Notices

**19139**

6. FURSENKO, Sergei (a.k.a. FURSENKO, Sergey; a.k.a. FURSENKO, Sergey Aleksandrovich); DOB 11 Mar 1954; POB Saint-Petersburg (F.K.A. Leningrad), Russia; citizen Russia; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

7. GOVORUN, Oleg, Russia; DOB 15 Jan 1969; POB Bratsk, Irkutsk Region, Russia; Gender Male; Head of the Presidential Directorate for Social and Economic Cooperation with the Commonwealth of Independent States Member Countries, the Republic of Abkhazia, and the Republic of South Ossetia (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

8. KERIMOV, Suleiman Abusaidovich (Cyrillic: КЕРИМОВ, Сулейман Абусаидович) (a.k.a. KERIMOV, Suleyman), Moscow, Russia; Antibes, France; DOB 12 Mar 1966; POB Derbent, Republic of Dagestan, Russia; citizen Russia; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

9. KOLOKOLTSEV, Vladimir Alexandrovich, Russia; DOB 11 May 1961; POB Nizhny Lomov, Penza Region, Russia; Gender Male; Minister of Internal Affairs of the Russian Federation, General of the Police of the Russian Federation (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

10. KOSACHEV, Konstantin, Russia; DOB 17 Sep 1962; POB Moscow, Russia; nationality Russia; Gender Male; Chairperson of the Council of the Federation Committee on Foreign Affairs (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

11. KOSTIN, Andrey Leonidovich, Moscow, Russia; DOB 21 Sep 1956; POB Moscow, Russian Federation; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

12. MILLER, Alexey Borisovich, Moscow, Russia; DOB 31 Jan 1962; POB Saint-Petersburg, Russian Federation; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

13. REZNIK, Vladislav Matusovich, Moscow, Russia; DOB 17 May 1954; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

14. ROTENBERG, Igor Arkadyevich (a.k.a. ROTENBERG, Igor Arkadevich); DOB 09 May 1973; POB Leningrad, Russia; Gender Male (individual) [UKRAINE–EO13662]. Designated pursuant to section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation economy.

15. PATRUSHEV, Nikolai Platonovich, Russia; DOB 11 Jul 1951; POB Leningrad,

Russian Federation; nationality Russia; Gender Male; Secretary of the Russian Federation Security Council (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

16. SHAMALOV, Kirill Nikolaevich; DOB 22 Mar 1982; POB Leningrad, Russia; Gender Male (individual) [UKRAINE–EO13662]. Designated pursuant to section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation economy.

17. SHKOLOV, Evgeniy Mikhailovich, Russia; DOB 31 Aug 1955; POB Dresden, Germany; nationality Russia; Gender Male; Aide to the President of the Russian Federation (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

18. SKOCH, Andrei Vladimirovich (a.k.a. SKOCH, Andrey), Russia; DOB 30 Jan 1966; POB Nikolsky (Moscow), Russia; Gender Male; Deputy of State Duma (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

19. TORSHIN, Alexander Porfiryevich, Moscow, Russia; DOB 27 Nov 1953; POB Mitoga village, Ust-Bolsheretsky district, Kamchatka region, Russian Federation; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

20. USTINOV, Vladimir Vasilyevich, Russia; DOB 25 Feb 1953; POB Nikolayevsk-on-Amur, Russian Federation; Gender Male (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

21. VALIULIN, Timur Samirovich, Russia; DOB 20 Dec 1962; POB Krasnozavodsk, Zagorsk District, Moscow Region, Russia; Gender Male; Chief of the General Administration for Combating Extremism of the Ministry of Internal Affairs of the Russian Federation (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

22. VEKSELBERG, Viktor Feliksovich, Russia; DOB 14 Apr 1957; POB Drogobych, Lviv region, Ukraine; Gender Male (individual) [UKRAINE–EO13662]. Designated pursuant to section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation economy.

