**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-09304 |
| THE M/Y *AMADEA*, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO, | The Honorable Dale E. Ho  **ORAL ARGUMENT REQUESTED** |
| Defendant-*In-Rem*, | |
| and | |
| EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD., | |
| Claimants. | |

**CLAIMANTS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR INTERLOCUTORY SALE**

FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 858-0040 (main)
Fax: (212) 256-1047

*Attorneys for Claimants Eduard Yurievich Khudainatov and Millemarin Investments Ltd.*

## PRELIMINARY STATEMENT

Even with new arguments made in its reply memorandum, the government still fails to make a sufficient showing warranting an interlocutory sale, and this Court may deny the government's motion now on the merits. In addition, the Court should not order an interlocutory sale unless and until it first determines that the government has set forth a viable claim entitling it to seek forfeiture of the Amadea.

In its reply, the government continues to assert that what is "excessive" can be determined in a vacuum, relying on inapposite rulings that either did not contain any analysis and was unopposed (*Galactica Star*), did compare costs to normal and customary costs *and* the value (*Woodland Dream*), or arose in a different context with inapplicable considerations. The government then repackages its argument that "excessive" can be determined in a vacuum by proposing that this Court can compare the Amadea's upkeep costs to "what is fair for taxpayers to pay."[1] Reply at 3. To the extent such an abstract and subjective determination is even possible, this is not the appropriate forum to determine tax policy. The government also presents a valuation submitted in a declaration in which the declarant states that a valuation was performed by an unknown person and provides the dollar amount and the date on which the valuation was completed. That declaration however, is hearsay and must be excluded. Even if admitted, the valuation is not reliable as the government now claims the Amadea is worth $230 million, when two weeks ago the government alleged in its Verified Amended Complaint that it was worth $300 million or more (and alleged last October it was worth between $300 million and $500 million).

---

[1] The government's Reply Memorandum in Support of its Motion for Interlocutory Sale will be cited to herein as "Reply" Claimants' Memorandum in Law in Opposition to the Government's Motion for Interlocutory Sale will be cited to herein as "Opp."

The fundamental question remains whether the Amadea's upkeep costs are "excessive" when compared to either (1) what normal and customary costs for a vessel of this nature and (2) its value. Nothing in the government's reply memorandum demonstrates that the answer to these questions is yes. Therefore, the Court should deny the government's motion.

I.     **The Government has Failed to Satisfy any Factor Warranting a Sale.**

    A.  **Rule G(7)(b)(i)(B) Does Not Contain a Standalone "Excessive" Prong that Permits Analysis of Costs in a Vacuum.**

Contrary to the government's assertion (Reply at 1), Rule G(7)(b)(i)(B) does not contain an "excessive" prong and a "disproportionate" prong. Opp. at 7-12. Courts (including in the government's cases) appropriately analyze whether costs are "excessive or disproportionate" in relation to something else.[2] *Id.*

In its reply, the government doubles-down on its reliance on *United States v. M/Y Galactica Star*, No. 4:17-cv-02166 (S.D. Tex. Mar. 20, 2019), claiming this case is "persuasive authority" that there is a standalone "excessive prong," and determining what is "excessive" does not require a comparison of costs to anything else. Reply at 2. However, this ruling, *based on an unopposed motion,* is a minute entry with no analysis (No. 4:17-cv-02166, Ford Decl. Exh. E).

| 03/20/2019 | Minute Entry for proceedings held before Judge Keith P Ellison. MOTION HEARING held on 3/20/2019. The Court finds that continued possession of the Galactica Star would result in excessive costs for maintenance and storage, estimated at around $170,000 per month. Supp. R. G(7)(b)(i)(B). The Court also finds that the yacht is subject to market value depreciation and deterioration while it remains in the Government's possession. Supp. R. G(7)(b)(i)(A). The Government's motion for interlocutory sale is GRANTED. (Doc. No. 169 .) Appearances:Rebecca Gibson, Jean Patton. Yasin M Almadani, Nicole Dania Lueddeke, William Coffield, Joshua Lee Sohn.(Court Reporter: K. Metzger)(Law Clerk: L. Scaduto), filed.(arrivera, 4) (Entered: 03/20/2019) |
|---|---|

---

[2] The government claims that the court in *United States v. Woodland Dream*, No. 5:13-CV-279-JMH, 2013 WL 5775298 (E.D. Ky. Oct. 24, 2013) did not state the horse's value and "expressly held that her upkeep costs could be 'excessive' without being 'disproportionate to her fair market value.'" Reply at 2 n.1. The court, however, made no such analysis or holding. Opp. at 10-11. The word "value" appears 28 times in the decision because the court in analyzing whether a sale should be ordered was concerned that the horse's value would "plummet" based on her "age, reproductive history, and countenance." *Woodland Dream*, 2013 WL 5775298, at *5.

