UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,
:
       Plaintiff,
:
       - v. -
:
THE M/Y *AMADEA*, A MOTOR YACHT
BEARING INTERNATIONAL MARITIME      :      23 Civ. 9304 (DEH)
ORGANIZATION NO. 1012531, INCLUDING
ALL FIXTURES, FITTINGS, MANUALS,       :
STOCKS, STORES, INVENTORIES, AND
EACH LIFEBOAT, TENDER, AND OTHER      :
APPURTENANCE THERETO,
:
       Defendant-*In-Rem*.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## UNITED STATES OF AMERICA'S OPPOSITION TO CLAIMANTS' MOTION FOR RECONSIDERATION

| | |
|---|---|
| | DAMIAN WILLIAMS<br>United States Attorney for the |
| JENNIFER JUDE<br>Assistant United States Attorney | Southern District of New York<br>86 Chambers Street, Third Floor<br>New York, New York 10007 |
| | |
| JOSHUA L. SOHN<br>Trial Attorney,<br>Money Laundering and Asset<br>Recovery Section | MARGARET A. MOESER<br>Acting Chief<br>Money Laundering and Asset<br>Recovery Section, Criminal Division<br>U.S. Department of Justice |
| | |
| YIFEI ZHENG<br>Trial Attorney,<br>Counterintelligence and Export<br>Control Section | JENNIFER KENNEDY GELLIE<br>Acting Chief<br>Counterintelligence and Export<br>Control Section, National Security<br>Division<br>U.S. Department of Justice |

The Court should deny Claimants' Motion for Reconsideration, which does not meet the standard for reconsideration and also violates Local Rule 6.3.[1] Specifically, this Court held that the seizure of the *Amadea* in Fiji did not implicate the Fourth Amendment under *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), since *Verdugo-Urquidez* held that seizure abroad of non-resident alien property does not implicate the Fourth Amendment. In seeking reconsideration, Claimants try to get around *Verdugo-Urquidez* by erroneously calling it a "plurality" opinion that is not binding. Mot. at 7 ("*Verdugo-Urquidez* is a plurality decision which has no binding precedential effect in the Second Circuit."). Claimant's assertion is a clear mischaracterization of law, as the main *Verdugo-Urquidez* opinion was explicitly joined by five Justices. For that reason and the other reasons discussed below, Claimants' Motion should be denied.

   I.   **Background**

As this Court is aware, the Government seized the *Amadea* in Fiji in 2022. Before seizing the vessel, the Government obtained a seizure warrant from a U.S. Magistrate Judge, transmitted the warrant to Fiji as part of a Mutual Legal Assistance request, and asked the Fijian government to turn the yacht over to the U.S. Government. The Fijian government did so. This civil forfeiture case later ensued.

On February 16, 2024, Claimants filed a discovery motion seeking expedited production of materials relating to the seizure warrant. ECF No. 38. Claimants argued that they needed these materials to seek release of the *Amadea*, on the theory that the Government's seizure of the

---

[1] Local Rule 6.3, which governs motions for reconsideration, states that "[n]o affidavits shall be filed by any party unless directed by the Court." Yet Claimants' Motion is accompanied by an attorney Declaration (*i.e.* affidavit) that attaches various materials.

*Amadea* violated the Fourth Amendment. *See id.* at 1 ("the government seized the Amadea in violation of the Fourth Amendment . . . In the alternative, Claimants will argue that a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) should be conducted first to ensure that the Court does not order the sale of an asset seized in violation of Fourth Amendment.").

The Government opposed Claimant's discovery motion, arguing (among other things) that "the linchpin of Claimants' argument is that the Government seized the *Amadea* 'in violation of the Fourth Amendment,' but that is a legal impossibility. The *Amadea* was seized in Fiji, and '[t]he Fourth Amendment does not apply to the search and seizure of property owned by a nonresident alien located in a foreign country.' *Matter of Seizure & Search of Motor Yacht Tango*, 597 F. Supp. 3d 149, 152 (D.D.C. 2022) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 259 (1990))." ECF No. 39 at 2-3.

