

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

<i>86 Chambers Street<br>New York, New York 10007</i>

March 14, 2024

By ECF
The Honorable Dale E. Ho
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. M/Y Amadea*, No. 23-cv-9304 (DEH)

Dear Judge Ho:

      Pursuant to Local Civil Rule 37.2 and Rule 4 of Your Honor's Individual Rules, the Government respectfully requests a conference to discuss its motion to compel responses to special interrogatories it served on Eduard Khudainatov and Millemarin Investments Ltd.[1] ("Claimants"). Under Rule G(8)(c)(i)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, failure to respond to special interrogatories is grounds to strike a claim.

      As this Court is aware, this is a civil forfeiture action involving the M/Y *Amadea*, a 348-foot superyacht. The Government's first amended complaint, ECF No. 37 (the "FAC"), alleges that the *Amadea* is beneficially owned by sanctioned Russian oligarch Suleiman Kerimov and has been operated in violation of U.S. sanctions. *See* FAC ¶¶ 5-7. The FAC further alleges that Mr. Khudainatov is a straw owner who is falsely claiming to be the beneficial owner of the *Amadea* (as he has for other yachts). *Id.* ¶¶ 45-49.

### A. The Government Is Entitled to Discover Information Related to Claimants' Relationship to the *Amadea* Through Special Interrogatories

      To participate in this proceeding, Claimants bear the burden of establishing standing, which is a threshold, jurisdictional issue. *United States v. One Red 2003 Hummer H2*, 234 F. Supp. 3d 415, 418-19 (W.D.N.Y. 2017). To do so, they must demonstrate a possessory or ownership interest in the *Amadea*, the subject property. *Id.* A putative claimant must file a verified claim describing its interest in the property. Supp. R. G(5)(a). Certificates of title and similar records are not dispositive because "in determining standing in civil forfeiture cases, the court must look beyond bare legal title and examine whether the record owner is the true owner, or merely a 'strawman' set up to avoid forfeiture." *One Red 2003 Hummer*, 234 F. Supp. 3d at 418-19.

      "To collect evidence on the issue of standing, Rule G(6) broadly allows the government to collect information regarding the claimant's 'relationship to the defendant property' through the

---

[1] According to the claim, Mr. Khudainatov "is the sole shareholder of Invest International Finance Ltd., which is the sole shareholder of Millemarin." ECF No. 9 ¶ 1.

use of special interrogatories." *United States v. $22,847.99 In Acct. Funds Seized From Interactive Brokers Acct. No. XXXX68971*, No. SACV-1600331, 2016 WL 4803192, at *1 (C.D. Cal. Sept. 13, 2016); *see also* Adv. Comm. Note to Supp. R. G(6). "So important are these interrogatories to the issue of standing that Rule G(8)(c)(1) permits the government to move to strike a claim or answer '(A) for failing to comply with Rule G(5) or (6); or (B) because the claimant lacks standing.'" *United States v. $10,055.00 in U.S. Currency*, No. 5:17-CV-78, 2018 WL 2933850, at *2 (N.D. Ohio June 12, 2018). Additionally, under Rule G(8) a claimant is permitted to move to dismiss "only if the claimant has standing" and accordingly "the government's obligation to respond to a motion to dismiss [is deferred] until 20 days after the claimant . . . has answered the interrogatories." Adv. Comm. Note to Supp. R. G(6).

### B. Claimants Have Failed to Comply with Their Discovery Obligations

Claimants filed a claim that alleged ownership of the *Amadea*, attaching various certificates, articles of incorporation, and other corporate documents. ECF No. 9. To collect information about Claimants' purported ownership of the *Amadea*, the Government served special interrogatories on February 9, 2024. Ex. 1. Claimants' responses, served on March 1, 2024, provided proper responses to only four of the 23 interrogatories. Ex. 2. Claimants provided no response whatsoever to eight of the interrogatories and either incomplete or ambiguous responses to the remaining eleven. *Id.* The parties have met and conferred, and the Government understands Claimants' position to be that they are "not legally obligated to provide more information," Ex. 3 at 1, because "all Claimants have to show is a colorable interest in the property, which Claimants provided in their detailed Claim," and that any request for additional information "constitutes improper burden-shifting by the government," Ex. 2 at 3. Claimants have further asserted that the Government is not permitted to inquire into ownership of the *Amadea* in special interrogatories because the Government has acknowledged that ownership is a "key issue" in this case. *Id.*

Claimants are wrong. They are not permitted to present carefully curated claims of ownership and then refuse to provide responses to questions seeking to probe that purported ownership. "The purpose of [special] interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims"—exactly the scenario at issue here. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013). Moreover, whether a claimant has "met the low burden of establishing standing at the pleading stage" is "irrelevant to the propriety of [] Rule G(6) interrogatories because, under the rule, the Government may propound them 'at any time after a claim is filed and before discovery is closed.'" *United States v. $215,587.22 in U.S. Currency*, 282 F. Supp. 3d 109, 113 (D.D.C. 2017). Finally, the fact that ownership is a "key issue" certainly does not take ownership-related interrogatories outside the scope of Rule G(6). To the contrary, such interrogatories are precisely what is contemplated by the Rule.

