UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>      v.<br><br>THE M/Y AMADEA, A MOTOR YACHT<br>BEARING INTERNATIONAL MARITIME<br>ORGANIZATION NO. 1012531,<br><br>        Defendant. | 23-CV-9304 (DEH)<br><br>**ORDER** |

DALE E. HO, United States District Judge:

  On March 14, 2024, the Government filed a letter-motion to compel responses to special interrogatories served on Claimants Eduard Khudainatov and Millemarin Investments Ltd. *See* ECF No. 67. In brief, the Government argues that Claimants have provided insufficient information regarding the potential sale of their ownership interest to an entity called Errigal Marine Ltd. *Id.* at 3. The same day, the Government filed a second letter-motion, seeking to file two of the attachments to its discovery letter—a transaction document related to the alleged sale to Errigal and Claimants' responses to the Government's interrogatories—under seal. *See* ECF No. 66. That letter stated that the attachments were being filed under seal at the request of Claimants and a third party. *See id.*

  On March 19, 2024, Claimants filed a letter on the public docket regarding sealing. *See* ECF No. 73. Claimants argue that both documents should be filed under seal because they are not judicial documents subject to a presumption of public access, the documents are likely to be covered by an anticipated stipulated protective order, and public disclosure would prejudice Claimants because they "only present a partial picture of the facts in this case . . . that may be skewed by the media against Claimants' interests." *Id.* at 3. On March 19, 2024, Evgeniy

Kochman and Imperial Yachts SARL (together, "Imperial Yachts") emailed a letter to Chambers in support of sealing the transaction document. That letter is appended to this Order as Exhibit A. Imperial Yachts argues that disclosure of the transaction document would be prejudicial because the document could be misinterpreted by the media. They also note that they are subject to OFAC sanctions, preventing them from presenting their version of events to correct any misinterpretations, and that disclosure may frustrate their attempts to have the sanctions rescinded. They also request sealing of their letter in support of sealing, "for the same reasons."

On March 21, 2024, the Government emailed a letter to Chambers in opposition to the requests for sealing. That letter is also appended to this Order as Exhibit B.

It is hereby **ORDERED** that the motion to seal and Imperial Yachts' request for sealing are **DENIED**. The documents submitted in connection with the parties' discovery dispute are judicial documents, albeit ones subject to a diminished right of public access. "[T]he presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). "[W]hile a court must still articulate specific and substantial reasons for sealing such materials, the reasons usually need not be as compelling as those required to seal summary judgment filings." *Id.*

Claimants and Imperial Yachts do not articulate such "specific and substantial reasons" for sealing. In substance, they argue that they will suffer negative media attention from release of these documents. However, Claimants have appeared and vigorously contested the Government's allegations and both Kochman and Imperial Yachts SARL are described in the First Amended Complaint, as is their designation by OFAC. *See* ECF No. 37, ¶¶ 13, 14. The parties seeking confidential treatment do not identify how disclosure of these particular

documents would cause any harm not already caused by the Government's prior, public allegations. *See Grossberg v. Fox Corp.*, No. 23 Civ. 2368, 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023) (denying sealing because "the cat is now firmly out of the bag[,] given that the Complaint is widely and publicly accessible"). Additionally, while the parties are encouraged to agree upon a stipulated protective order to facilitate discovery, even if such an agreement were in place, the Court retains discretion as to whether to afford documents confidential treatment. *See Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168-69 (S.D.N.Y. 2018) ("Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents." (collecting cases)). Finally, the Court notes that the press attention to this case supports, rather than undercuts, the need for public access. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("[T]he presumption of public access is based on the need for the public monitoring of federal courts[.]").

To the extent that the parties seeking confidential treatment warn of misinterpretation by the media or the public, the Second Circuit has stated:

> [P]leadings, complaints, and briefs—while supposedly based on underlying evidentiary material—can be misleading. Such documents sometimes draw dubious inferences from already questionable material or present ambiguous material as definitive. Moreover, court filings are, in some respects, particularly susceptible to fraud. ( . . . )
>
> We have long noted that the press plays a vital role in ensuring the public right of access and in enhancing the quality and safeguards the integrity of the factfinding process. When faithfully observing its best traditions, the print and electronic media contributes to public understanding of the rule of law and validates its claim of functioning as surrogates for the public. At the same time, the media does the public a profound disservice when it reports on parties' allegations uncritically.

