# EXHIBIT 2



Date: 23 September, 2011

**KHUDAYNATOV EDUARD**
as Investor

and

**EVGENIY KOCHMAN**
as Co-Investor 1

and

**JULIA STEWART**
as Co-Investor 2

---

**INVESTMENT AGREEMENT**

---

1 | Page

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY

EK000001

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                              EKMM0000052

This Agreement is made on 23 September, 2011 between:

(1) **Mr. Eduard Khudaynatov**, a Russian citizen, born on 11 September 1960, holder of passport No. ▇▇▇▇▇▇ issued by DFMS for Moscow on 03 August 2010 (the "**Investor**");

and

(2) **Mr. Evgeniy Kochman**, a Russian citizen, born on ▇▇▇▇▇▇ holder of passport No. ▇▇▇▇▇▇ issued by Hamovniki office of OUFMS of Russia in Central Administrative District of Moscow on 25 September 2007 (referred to as the "**Co-Investor 1**"); and

**Ms. Julia Stewart**, a Monaco resident, born on ▇▇▇▇▇▇, holder of Monaco Residency Card number № ▇▇▇▇▇▇ (referred to as the "**Co-Investor 2**"), jointly referred to as the "**Co-Investors**"

hereinafter jointly referred to as the "**Parties**", or individually as a "**Party**".

## RECITALS

A. The Parties to this Agreement are willing to invest funds, administrative and management efforts in the construction of a luxury 90-110 m motor yacht (the "**Yacht**"), and further offering it for charter or final sale of the Yacht to any third party (the "**Project**").

B. The Investor and the Co-Investors have agreed to procure provision of certain amounts of the monetary funds to develop and deliver, the Project, including but not limited to selection of exterior and interior designers, conducting tendering process with the designers, selection of qualified shipyards and conducting tendering process, appointing relevant lawyers with specialist expertise to negotiate and draft legally binding contracts such as Design Agreements and Shipbuilding Agreement and any other relevant documents, supervising construction and interior fit out, conducting tendering process for additional Owner's Supply Items as defined in the Shipbuilding Agreement, and achieving overall delivery of the vessel on time and on budget.

C. The Co-Investors having an extensive professional experience in management of the construction, charter and sale of the largest and most luxurious yachts have agreed to invest their efforts, professional knowledge and expertise in the management of the whole process of the Yacht design (exterior and interior), construction, interior fit out and overall realisation of the Project.

D. The Net Charter Annual Profit and Net Sale Profit shall be shared between the Parties in proportion stipulated by this Agreement and any supplementary documents as may be necessary in the future.

**It is agreed** as follows.

**1    INVESTMENTS AND UNDERTAKINGS OF THE PARTIES**
**1.1.    Project contributions**

2 | Page

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY      EK000802

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      EKMM0000053

1.1.1. In the course of this Agreement the Investor and the Co-Investor 1 shall use their reasonable best efforts to procure for the provision of the monetary funds in the amount of approximately 200 000 000 Euro (the "**Investment Funds**") in the following proportion: the Investor shall procure the provision of 90% of the Investments Funds, the Co-Investor 1 shall procure the provision of 10% of the Investment Funds. Above proportion is not fixed and can be changed by the Parties, if required. Investment Funds will be provided by Investor to Co-Investor 1 upon his request in any available ways convenient for the Parties.

1.1.2. The Investor confirms and agrees that his interest in the Project is to receive the Net Charter Annual Profit and the Net Sale Profit subject together with the return of this proportion of the Investment Funds. The Parties have agreed to delegate day to day management and operation of the Yacht to the Co-Investors.

1.1.3. In the course of this Agreement the Co-Investors are obliged to:

(a) advise on suitable projects, select and negotiate with relevant shipyards, meet with qualified designers (exterior and interior), procure initial renderings and presentations, set up tendering process by relevant yards and designers, appoint suitable lawyers to draft, negotiate and execute shipbuilding agreement together with the design contracts and any other documents as may be necessary for the design and construction of the Yacht.

(b) arrange for the construction of the Yacht and complete it within six (6) years from the date of this Agreement, subject to terms and conditions of any subsequent shipbuilding agreement,

(c) take necessary steps for registration of the Yacht and ownership title to the Yacht to any company affiliated with the Co-Investors, obtain title certificates/licenses and/or any other necessary documents;

(d) depending on progress of construction the Parties agree that additional financing may be obtained from third parties, including but not limited to qualified Banks and/or selected Yard, to finance or re-finance the Project, subject to separate Loan Agreement as applicable; Information re Project is available for the third parties participating into provision of financing;

(e) manage and operate the Yacht on a daily basis. The exact scope of such duties will be set out in a separate agreement.