23. ZHAROV, Alexander Alexandrovich (a.k.a. ZHAROV, Aleksandr), Russia; DOB 11 Aug 1964; POB Chelyabinsk, Russia; Gender Male; Head of the Federal Service for Supervision of Communications, Information Technology, and Mass Media (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

24. ZOLOTOV, Viktor Vasiliyevich, Russia; DOB 27 Jan 1954; POB Ryazanskaya oblast, Russia; nationality Russia; Gender Male; Director of the Federal Service of National Guard Troops and Commander of the

National Guard Troops of the Russian Federation (individual) [UKRAINE–EO13661]. Designated pursuant to section 1(a)(ii)(A) of E.O. 13661 for being an official of the Government of the Russian Federation.

**Entities**

1. AGROHOLDING KUBAN (a.k.a. KUBAN AGRO; a.k.a. KUBAN AGROHOLDING), 77 Mira St., Ust-Labinsk, Krasnodar Territory 352330, Russia; 1 Montazhnaya St., Ust-Labinsk, Krasnodar Territory, Russia; 116 Mira St., Ust-Labinsk, Krasnodar Territory, Russia; 1 G. Konshinykh St., Krasnodar Territory, Russia; 2 Rabochaya St., Ust-Labinsk, Krasnodar Territory, Russia [UKRAINE–EO13661] [UKRAINE–EO13662] [Linked To: DERIPASKA, Oleg Vladimirovich; Linked To: BASIC ELEMENT LIMITED]. Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by BASIC ELEMENT LIMITED, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by BASIC ELEMENT LIMITED, a person determined to be subject to E.O. 13662.

2. BASIC ELEMENT LIMITED (a.k.a. BAZOVY ELEMENT), Esplanade 44, Saint Helier JE4 9WG, Jersey; 30 Rochdelskaya Street, Moscow 123022, Russia; Registration ID 84039 [UKRAINE–EO13661] [UKRAINE–EO13662] [Linked To: DERIPASKA, Oleg Vladimirovich]. Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

3. B–FINANCE LTD, Vanterpool Plaza, 2nd Floor, Wickhams Cay, Road Town, Tortola, Virgin Islands, British [UKRAINE–EO13661] [UKRAINE–EO13662] [Linked To: DERIPASKA, Oleg Vladimirovich]. Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

4. EN+ GROUP PLC, Esplanade 44, Saint Helier JE4 9WG, Jersey; 8 Cleveland Row, London SW1A 1DH, United Kingdom; 1 Vasilisy Kozhinoy St., Moscow 121096, Russia; Registration ID 91061 [UKRAINE–EO13661] [UKRAINE–EO13662] [Linked To: DERIPASKA, Oleg Vladimirovich).

Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

5. GAZ GROUP, 88 Lenin Avenue, Nizhny Novgorod 603950, Russia; 15/1 Rochdelskaya Str., Moscow 123022, Russia [UKRAINE–EO13661] [UKRAINE–EO13662] (Linked To: DERIPASKA, Oleg Vladimirovich; Linked To: RUSSIAN MACHINES). Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by RUSSIAN MACHINES, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by RUSSIAN MACHINES, a person determined to be subject to E.O. 13662.

6. GAZPROM BURENIE, OOO (f.k.a. BUROVAYA KOMPANIYA OAO GAZPROM, DOCHERNEE OBSHCHESTVO S OGRANICHENNOI OTVETSTVENNOSTYU; a.k.a. GAZPROM BURENIYE LLC; a.k.a. LIMITED LIABILITY COMPANY GAZPROM BURENIYE; a.k.a. OBSHCHESTVO S OGRANICHENNOI OTVETSTVENNOSTYU GAZPROM BURENIE), 12A, ul. Nametkina, Moscow 117420, Russia; website *www.burgaz.ru;* Email Address *mail@burgaz.gazprom.ru;* Registration ID 1028900620319; Tax ID No. 5003026493; Government Gazette Number 00156251 [UKRAINE–EO13662] (Linked To: ROTENBERG, Igor Arkadyevich). Designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Igor Arkadyevich ROTENBERG, a person determined to be subject to E.O. 13662.