2

As for the three new cases on which the government relies, none supports the government's view that costs can be analyzed in a vacuum, and are irrelevant to the analysis here. Reply at 2. These new cases are private *in rem* causes of action brought by aggrieved parties who had maritime liens because they were owed money relating to the defendant vessels and were seeking to recoup that debt. In *Bartell Hotels v. S/L Talus*, 445 F.Supp.3d 983, 985-86 (S.D. Ca. 2020) and *Vineyard Bank v. M/Y Elizabeth I*, No. 08-CV-2044, 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009), aggrieved parties (a marine owner and a mortgage lender) brought *in rem* actions against vessels based on nonpayment by the vessels' owners. Neither owner appeared in their respective actions, and both motions for interlocutory sale were unopposed. In both cases, the plaintiffs, the aggrieved parties, were responsible for paying the maintenance costs while the actions were pending. Both courts deemed the costs to be "excessive and disproportionate," **as no claimants appeared**, "no payments are being made to creditors, the Vessel is idle and the costs of custody are accruing." *Bartell Hotels*, 445 F. Supp. 3d at 988; *Vineyard Bank*, 2009 WL 799304, at *2 (finding costs were "excessive and disproportionate" where "Defendant has made no attempt to answer Plaintiff's Complaint or secure the vessel's release."). And as for the case where the owner appeared, *Ferrous Financial Services Co. v. O/S Arctic Producer*, 567 F.Supp. 400, 401 (W.D. Wa. 1983), the court granted the motion for interlocutory sale because the court found "an unreasonable delay" by the owner to secure the vessel's release (obviously not the case here) and the expense of keeping the vessel was to be borne by the lender in this matter (again, not the case here).[3]

---

[3] The government argues that the court in *United States v. One 2005 Lagoon 440 Sailing Catamaran*, No. CV 13-9262, 2017 WL 10573808, at *2 (C.D. Ca. Sept. 22, 2017), rejected the notion that determining what is excessive requires a comparison to something else. Reply at 5. However, the court there expressly compared the costs to the "average retail price" in determining that they were excessive. *Id*.

3

## B. This is not the Appropriate Forum for Policy Determinations About What Is Fair for Taxpayers.

The government proposes that the Court can consider whether costs are "excessive" "compared to what is fair for taxpayers to pay." Reply at 2-3. Not surprisingly, this assertion finds no support in the law. In making this argument, the government still fails to acknowledge that Rule G(7)(b)(i)(B) requires that this Court compare upkeep costs to something that is objective, concrete, and verifiable. The Rule does not permit subjective determinations of what is fair for taxpayers, an exercise courts routinely avoid making since determining what is fair to taxpayers is the function of Congress. Such a determination would not be appropriate in a contested forfeiture action.[4] The only relevant analysis is whether the payments are excessive compared to either what is customary and usual (they are not) or compared to the asset's value, which the government has failed to establish, dooming its request for a sale.[5]

## C. The Valuation Provided in the Supplemental Declaration of Jennifer Crane Must Be Disregarded Because it Constitutes Impermissible Hearsay.

In the Supplemental Declaration of Jennifer Crane that was filed with the government's Reply Memorandum (cited as "Supp. Crane Decl."), Crane states "[i]n 2022, [the United States Marshal Service ("USMS")] retained an independent surveyor to provide an appraisal of the

---

[4] It is the Department of Justice ("DOJ") that decides how to allocate the resources it is provided by Congress. And the DOJ here made the calculated decision that seizing and maintaining the Amadea was a good use of its resources. Indeed, a co-director of the Task Force KleptoCapture recently stated: "We do spend some money upfront to maintain these assets. That will pay off significant dividends down the line . . . ." *The Whole Story with Anderson Cooper, Superyachts and the Super Rich*, TRANSCRIPTS (Jan. 28, 2024, 8:00 p.m. ET) https://transcripts.cnn.com/show/ws/date/2024-01-28/segment/01.