In their Reply, Claimants responded that "the government's claim that the Fourth Amendment does not apply here is stunning." ECF No. 40 at 2. Claimants argued that "[t]he cases cited by the government to support this legally untenable position are distinguishable, as they involve searches or seizures conducted by local law enforcement abroad, and not by the United States." *Id.* Of course, Claimants' characterization is false as to *Verdugo-Urquidez*, which involved a search by U.S. DEA agents in Mexico. *Verdugo-Urquidez*, 494 U.S. at 262.

On February 22, the Court heard oral argument on Claimants' discovery motion. At oral argument, the Court asked Claimants whether they had any basis to attack the seizure of the *Amadea* other than their Fourth Amendment argument. Claimants conceded they had no other basis.

Late afternoon on February 22, the Court issued a short Order denying Claimants' discovery motion. ECF No. 44. Specifically, the Court held that:

> Claimants' request is denied because the basis of their argument—that the initial seizure of the property may have violated the Fourth Amendment and that Claimants should be allowed to gather evidence to develop this argument—fails because "the Fourth Amendment (and, in particular, its warrant requirement) does not apply extraterritorially . . . at least where the '[the defendant] was a citizen and resident of [of another country] with no voluntary attachment to the United States.'" *United States v. Hasbajrami*, 945 F.3d 641, 662 (2d Cir. 2019) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 274-75 (1990)). Claimants' letter or presentation at oral argument present no reason to conclude that the Fourth Amendment would apply to the Amadea's seizure in Fiji.

*Id.* at 2. Thus, Claimant's current contention that the Court's Fourth Amendment ruling was made "without briefing by the parties" (Mot. at 13) is false. Rather, Claimants had a full opportunity to assert their Fourth Amendment position, in briefing and oral argument.

On March 7, Claimants filed the present Motion, asking the Court to reconsider its holding that the Fourth Amendment does not apply to the seizure of the *Amadea* in Fiji.

## II.     Legal Standard

The reconsideration standard is strict, "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (quotation marks omitted). "[T]o be entitled to reconsideration, a movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Id.* at 405 (quotation marks omitted).

## III.    Argument

Under this standard, Claimants are not entitled to reconsideration because they do not show that the Court overlooked "controlling decisions or factual matters that were put before it on the underlying motion." As detailed below, Claimants mis-cite *Verdugo-Urquidez*, make

3

other misstatements of law, and ignore how the Government's custody of the *Amadea* does not even depend on the warrant that Claimants wish to attack.

### A. Claimants Mis-Cite *Verdugo-Urquidez*

The first two sentences of *Verdugo-Urquidez* state a clear rule, which dooms Claimants' argument that the seizure of the *Amadea* in Fiji is subject to Fourth Amendment scrutiny. Specifically, the first two sentences of *Verdugo-Urquidez* state: "The question presented by this case is whether the Fourth Amendment applies to the search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country. We hold that it does not." 494 U.S. at 261. By its terms, this rule does not distinguish between warrantless seizures or seizures under a warrant. Nor does it distinguish between the Fourth Amendment's warrant requirement and other provisions of the Fourth Amendment. Rather, the rule is broad and simple: "the Fourth Amendment" does not apply to "seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country." *Id.* Claimants do not dispute that the seizure of the *Amadea* in Fiji qualifies as "seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country." Thus, the Fourth Amendment does not apply to such seizure under *Verdugo-Urquidez*, as this Court recognized in its February 22 Order.

In an effort to resist this conclusion, Claimants argue that "*Verdugo-Urquidez* is a plurality decision which has no binding precedential effect in the Second Circuit." Mot. at 7. This is flagrantly false. The caption preceding the *Verdugo-Urquidez* Opinion of the Court states: "REHNQUIST, C.J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, and KENNEDY, JJ., joined." 494 U.S. at 261. Thus, the above-cited opinion in

*Verdugo-Urquidez* was a majority opinion joined by five Justices. It most certainly has "binding precedential effect in the Second Circuit," and it is frivolous for Claimants to argue otherwise.

Claimants seem to argue that Justice Kennedy cannot be counted as joining the Opinion of the Court because he also wrote a concurrence. *See* Mot. at 8. While Justice Kennedy did write a concurrence, he also expressly joined the majority opinion. *Verdugo-Urquidez*, 494 U.S. at 275 (Kennedy, J., concurring) ("Although some explanation of my views is appropriate given the difficulties of this case, I do not believe they depart in fundamental respects from the opinion of the Court, *which I join*.") (emphasis added). Thus, the majority opinion was joined by five Justices and constitutes binding precedent. It is Justice Kennedy's concurrence that is not binding precedent, for it garnered only one vote and was not necessary to create a five-Justice majority.