Equally misguided is Claimants' argument that the interrogatories seek to improperly shift the Government's burden. Rather, special interrogatories are a tool provided to the Government for the very purpose of carrying this burden. *See United States v. Funds in the Amount of $574,840*, No. 11-CV-07803, 2015 WL 1537577, at *3 (N.D. Ill. Mar. 31, 2015) ("If the claimant complies with Rule G(5)(a)(i), signing the claim under penalty of perjury, identifying the claimant and the nature of the claimant's interest, then the burden shifts to the government to produce evidence that the claim is invalid. *The government may file special interrogatories . . . in order to obtain discovery to determine whether the claimants have valid claims*." (emphasis added)).

### C. Claimants Must Provide Complete Responses to the Special Interrogatories, Including Those Concerning the Errigal Transaction

Complete responses to the Government's special interrogatories are crucial given the FAC's allegations of straw ownership and the convoluted ownership structures alleged in Claimants' claim. Moreover, Mr. Khudainatov appears to have sold even his nominal alleged legal ownership of the *Amadea* to another party. As alleged in the FAC, in mid-2021, ownership of the *Amadea* was transferred from Nereo Management Ltd. to newly incorporated Millemarin (one of the two Claimants), and then to another newly incorporated company called Errigal Marine Ltd. ("Errigal"). *See* FAC ¶¶ 29-37. The FAC references specific transaction documents memorializing these transfers, including a September 14, 2021 memorandum of agreement (the "Sept. MOA"), and a March 7, 2022 amendment to the Sept. MOA (the "March Amendment"). *See id.* ¶¶ 31-37.

If Mr. Khudainatov sold the *Amadea* to Errigal (a company he has no apparent interest in), he lacks standing to contest the *Amadea's* forfeiture. *See United States v. Cambio Exacto*, 166 F.3d 522, 527 (2d Cir. 1999) ("[W]e have, for example, denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken."). Notably, Claimants' claim did not address the Government's allegation regarding the Errigal transaction except to summarily deny it. ECF No. 9 ¶ 7. Thus, the special interrogatories inquired specifically about this transaction, even attaching copies of the transaction documents. *See* Ex. 1 at Interrogatory No. 4 (regarding transfers involving certain persons, including Errigal), No. 7 and 8 (regarding the Sept. MOA), No. 9 (regarding the March Amendment), No. 10 (regarding Claimants' claim statement disputing that the Errigal transaction took place), No. 13 (regarding ownership or control of Errigal) & Ex. 1-A.

Claimants, however, objected to providing information about the Errigal transaction in their responses, which largely incorporated by reference or restated the substance of their claim.[2] Ex. 2. Notably, Claimants refused to answer all but one of the above-referenced interrogatories concerning Errigal. *See id.* at Interrogatory Nos. 4, 7, 8, 9, 13. For the one exception, Interrogatory No. 10, Claimants responded only that "the Amendment by its terms, is an agreement to sell shares of Millemarin with a closing date of March 15, 2022, but the transaction never closed." *Id.* at Interrogatory No. 10. Given the serious questions surrounding Claimants' standing, they must provide complete responses to the special interrogatories, and if they do not, their claim should be struck under Rule G(8)(c)(i)(A) for failure to comply with Rule G(6).

---

[2] The parties met and conferred about these responses by phone on March 11, 2024, after which the Government informed Claimants it believed the parties were at an impasse and it intended to seek Court intervention. *See* Ex. 3 at 5. Claimants responded that they were "traveling next week to meet with our client," would provide additional objections, "are considering" providing some unspecified quantum of additional information, and "will have any answer for you . . . by the end of next week." *See id.* at 1. But given Claimants' lack of commitment to provide any additional information, this vague non-promise is not a valid ground for deferring a pre-motion conference, particularly in light of the Court's Individual Rule 4(j), which requires an opposing party to make itself available to attempt to resolve disputes within two business days. The special interrogatories have been pending since February 9, the close of discovery is only a few months away, and Claimants' standing could turn on the Errigal issue. Thus, the Government believes it is proper to obtain an order now that Claimants must comply with their discovery obligations.

We thank the Court for its consideration of this submission.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney
        Southern District of New York

By: */s/ Jennifer Jude*
    JENNIFER JUDE
    Assistant United States Attorneys


        MARGARET A. MOESER
        Acting Chief
        Money Laundering and Asset Recovery
        Section, Criminal Division
        U.S. Department of Justice

By: */s/ Joshua L. Sohn*
    JOSHUA L. SOHN
    Trial Attorney
    Money Laundering and Asset Recovery
    Section


        JENNIFER KENNEDY GELLIE
        Acting Chief
        Counterintelligence and Export Control
        Section, National Security Division
        U.S. Department of Justice

By: */s/ Yifei Zheng*
    YIFEI ZHENG
    Trial Attorney
    Counterintelligence and Export Control
    Section

cc: Claimants' counsel (by ECF)