*Brown*, 929 F.3d at 52-53.

The parties are reminded that all communications with Chambers should be through public filings on ECF, absent compelling reasons to the contrary.

3

      The Clerk of Court is respectfully directed to close the motions at ECF Nos. 66 and 73 and to unseal ECF No. 67.

      SO ORDERED.

Dated: March 22, 2024
       New York, New York

_____<br>
DALE E. HO<br>
United States District Judge

# Exhibit A



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, District of Columbia 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

March 19, 2024

VIA EMAIL
The Honorable Dale E. Ho
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. M/Y Amadea,* No. 23-cv-9304 (DEH)

Dear Judge Ho,

Squire Patton Boggs LLP and the Law Offices of Robert Henoch represent, respectively, third parties Imperial Yachts SARL and Evgeniy Kochman with respect to the instant matter. We write jointly pursuant to Rule 6(d)(iv) of Your Honor's Individual Rules and Practices to request that Exhibit A to this letter not be docketed. Exhibit A explains why Exhibit 1-A to the government's Letter Motion for Conference regarding Motion to Compel Responses to Special Interrogatories (Dkt. 68) should remain under seal, and Exhibit A should not be docketed for the same reasons.

Respectfully submitted,

By: */s/ Thomas A. Firestone*

THOMAS A. FIRESTONE
Squire Patton Boggs LLP
2550 M Street NW
Washington, DC 20037
Telephone: (202) 457-6000
thomas.firestone@squirepb.com
*Attorney for Imperial Yachts*

By: */s/ Robert Henoch*

ROBERT HENOCH
Law Offices of Robert Henoch PLLC
1967 Wehrle Drive, Suite 1-086
Buffalo, NY 14221
Telephone: (646) 934-9030
robert@hrenochlaw.com
*Attorney for Evgeniy Kochman*

cc: All counsel of record

# EXHIBIT A



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, District of Columbia 20037

O    +1 202 457 6000
F    +1 202 457 6315
squirepattonboggs.com

March 19, 2024

The Honorable Dale E. Ho
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. M/Y Amadea,* No. 23-cv-9304 (DEH)

Dear Judge Ho,

      Squire Patton Boggs and Law Offices of Robert Henoch (collectively "Counsel") represent, respectively, third parties Imperial Yachts SARL ("Imperial Yachts") and Evgeniy Kochman with respect to the instant matter.  We write jointly pursuant to Rule 6(d) of Your Honor's Individual Rules and Practices (the "Individual Rules") to respectfully request that Exhibit 1-A to the government's Letter Motion for Conference regarding Motion to Compel Responses to Special Interrogatories (Dkt. 68) (the "Present Motion") remain under seal.

      The government filed the Present Motion and Exhibit 1-A on March 14, 2024.  Predecessor counsel for Imperial Yachts previously produced Exhibit 1-A to the government and labeled it "Confidential."  Prior to filing the Present Motion, the government asked Counsel if it requested that Exhibit 1-A be filed under seal.  Counsel so requested.  After filing, pursuant to Rule 6(d)(i) of the Individual Rules, the government notified Counsel of their clients' obligations to file, within three days, a letter explaining the need to seal the document.  Accordingly, we submit this letter.

      Exhibit 1-A is an amendment to a Memorandum of Agreement dated March 7, 2022 between Errigal Marine Limited ("Errigal") and Millemarin Investments Ltd. ("Millemarin") related to the contemplated transfer of ownership of the *M/Y Amadea* from Millemarin to Errigal. It also includes the original Memorandum of Agreement between Millemarin and Errigal dated September 14, 2021 which contemplated a future sale of the *Amadea* by Millemarin to Errigal. The Memorandum of Agreement identifies Imperial Yachts as the broker for the transaction. By agreement of the parties, the transaction between Millemarin and Errigal was suspended and never closed.  Accordingly, ownership of the *Amadea* remains with Millemarin.

      The government contends that the Memorandum of Agreement evidences a sale of the *Amadea* by Millemarin to Suleiman Kerimov through Errigal and Mr. Kochman, whom, they claim, were acting as "straw owners" for Suleiman Kerimov who has been under U.S. sanctions since 2018.  Am. Compl. ¶33. Imperial Yachts and Mr. Kochman vigorously dispute this contention.  Neither Mr. Kochman nor Errigal ever acted as a front or "straw owner" for Suleiman

1



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, District of Columbia 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Kerimov.  Moreover, as stated above, the Errigal transaction never closed and ownership of the *Amadea* remains with Millemarin.