(f) provide the Yacht for the charter to any third parties;

(g) sell the constructed Yacht at the best possible price to any authoritative third person but not lower than the Target Sale Price defined in point 3.1. of the Agreement. If so necessary, the Parties can agree jointly a marketing campaign to enable sale, depending on market conditions at the time of sale;

(h) calculate stake of the Investor in the Net Sale Profit (if any) and transfer to the Investor respective monetary funds in respective proportion within one (1) month from the date of receipt of full payment as per concluded sale and purchase agreement. In case the Yacht has been sold at a loss, the amount of loss will be split in proportion between the Parties and will reduce the amount of the Investment Funds plus Rate of Return to be returned to the Investor.

3 | Page

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY        EK000003

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        EKMM0000054

1.2. **Use of Investment Funds**

Unless the Parties agree otherwise, all monies received by the Co-Investors in the course of the Agreement shall be utilized solely to finance the design, construction, fit out, registration, insurance of the Yacht and overall preparation and set up for charter and sale together with essential crew recruitment to comply with rules of Flag and Class. By Agreement of the Parties, additional loans and /or mortgages may be considered and arranged with third parties to maximise cost efficiency of the construction and operational process.

## 2  CHARTER ANNUAL PROFIT

2.1. In case the Co-Investors provide the duly completed Yacht for the charter to any interested party, all monetary funds received under the charter contracts on the yearly base deducting all incurred expenses ("**Net Charter Annual Profit**") shall be divided between the Parties in the following proportion: the Co-Investors shall receive 15% as their remuneration for organisation of the charter, the rest 85% shall be shared between the Investor and the Co-Investors proportionally to their shares in the Investment Funds as per Clause 1.1.1. of the Agreement.

2.2. The Co-Investors shall procure that:

2.2.1. any charter contracts entered in respect to the Yacht will be entered under general market conditions and in compliance with relevant Flag rules;

2.2.2. the Investor will periodically receive reports that show main conditions of each charter;

2.2.3. the Investor will promptly receive his proportion of the Net Charter Annual Profit by way of wire transfer to the bank account designated by the Investor during period of time agreed by the Parties.

## 3  SALE PROFIT

3.1. The Co-Investors shall use their best endeavours to sell the Yacht at the best possible price (the "**Sale Price**"), but not lower than the amount of the Investment Funds plus 5% (the "**Rate of Return**") of the Investment Funds per annum ("**Target Sale Price**"), subject to market conditions at the time of sale. The Rate of Return shall accrue from the date of provision of the Investment Funds until the date when the Co-Investors inform the Investor on particular prospective buyer ("**Notice on prospective buyer**"). If the Co-Investors have failed to effect a sale with that particular buyer within a month since the date of sending the Notice on prospective buyer ("**Date of Notice**"), the Rate of Return shall continue to accrue from the Date of Notice.

3.2. The Rate of Return is subject to the reduction by the amount of a loan interest rate, in case the Co-Investors have received the Investment Funds as a loan.

3.3. In case the Co-Investors are not able to sell the Yacht at the Target Sale Price, they shall preliminary adjust the suggested sale price with the Investor. In any case the Sale Price should be confirmed by the Investor in writing.

4 | Page

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY

EK000004

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0000055

3.4. Central Agency Agreement for sale of the Yacht must be signed with Imperial Yachts, acting as a broker in this sale.

3.5. Not later than one month from the date of the sale of the Yacht, the Co-Investors shall:

3.5.1. calculate the difference between the Net Sale Price (Sale Price minus all incurred expenses) and the Investment Funds ("**Net Sale Profit**");

3.5.2. calculate stakes of the Parties based on the following proportion: the Co-Investors shall receive 20% of the Net Sale Profit as their remuneration for managing the Project, 80% shall be shared between the Investor and the Co-Investors proportionally to their shares in the Investment Funds as per Clause 1.1.1. of the Agreement;

3.5.3. notify the Investor in the manner specified in Clause 10 of the Agreement of the fact of execution of respective agreement on sale and purchase of the Yacht ("**SPA**") and provide him with the copies of the SPA and financial documents confirming the calculations of the Net Sale Profit and respective stakes of the Parties;

3.5.4. transfer the monetary funds equal to the Investors' part of the Investment funds and the stake of the Investor in the Net Sale Profit to his bank account.