7. JSC EUROSIBENERGO, 165 Chkalova Street, Divnogorsk, Krasnoyarsk Krai 663091, Russia; 1 Vasilisy Kozhinoy Street, Moscow 121096, Russia; Registration ID 5087746073817; Tax ID No. 7706697347; Identification Number 88303955 [UKRAINE–EO13661] [UKRAINE–EO13662] (Linked To: DERIPASKA, Oleg Vladimirovich; Linked To: EN+ GROUP PLC). Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by EN+ GROUP PLC, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by EN+ GROUP PLC, a person determined to be subject to E.O. 13662.

8. LADOGA MENEDZHMENT, OOO (a.k.a. OBSHCHESTVO S OGRANICHENNOI OTVETSTVENNOSTYU LADOGA MENEDZHMENT; a.k.a. OOO LADOGA MANAGEMENT), 10 naberezhnaya Presnenskaya, Moscow 123317, Russia; Registration ID 1147748143971; Tax ID No. 7729442761; Government Gazette Number 29437172 [UKRAINE–EO13662] (Linked To: SHAMALOV, Kirill Nikolaevich). Designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Kirill Nikolaevich SHAMALOV, a person determined to be subject to E.O. 13662.

9. NPV ENGINEERING OPEN JOINT STOCK COMPANY (a.k.a. AKTSIONERNOE OBSHCHESTVO ENPIVI INZHINIRING; a.k.a. AO ENPIVI INZHINIRING; a.k.a. ENPIVI INZHINIRING, AO; a.k.a. NPV ENGINEERING JOINT STOCK COMPANY; a.k.a. OJSC NPV ENGINEERING), 5, per. Strochenovski B., Moscow 115054, Russia; PER. Strochenovskii B D.5, Moscow 115054, Russia; website *www.npve.narod.ru;* Email Address *npw@npv.su;* Registration ID 1067746536683; Tax ID No. 7707587805; Government Gazette Number 95533058 [UKRAINE–EO13662] (Linked To: ROTENBERG, Igor Arkadyevich). Designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Igor Arkadyevich ROTENBERG, a person determined to be subject to E.O. 13662.

10. RENOVA GROUP (a.k.a. JOINT-STOCK COMPANY RENOVA GROUP OF COMPANIES; a.k.a. JSC RENOVA GROUP OF COMPANIES), V, 28 Balaklavskiy Prospekt, Moscow 117452, Russia; 40, Malaya Ordynka, Moscow 115184, Russia; Registration ID 1047796880448; Tax ID No. 7727526670; Government Gazette Number 772701001 [UKRAINE–EO13662] (Linked To: VEKSELBERG, Viktor Feliksovich). Designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Viktor Feliksovich VEKSELBERG, a person determined to be subject to E.O. 13662.

11. ROSOBORONEKSPORT OAO (a.k.a. OJSC ROSOBORONEXPORT; a.k.a. ROSOBORONEKSPORT OJSC; a.k.a. ROSOBORONEXPORT; a.k.a. ROSOBORONEXPORT JSC; a.k.a. RUSSIAN DEFENSE EXPORT ROSOBORONEXPORT), 27 Stromynka ul., Moscow 107076, Russia; website *www.roe.ru;* Executive Order 13662 Directive Determination—Subject to Directive 3; Registration ID 1117746521452; Tax ID No. 7718852163; Government Gazette Number 56467052; For more information on directives, please visit the following link: *http://www.treasury.gov/resource-center/sanctions/Programs/Pages/ukraine.aspx#directives* [SYRIA] [UKRAINE–EO13662] (Linked To: ROSTEC). Designated pursuant to section 1(b)(i) of Executive Order 13582 of August 7, 2011, "Blocking Property of the Government of Syria and Prohibiting Certain Transactions With Respect to Syria'' (E.O. 13582) for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the Government of Syria.