[5] This Court should not countenance the government's argument that "the reason it did not file a forfeiture action before October 2023 is that Claimants reached out to the Government and sought repeated audiences . . . ." Reply at 6. The government was not required to give Claimants repeated audiences, nor do Claimants here (or any claimants in any civil judicial forfeiture action) have control or say over when a forfeiture complaint is filed.

4

Amadea. According to that surveyor's statement of valuation, dated October 4, 2022, the fair market value of the *Amadea* is $230 million." Supp. Crane Decl. ¶ 3. Because Crane relies on a valuation conducted by an unnamed person, this valuation, is an out of court statement offered for its truth, leaving Claimants without the ability to confront the supposed independent surveyor or challenge the valuation. The government also fails to provide a copy of the purported valuation. As such, the Court has no basis to determine whether the person who conducted the valuation was even qualified to do so. Therefore, the Supplemental Crane Declaration constitutes inadmissible hearsay, and should not be considered by this Court.

The government is aware that attempting to get valuation evidence in by hearsay is impermissible. In *One 2005 Lagoon 440 Sailing Catamaran*, 2017 WL 10573808, at *1 n.3, a case cited by the government, the government there, like here, submitted a declaration of a "Seizure and Forfeiture Specialist" from the USMS. In that declaration, the declarant asserted that "'an appraisal conducted during June 2017 by a contractor employed by the USMS[] [revealed that] the value of the vessel is $220,000 as of June 2017.'" *Id*. The court sustained the claimant's objection to that assertion based on hearsay, and rejected the government's argument that this information was "offered for its effect on the listener." The government attempts the same trick here but just as in the government's own case, the valuation information here does not fall under any hearsay exception delineated in Federal Rule of Evidence 803. Thus, the Supplemental Crane Declaration should be deemed inadmissible and not considered by this Court. And the government's failure to provide this information is fatal to its motion. Opp. at 8-9.[6]

---

[6] Notably, the government fails to distinguish—because it cannot—the cases cited by Claimants where courts denied interlocutory sales based on the movants' failure to provide a basis from which to gauge whether the costs were excessive. Opp. at 12.

5

The valuation should be disregarded for another reason. The government's valuation of the Amadea of $230 million (Supp. Crane Decl. ¶ 3), which it had since October 4, 2022, is significantly less than what the government has been claiming the Amadea is worth as recently as a few weeks ago. In fact, it comes in between $70 million and $270 million less than the government verified to this Court in its complaints. In paragraph 13 of the government's Verified Complaint for Forfeiture filed in this matter on October 23, 2023, the government alleged that the Amadea's value had "been reported as between $300 million and $500 million." In paragraph 12 of its First Amended Complaint filed on February 16, 2024, the government alleged the Amadea to be worth "$300 million or more." The government should not be able to claim a higher value in its pleadings, and then appear with a significantly lower value when it seeks to persuade this Court that it should sell the vessel because it is required to compare maintenance costs to asset value.

### D. The Costs are Not Excessive Relative to the Vessel's Value or Customary and Normal Costs.

Even if this Court were to accept the government's valuation, the government has failed to establish the costs are excessive in relation to either the government's alleged value (whichever figure) or to normal and customary costs for a vessel like the Amadea. Opp. at 13-15. The government estimated the annual running costs of the Amadea to be between $25 million and $30 million, and it is well-known in the industry that annual costs are typically 10% of the vessel's value. Opp. at 14. That equates to $23 million per year, or $1.9 million per month. The government's current costs are well over a million dollars less, and thus not excessive.

The cases on which the government relies where interlocutory sales were ordered "when monthly costs were roughly" the same percentage as the government calculated here, Reply at 4, either contain no analysis or involved dispositive facts not present here. The ruling in *United States v. $1,133,648.97 et al.*, No. 07-175, ECF No. 68 (D. Haw. Nov. 2, 2007), merely states—without

6

analysis—that the property was deteriorating and depreciating and the maintenance costs were excessive *and disproportionate*. But the government does not argue the asset here is depreciating.[7] The government's other cases involve private causes of action which, by their nature, entail inapplicable considerations, including that plaintiffs were often responsible for the maintenance costs of the subject asset.[8] By contrast, in this case, the government made a conscious and informed decision to accept the substantial costs of maintaining the Amadea when it decided to seize it.

### E. A Sale is Irreversible and Would Irreparably Prejudice Claimants.

Mr. Khudainatov commissioned the Amadea, a bespoke superyacht that was built to his specifications, with design elements that do not exist on any other vessel in the world. He paid roughly €232,000,000 ($265,000,000) for the Amadea. The government claims that its fair market value in 2022 was $230,000,000, an amount significantly lower than what Mr. Khudainatov paid.