In any event, Claimants also mis-cite Justice Kennedy's concurrence. Specifically, Claimants state that Justice Kennedy "filed a separate concurrence which diverged, in large part, from the 'majority' opinion and expressly *rejected* the Chief Justice's position that foreign aliens have no Fourth Amendment rights when litigating in the United States." Mot. at 8 (emphasis in original). This is false. Nowhere did Justice Kennedy "reject" the majority's position regarding the Fourth Amendment. To the contrary, he stated: "The absence of local judges or magistrates available to issue warrants, the differing and perhaps unascertainable conceptions of reasonableness and privacy that prevail abroad, and the need to cooperate with foreign officials all indicate that the Fourth Amendment's warrant requirement should not apply in Mexico as it does in this country. For this reason, *in addition to the other persuasive justifications stated by the Court,* I agree that no violation of the Fourth Amendment has occurred in the case before us." 494 U.S. at 278 (Kennedy, J., concurring) (emphasis added). And while Claimants assert that "[i]n *Verdugo-Urquidez*, five justices unambiguously asserted their position that aliens litigating

5

in the United States have Fourth Amendment rights" (Mot. at 8), Claimants provide no quote from Justice Kennedy adopting such position. Claimants instead quote four other Justices stating this position and then drop a quoteless cite to page 278 of Justice Kennedy's concurrence. *Id.* The Government encourages the Court to read page 278. Nowhere did Justice Kennedy take the position that Claimants ascribe to him.

Because Claimants' Motion is based on clear mischaracterizations of *Verdugo-Urquidez*, Claimants' Motion should be denied. Under *Verdugo-Urquidez*, there is no basis to reconsider this Court's ruling that the Fourth Amendment was inapplicable to seizure of the *Amadea* in Fiji.

### B.  Claimants Confuse International Law for the Fourth Amendment

Claimants also argue that *Verdugo-Urquidez* should not apply to this case because the search in *Verdugo-Urquidez* was a warrantless search, while in this case the Government obtained a seizure warrant. Claimants further argue that the warrant was critical to the Government's ability to obtain the *Amadea* under international and Fijian law, and thus the Fourth Amendment should apply here even though it did not apply in *Verdugo-Urquidez*.

This argument fails for numerous reasons, First, it defies *Verdugo-Urquidez*'s actual holding. The first two sentences of *Verdugo-Urquidez* hold that the Fourth Amendment does not apply to searches and seizures of non-resident alien property abroad, with no distinction drawn between warrantless seizures or seizures under a warrant.

Second, the crux of Claimants' argument is that the UN Convention Against Transnational Organized Crime (UNTOC) and domestic Fijian law required a U.S. seizure warrant before Fiji could turn the *Amadea* over to the U.S. Government. This is not actually true: both UNTOC and Fijian law allow a requesting state to obtain property *either* by transmitting a seizure order to the requested state *or* by asking the requested state to obtain a seizure order

6

itself. *See* UNTOC, Art. 13(1)(a-b); Mutual Assistance in Criminal Matters Act 1997 (Fiji), §§ 13(6) and 31.[2] The U.S. Government chose the former route, but it could have chosen the latter.

More importantly: even if a U.S. seizure warrant were the only way for the U.S. Government to obtain the *Amadea* under UNTOC and Fijian law, Claimants offer no support for their position that Fourth Amendment standards for attacking a seizure warrant would apply under UNTOC or Fijian law. In other words, they offer no support for the proposition that the Fijian courts would have entertained a challenge to enforcing the U.S. warrant based on an allegation that the warrant lacked probable cause. Indeed, Claimants' own quotes from the Fijian court proceedings show that the Fijian courts would not and did not investigate whether the warrant was supported by probable cause. *See* Mot. at 10. Thus, Claimants' Fourth Amendment argument is irrelevant to the Government's acquisition of custody from Fiji because there is no indication that the Fijian courts would have entertained a Fourth Amendment challenge.