As the Court is well aware, this case has attracted substantial media attention.  For example, recent media reports about the government's motion for an order authorizing the interlocutory sale of the *Amadea* demonstrate that the media is closely following, and reporting on, court filings in this case.[1]  Therefore, we are concerned that if Exhibit 1-A is publicly filed, it will create the misimpression on the part of the media and others following this case that the *Amadea* was, in fact, sold to Errigal.  In light of the allegations in the Amended Complaint and other public statements by the government about this case[2], this will undoubtedly be mistakenly taken as evidence that the *Amadea* was sold to Kerimov.  Such a misperception will be highly prejudicial to Imperial Yachts and Mr. Kochman, both of whom have been designated for sanctions by the Office of Foreign Assets Control ("OFAC") of the Department of Treasury[3] and both of whom will be seeking rescission of the sanctions on the grounds that they never participated in any sale of the *Amadea* to Suleiman Kerimov and that no such sale ever took place.

Because they are not parties, Imperial Yachts and Mr. Kochman cannot challenge the government's interpretation of Exhibit 1-A in this case.  Because of restrictions imposed on them by the sanctions, Imperial Yachts and Mr. Kochman cannot present their side of the story to the media.  While they can present their position in an administrative proceeding before OFAC, such proceedings are not public.  Accordingly, publication of Exhibit 1-A will likely create the public misimpression that Imperial Yachts and Mr. Kochman have engaged in a transaction with a sanctioned party and will likely prejudice them in their attempts to have the sanctions on them rescinded.  In addition, former employees of Imperial Yachts have had challenges finding new

---

[1] *E.g.,* Luc Cohen, *Russian oligarch's seized yacht costs $7 million a year to maintain, US says*, Reuters (Feb. 12, 2024), https://www.reuters.com/world/russian-oligarchs-seized-yacht-costs-7-million-year-maintain-us-says-2024-02-12/; Bob Van Voris, *Seized Russian Superyacht Faces Sale Over 'Excessive' Upkeep*, Bloomberg (Feb. 12, 2024), https://www.bloomberg.com/news/articles/2024-02-12/seized-russian-superyacht-may-be-sold-over-600-000-monthly-tab?embedded-checkout=true; Kara Scannell, *US has spent about $20 million to maintain superyacht seized from a Russian oligarch,* CNN Politics (Mar. 6, 2024), https://edition.cnn.com/2024/03/06/politics/superyacht-russian-oligarch-us-government-20-million/index.html.

[2] *E.g.,* Luc Cohen*, US says it wants forfeiture of billionaire Russian oligarch's $300 mln superyacht*, Reuters (Oct. 23, 2023), https://www.reuters.com/legal/us-says-it-wants-forfeiture-billionaire-russian-oligarchs-300-mln-superyacht-2023-10-23/; Michael Kosnar & Dareh Gregorian, *U.S. moves to claim $300M superyacht associated with 'Russian Gatsby'*, NBC News (Oct. 23, 2023), https://www.nbcnews.com/politics/justice-department/us-moves-seize-superyacht-russian-gatsby-billionaire-suleiman-kerimov-rcna121732; *U.S. Wants to Claim $300 Million Superyacht associated with Russian Gatsby*, Marine Insight (Oct. 25, 2023), https://www.marineinsight.com/shipping-news/u-s-wants-to-claim-300-million-superyacht-associated-with-russian-gatsby/.

[3] Press Release, US Dep't of the Treasury, U.S. Treasury Severs More Networks Providing Support for Putin and Russia's Elites (June 2, 2022), https://home.treasury.gov/news/press-releases/jy0802.



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, District of Columbia 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

employment due to negative publicity about this case and publication of Exhibit 1-A will only aggravate these problems.