## 4   COMPLETION

4.1. At the Completion Date, which is the date of the completion of the SPA, the Co-Investors shall transfer to the Investor the Investment Funds and the Net Sale Profit in respective proportion.

4.2. The transfer of funds under this Clause 4 of the Agreement shall be accompanied by execution of the respective Bilateral Acts between the Parties.

## 5   DEFAULT

5.1. If any Event of Default occurs in relation to the Co-Investors then the Co-Investors shall be a defaulting party and shall, within 5 (five) Business Days of the occurrence of the Event of Default, notify the Investor.

5.2. For the purposes of Clause 5.1 the Events of Default in relation to the Co-Investors are if they:

(a) fail to comply with obligations under Clause 1.1.2;

(b) create any encumbrance affecting the Yacht.

5.3. In case the Event of Default shall occur and be continuing, the Investor has the right to demand repayment of his proportion of the Investment Funds.

## 6   REPRESENTATIONS

The Co-Investors warrant to the Investor and that each of the Warranties set out in this Clause 6 is true and accurate and not misleading at the date of this Agreement:

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY

EK000005

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0000056

(a) the Co-Investors has the requisite power and authority to enter and perform this Agreement, and this Agreement constitutes valid, legal and binding obligations on the Co-Investors with their respective terms;

(b) the Yacht will be free from all encumbrances and there is no agreement or commitment given to create an encumbrance affecting the Yacht.

7   **ASSIGNMENT**

The Parties may assign, transfer, mortgage, charge, declare a trust of, or deal in any other manner with any of its rights and obligations under this Agreement with the prior written consent of the other Party.

8   **ENTIRE AGREEMENT**

This Agreement (together with the documents referred to in it) constitutes the entire agreement between the Parties and supersedes and extinguishes all previous discussions, correspondence, negotiations, drafts, agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to its subject matter.

9   **VARIATION AND WAIVER**

No variation of this Agreement shall be effective unless it is in writing and signed by the Parties (or their authorised representatives).

No failure or delay by a Party to exercise any right or remedy provided under this Agreement or by law shall constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict the further exercise of that or any other right or remedy. No single or partial exercise of such right or remedy shall prevent or restrict the further exercise of that or any other right or remedy. A waiver of any right or remedy under this agreement or by law is only effective if it is in writing.

Except as expressly provided in this Agreement, the rights and remedies provided under this agreement are in addition to, and not exclusive of, any rights or remedies provided by law.

10   **NOTICES**

A notice given to a Party under or in connection with this Agreement shall be in writing and shall be delivered by hand or by pre-paid first-class post, recorded delivery or special delivery in each case to that Party's registered office, or sent by fax to that Party's main fax number (or to such other address or fax number as that Party may notify to the other Party in accordance with this Agreement).

Delivery of a notice is deemed to have taken place if delivered by hand, at the time the notice is left at the address, or if sent by fax, at the time of transmission, or if sent by post on the second Business Day after posting, unless such deemed receipt would occur outside business hours (meaning 9.00 am to 5.30 pm Monday to Friday on a day that is not a public holiday in the place of deemed receipt), in which case deemed receipt will occur when business next starts in the place of receipt (and all references to time are to local time in the place of receipt).

FOIA EXEMPTION REQUESTED - CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY

EK000006

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    EKMM0000057

11 **SEVERANCE**

If any provision or part-provision of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted. Any modification to or deletion of a provision or part-provision under this clause shall not affect the validity and enforceability of the rest of this Agreement.

12 **COUNTERPARTS**

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement.

13 **THIRD PARTY RIGHTS**

No one other than a Party to this Agreement, their successors and permitted assignees, shall have any right to enforce any of its terms.

14 **GOVERNING LAW AND JURISDICTION**

This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the Principality of Monaco.

Each Party irrevocably agrees that the courts of Monaco shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims).

This Agreement has been entered into on the date stated at the beginning of it.

**SIGNATORIES**

**INVESTOR**

_____ /Eduard Khudaynatov/

**CO-INVESTORS**

_____ /Julia Stewart/

_____ /Evgeniy Kochman/

7 | Page