12. RUSSIAN FINANCIAL CORPORATION (a.k.a. AO RFK–BANK; a.k.a. BANK ROSSISKAYA FINANSOVAYA KORPORATSIYA AKTSIONERNOE OBSHCHESTVO; a.k.a. RFC–BANK; a.k.a. RUSSIAN FINANCIAL CORPORATION BANK JSC), St. George's Lane, D. 1, p. 1, Moscow 125009, Russia; d. 1 korp, 1 per. Georgievski, Moscow 125009, Russia; SWIFT/BIC RFCBRUMM; BIK (RU) 044525257 [SYRIA]. Designated pursuant to section 1(b)(ii) of E.O. 13582 for being owned or controlled by ROSOBORONEKSPORT OAO, a person determined to be subject to E.O. 13582.

13. RUSSIAN MACHINES (a.k.a. RUSSKIE MASHINY), Ul. Rochdelskaya 15, 8, Moscow 123022, Russia; Registration ID 1112373000596; Tax ID No. 2373000582; Identification Number 37100386 [UKRAINE–EO13661] [UKRAINE–EO13662] (Linked To: DERIPASKA, Oleg Vladimirovich; Linked To: BASIC ELEMENT LIMITED). Designated pursuant to section 1(a)(ii)(C)(2) of E.O. for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(ii)(C)(2) of E.O. for being owned or controlled by BASIC ELEMENT LIMITED, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by Oleg Vladimirovich DERIPASKA, a person determined to be subject to E.O. 13662.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by BASIC ELEMENT LIMITED, a person determined to be subject to E.O. 13662.

14. UNITED COMPANY RUSAL PLC, 44 Esplanade, St. Helier JE4 9WG, Jersey; 1 Vasilisy Kozhinoy Str., Moscow 121096, Russia; 11/F Central Twr., 28 Queen's Rd. C, Central District, Hong Kong; Registration ID 94939; Company Number F–17314 (Hong Kong); Business Number 51566843 (Hong Kong) [UKRAINE–EO13661] [UKRAINE–EO13662] (Linked To: EN+ GROUP PLC). Designated pursuant to section 1(a)(ii)(C)(2) of E.O. 13661 for being owned or controlled by EN+ GROUP PLC, a person determined to be subject to E.O. 13661.

Also designated pursuant to section 1(a)(iii) of E.O. 13662 for being owned or controlled by EN+ GROUP PLC, a person determined to be subject to E.O. 13662.

Dated: April 6, 2018.

**Andrea M. Gacki,**

*Acting Director, Office of Foreign Assets Control.*

[FR Doc. 2018–09147 Filed 4–30–18; 8:45 am]

**BILLING CODE 4810–AL–P**

---

# DEPARTMENT OF THE TREASURY

## Open Meeting of the Federal Advisory Committee on Insurance

**AGENCY:** Departmental Offices, U.S. Department of the Treasury.

**ACTION:** Notice of open meeting.

IN THE HIGH COURT OF FIJI AT SUVA
**[CIVIL JURISDICTION]**

Civil Action HBM NO.   57   of 2022

BETWEEN **THE DIRECTOR OF PUBLIC PROSECUTIONS** of the Republic of Fiji, 25 Gladstone Road, Suva, for and on behalf of the STATE.

**APPLICANT**

AND   **Suleiman      Abusaidovich Kerimov** being the beneficial owner of the   Motor   Yacht   Amadea   with International   Maritime   Organisation Number 1012531 having his address of service at Haniff Tuitoga, 12 Vesi Street, Flagstaff.

---

AFFIDAVIT IN SUPPORT OF SUMMONS

---

Affidavit Sworn by: Nimisha Shankar
Date Sworn:   19|4|22
Date Filed:   19|4|22 .
Filed on behalf of: The APPLICANT

FILED

19 APR 2022

HIGH COURT CIVIL
SUVA

Service Accepted Without Prejudice

HANIFF TUITOGA
19|4|22
H-37pm

---

THE DIRECTOR OF PUBLIC
PROSECUTIONS
PO BOX 2355, GOVERNMENT BUILDINGS
25 GLADSTONE ROAD, SUVA