The government's claim that it can sell the Amadea for an amount that would not prejudice Claimants is not credible. Reply at 5-6. There are many reasons why the Amadea may be difficult to sell at a fair price at this moment, as the Amadea is the subject of a contested forfeiture action

---

[7] Indeed, here it seems to be quite the contrary. Even accepting the government's valuation as accurate—which Claimants do not—the Amadea was valued at $230 million two years ago and is today valued at either $300 million or more (as the government alleges in its Amended Complaint) or the same $230 million the government asserts in the Supplemental Crane Declaration.

[8] *One 2005 Lagoon 440 Sailing Catamaran*, 2017 WL 10573808, at *2 (finding costs to be excessive and disproportionate, as costs accrued while forfeiture case was stayed for three years *pursuant to a joint stipulation* while claimant's criminal case was pending, and thus delay was not the fault of the government, and claimant was ultimately convicted); *United States v. Any & All Funds in UBS AG, Account Number XXXX1138*, 628 Fed. App'x 296 (5th Cir. 2016) (affirming order granting interlocutory sale based primarily on the aircraft's significant depreciation (not argued here)); *Caterpillar Fin. Servs. Corp. v. Coleman,* No. 99-03821, 1999 WL 33218595 (C.D. Cal. Aug. 19, 1999) (granting interlocutory sale on the sole ground that the claimants "have yet to secure the release of the vessel," in private mortgage foreclosure action where claimants owe plaintiff $136,778.08 plus daily interest); *Freret Marine Supply v. M/V ENCHANTED CAPRI*, No. 00-3805, 2001 WL 649764 (E.D. La. June 11, 2001) (ordering interlocutory sale of a cruise ship because claimant failed to secure the vessel's release, and in light of that fact the costs were excessive to plaintiff, who was already owed money by the owner).

where the government has not yet set forth a legally cognizable claim to forfeit it, and at best may only be entitled to a mere $1.2 million in vendor payments.

**II.     This Court Should Not Decide the Interlocutory Sale Motion Until the Government has Set Forth a Legally Cognizable Claim for Forfeiture of the Amadea.**

As Claimants intend to argue in their upcoming motion to dismiss, the government's First Amended Complaint does not cure the fatal deficiencies in its first complaint, which failed to set forth a legally viable claim to forfeit the Amadea. Rather, at most, the government may be able to obtain $1.2 million (which Claimants are willing to put in the Court's CRIS account during the pendency of this litigation). Finally, contrary to the government's assertion that Claimants cited no cases in support of deferring a decision on the sale until after a motion to dismiss is decided in the government's favor, Claimants reviewed the government's cases and did not find one case where the interlocutory sale was ordered before an answer was filed. Opp. at 17 n.10. Even in the case most recently cited by the government *Michaels v. M/Y No Bad Days*, No. CV 06-1185, ECF No. 56 at 1 (C.D. Cal. June 12, 2006), an answer was filed before the plaintiff moved for interlocutory sale. The same should happen here.

## CONCLUSION

What the government is attempting here is anathema to our system of democratic government, taking someone's unique property and selling it, before any chance to contest the government's right to forfeit it.

For all the foregoing reasons, the government has failed to demonstrate a showing sufficient to warrant an interlocutory sale of the Amadea. Therefore, the Court should deny the government's motion at this time on the merits. In the alternative, this Court should hold this motion in abeyance until this Court's ruling on Claimants' forthcoming motion to dismiss, which

will demonstrate that the government has failed to allege legal theories that entitle it to forfeit the Amadea at all.

Dated: March 8, 2024

                                                Respectfully submitted,

By: */s/ Adam C. Ford*
     Adam C. Ford
     Renée L. Jarusinsky
     Bryan W. McCracken
     FORD O'BRIEN LANDY LLP
     275 Madison Avenue, 24th Floor
     New York, NY 10016
     Tel.: (212) 858-0040 (main)
     Fax: (212) 256-1047
     aford@fordobrien.com
     rjarusinsky@fordobrien.com
     bmccracken@fordobrien.com

     *Attorneys for Claimants Eduard Yurievich Khudainatov and Millemarin Investments Ltd.*

9

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Sur-Reply in Further Opposition to the government's Motion for Interlocutory Sale was served on all counsel of record via the Court's CM/ECF system.

Dated: March 8, 2024

*/s/ Adam C. Ford*
Adam C. Ford