Finally, even if Fijian courts would deem it a violation of UNTOC or Fijian law to enforce a U.S. seizure warrant that lacked probable cause, and even if the seizure warrant here lacked probable cause,[3] that would merely mean that the seizure of the *Amadea* violated the U.S.-Fiji bilateral relationship. That would be a matter for Fiji to address through diplomatic or other executive-to-executive actions; it is not a Fourth Amendment matter within the purview of this Court. As *Verdugo-Urquidez* stated: "For better or for worse, we live in a world of nation-states in which our Government must be able to 'functio[n] effectively in the company of sovereign nations.' . . . If there are to be restrictions on searches and seizures which occur

---

[2] Available at https://www.laws.gov.fj/Acts/DisplayAct/818#

[3] The Government strongly disputes that the seizure warrant lacked probable cause.

incident to such American action, they must be imposed by the political branches through diplomatic understanding, treaty, or legislation." 494 U.S. at 275.

For all these reasons, Claimants' citations to UNTOC and Fijian law do not show any justiciable Fourth Amendment controversy here.

### C. Even a Successful Fourth Amendment Attack on the Seizure Warrant Would Not Affect Custody of the *Amadea*

Moreover, even if Claimants could void the seizure warrant under the Fourth Amendment, that would not let them regain custody of the *Amadea*. This is because the *Amadea* is now restrained not just under the seizure warrant, but also under the arrest warrant *in rem* that issued based on the Government's civil forfeiture Complaint. ECF No. 39-1.

In oral argument on the underlying discovery motion, Claimants argued that undoing the seizure warrant would also undo the arrest warrant because: (a) the seizure warrant gave the Government custody of the *Amadea*; and (b) the Government's custody is what allowed the Clerk of the Court to issue the arrest warrant under Supplemental Rule G(3)(B)(i). But as the Government responded in oral argument, Claimant's argument is incomplete. While it is true that the Clerk cannot issue an arrest warrant under Rule G(3)(B)(i) without pre-existing Government custody, the Court can and must issue an arrest warrant under Rule G(3)(B)(ii) when the property is not under Government custody, as long as the civil forfeiture Complaint shows probable cause for forfeiture. Thus, even if the Court were to void the seizure warrant under the Fourth Amendment and also void the Clerk's arrest warrant, the Court would then need to decide whether the Complaint shows probable cause for forfeiture and whether the Court should thus issue a new arrest warrant under Rule G(3)(B)(ii).

The Government believes the operative Complaint (ECF No. 37) does show probable cause for forfeiture. If the Court were to agree, then Claimants' desired Fourth Amendment attack on the seizure warrant is irrelevant because it would not affect custody of the *Amadea*.

### D. The Court Should Deny Claimants' Alternative Request for Interlocutory Appeal

Finally, the Court should deny Claimants' alternative request to certify the Fourth Amendment question for interlocutory appeal under 28 U.S.C. § 1292(b). None of the statutory requirements for Section 1292(b) certification are present here. There is no "substantial ground for difference of opinion" on the Fourth Amendment question because Claimants' position defies controlling precedent (*Verdugo-Urquidez*) and implausibly casts *Verdugo-Urquidez* as a non-binding plurality opinion. Resolving the Fourth Amendment question also would not "materially advance the ultimate termination of the litigation," both because it would not affect custody of the *Amadea* and because changing custody of the *Amadea* would not end this litigation in any event. For all these reasons, Section 1292(b) certification is not warranted here.

### IV. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny Claimants' Motion.

Dated: New York, New York
       March 14, 2024

                                                Respectfully submitted,

MARGARET A. MOESER                    DAMIAN WILLIAMS
Acting Chief                                        United States Attorney for the
Money Laundering and Asset Recovery      Southern District of New York
Section, Criminal Division                     U.S. Department of Justice
U.S. Department of Justice

By: /s/ *Joshua L. Sohn*                      By: /s/ *Jennifer Jude*
    JOSHUA L. SOHN                              JENNIFER JUDE
    Trial Attorney                                     Assistant United States Attorney
    Money Laundering and Asset          Southern District of New York
    Recovery Section


JENNIFER KENNEDY GELLIE
Acting Chief
Counterintelligence and Export Control
Section, National Security Division
U.S. Department of Justice


By: /s/ *Yifei Zheng*
    YIFEI ZHENG
    Trial Attorney
    Counterintelligence and Export
    Control Section