Courts have protected third parties under similar circumstances. The law is clear that this Court may seal a document where "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). In order to determine whether public access is allowed or denied, the Court may conduct a fact-specific balancing test in which it may consider "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). For example, in *United States v. Gatto,* a court in the Southern District of New York refused to disclose documents relating to third party involvement in potential NCAA rule violations. No. 17-CR-686 (LAK), 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019). In its analysis, the court explained that the third parties in question were not standing trial and would not have the opportunity to contest the information or inferences drawn from these documents. *Id.* The court also noted "[t]hat some information relating to the documents in question already has been discussed on the public record or reported in the media does not mean that the third-parties concerned have lost any remaining privacy interests in their contents." *Id.; also see United States v. Smith,* 776 F.2d 1104, 1113-14 (3d Cir. 1985) (denying press access to documents that implicated unindicted third parties in a felony because these innocent persons faced more than "mere embarrassment" but would experience serious injury to their reputations that could be "career ending for some"). Furthermore, the balancing test should consider the degree of injury, as well as account for the privacy interest of the person resisting disclosure, where "[t]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Amodeo*, 71 F.3d at 1050 (also stating that "[c]ourts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure'").

For the reasons set forth above, we respectfully request that Exhibit 1-A remain under seal.

Respectfully submitted,

By:  */s/ Thomas A. Firestone*
THOMAS A. FIRESTONE
Squire Patton Boggs LLP
2550 M Street NW
Washington, DC 20037
Telephone: (202) 457-6000
thomas.firestone@squirepb.com
*Attorney for Imperial Yachts*

3



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, District of Columbia 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

By: */s/ Robert Henoch*

ROBERT HENOCH
Law Offices of Robert Henoch PLLC
1967 Wehrle Drive, Suite 1-086
Buffalo, NY 14221
Telephone: (646) 934-9030
robert@hrenochlaw.com
*Attorney for Evgeniy Kochman*

4

# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 21, 2024

<u>By Email</u>: HoNYSDChambers@nysd.uscourts.gov
The Honorable Dale E. Ho
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     Re: *United States v. M/Y Amadea*, No. 23-cv-9304 (DEH)

Dear Judge Ho:

  I write on behalf of the United States of America (the "Government") to oppose the requests of Claimants and third parties Imperial Yachts SARL and Evgeniy Kochman (the "IY Parties") to keep two documents attached to the Government's March 14, 2024 letter motion under seal. The Government opposes these requests because the requesting parties have not carried their burden to provide "specific and substantial reasons for sealing" that outweigh the presumption of public access to these documents. *See Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).

  "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). In considering a request to seal documents, courts follow the three-step test described in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). First, the court determines whether the document at issue is a "judicial document." *Id.* "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). "If a court determines that the documents at issue are judicial documents to which the presumption of access applies, then in the second step 'it must determine the weight of that presumption.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *2 (S.D.N.Y. Jan. 17, 2023) (quoting *Lugosch*, 435 F.3d at 119). The "presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). In the third step, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1049).

  The documents at issue are (1) a set of transaction documents related to a sale of the *Amadea* to Errigal Marine Limited that were described in detail in the Government's complaint, *see* ECF No. 37 ¶¶ 33-37, and inquired about in the Government's special interrogatories, ECF No. 67-2, and (2) Claimants' responses and objections to the Government's special interrogatories,

ECF No. 67-3. Both documents are "judicial documents" because they are related to a filed motion—the Government's letter motion related to its anticipated motion to compel responses to the special interrogatories, ECF No. 67. Generally, documents filed in relation to a motion "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 412 (S.D.N.Y. 2014) (quoting *Lugosch,* 435 F.3d at 126); *see Rogers v. Henry*, No. 16CV05271KAMVMS, 2017 WL 5495805, at *5 (E.D.N.Y. Sept. 12, 2017).

Claimants argue that the two documents at issue are not "judicial documents" because they relate to a discovery dispute. *See* ECF No. 73 at 2. However, as the Second Circuit explained in *Brown v. Maxwell*, "erroneous judicial decision-making with respect to such evidentiary and discovery matters can cause substantial harm" and thus "all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access." 929 F.3d at 49-50. *Brown* then goes on to explain that because "a court's authority to oversee discovery . . . is ancillary to the court's core role in adjudicating a case . . . the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions." *Id.* at 50. As a result, "while a court must still articulate *specific and substantial reasons* for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings." *Id.* (emphasis added); *see id*. at 53 (describing need to overcome this "lesser—but still substantial—presumption of public access"); *In re Keurig Green Mountain*, 2023 WL 196134, at *5, *13 (denying request to seal discovery dispute filings "[e]ven under this more modest standard").[1] Further, because the Errigal transaction documents are specifically referenced in the Government's complaint and directly relate to the Government's allegations in this action, *see* Dkt. No. 37 ¶¶ 33-37, the presumption of public access over those should be higher. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016).

Neither Claimants nor the IY Parties articulate reasons for sealing these two documents substantial enough to overcome the presumption of public access to them. As to Claimants' interrogatory responses, ECF No. 67-3, Claimants argue these should remain sealed because they were served subject to the proposed protective order that the parties are in the process of negotiating and the Government "agreed to keep Claimants' Responses confidential in the meantime." ECF No. 73 at 2. While the draft protective order under negotiation would, if entered, cover this document, Claimants' designation would not by itself justify a permanent seal. *See In re Keurig Green Mountain*, 2023 WL 196134, at *12 ("[T]he fact that material is covered by the Protective Order does not justify sealing."). Indeed, paragraph 9 of the proposed protective order (a provision Claimants have agreed to) provides that a party seeking to publicly file a document that has been designated as "protected" by another party (or non-party) must first file the document under a temporary seal in order to give the party that produced that document the opportunity to apply to the Court to make the seal permanent. The Government followed this process (which mirrors the one described by the Court's Individual Rules) with respect to the at-issue documents, giving Claimants the opportunity to make their showing. Despite that, Claimants have failed to

---

[1] As for the two district court cases that Claimants cite, *Winfield* and *Robinson*, the former pre-dates *Brown* and the latter appears to overlook it, citing back to *Winfield*, and therefore does not reflect good law.

articulate a specific reason why their interrogatory responses, which are comprised mostly of objections and provide very little information that is not already in their publicly filed claim, ECF No. 9, must be sealed.

As to the Errigal transaction documents, ECF No. 67-2, Claimants argue that this exhibit should be kept under seal because it presents "a partial picture of the facts in this case . . . that may be skewed by the media against Claimants' interests." ECF No. 73 at 3. Similarly, the IY Parties argue that publicly filing this document will "create the misimpression on the part of the media and others following this case that the *Amadea* was, in fact, sold to Errigal" and that "[s]uch a misperception will be highly prejudicial to Imperial Yachts and Mr. Kochman." IY Ltr. at 2. But courts generally reject "negative publicity" as a rationale for overcoming the presumption of public access to judicial filings. *See Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21CV1732ATBCM, 2021 WL 2850632, at *3-4 (S.D.N.Y. July 8, 2021); *Julian v. Metro. Life Ins. Co.*, 2020 WL 5913739, at *4 (S.D.N.Y. Oct. 6, 2020); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) (collecting cases); *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 205 (S.D.N.Y. 2007). Similarly, the assertion that unsealing this document will give a *false* impression is irrelevant as "it has long been understood that '[t]he question of public access to the contested documents is . . . completely separate from the merits of the underlying action.'" *See Bronx Conservatory*, 2021 WL 2850632, at *4 (quoting *Lugosch*, 435 F.3d at 119). In any case, Claimants have already publicly contested the government's allegations regarding the sale of the *Amadea* to Errigal in their claim. *See* ECF No. 9 ¶ 7. The bald assertion that there might be further media coverage regarding this publicly disputed fact is insufficient to overcome the presumption in favor of public access to these documents.

Finally, the IY Parties argue that the Court should protect them from negative publicity because they are not parties to the case, citing cases that discuss the privacy interests of third parties. *See* IY Ltr. at 3. They also argue that "former employees of Imperial Yachts have had challenges finding new employment due to negative publicity about this case and the publication of [the transaction document] will only aggravate these problems." *Id.* at 2-3.[2] But these arguments fail to demonstrate how *the Errigal documents* implicate privacy concerns such that they should remain under seal. That the IY Parties generally disagree with the Government's public allegations in its complaint is insufficient to meet their burden to establish a privacy interest in non-disclosure sufficient to seal the Errigal transaction documents.

We thank the Court for its consideration of this submission.

---

[2] The IY Parties do not appear to be arguing that any IY employee's name appears in the Errigal transaction documents.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: */s/ Jennifer Jude*
JENNIFER JUDE
Assistant United States Attorneys


MARGARET A. MOESER
Acting Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By: */s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney
Money Laundering and Asset Recovery
Section


JENNIFER KENNEDY GELLIE
Acting Chief
Counterintelligence and Export Control
Section, National Security Division
U.S. Department of Justice

By: */s/ Yifei Zheng*
YIFEI ZHENG
Trial Attorney
Counterintelligence and Export Control
Section

Cc (by email):

    Counsel for Claimants
    Counsel for Imperial Yachts
    Counsel for Evgeniy Kochman