# EXHIBIT 5

Private & confidential
Execution form

**AMENDMENT AGREEMENT NO.2**
**TO THE AGREEMENT DATED 24 FEBRUARY 2012 (THE "AGREEMENT")**
**FOR THE CONSTRUCTION OF MOTOR YACHT HULL NO. 13688**
**(PROJECT "MISTRAL")**

This Amendment Agreement No.2 is made on   *19*   December 2012

Between:

(1)     **NEREO MANAGEMENT LIMITED** a company incorporated under the laws of the Cayman Islands with its registered office at Trident Trust Company (Cayman) Limited, Fourth Floor, Once Capital Place, P.O. Box 847, Grand Cayman, KY1 – 1103, Cayman Islands (the "**Owner**"); and

(2)     **Fr. Lürssen Werft GmbH & Co. KG** having its principal place of business at Zum Alten Speicher 11, D-28759 Bremen, Federal Republic of Germany and registered in the register of commerce at Bremen Amtsgericht under HRA 10066 (the "**Builder**").

**Whereas**

A.     The Owner wishes to make substantial changes to the design of the Motor Yacht, including to increase the length to 105.1 metres.

B.     The Builder is willing to agree such changes to the design of the Motor Yacht in consideration for an increase in the Contract Sum and the other consequential changes agreed in this Amendment Agreement.

**Now the Parties agree as follows:**

1.     Amendment Agreement no. 1 dated 13 June 2012 made between the Builder and the Owner is hereby cancelled and shall in all respects be treated as being null and void.

2.     Clause 1.8 of the Agreement shall be deleted in its entirety and replaced with:

""Classification Society" shall mean Germanischer Lloyd;"

3.     The Completion Date of 31 July 2016 in Clause 1.9 of the Agreement shall be amended to 30 June 2016. Without prejudice to such amended Completion Date, the Builder and the Owner will co-operate to take reasonable steps to achieve a Delivery Date on or about 20 May 2016.

4.     The following definitions shall be inserted in Clause 1 of the Agreement at the alphabetically appropriate point:

""Passenger Yacht Code" shall mean the code of practice issued by the Red Ensign Group on 10 November 2010 for yachts carrying thirteen (13) to thirty six (36) passengers, as the same may have been amended and/or supplemented prior to the date of Amendment Agreement no. 2 to this Agreement;"

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001862

""Red Ensign Group" shall mean the members of the Red Ensign Group (REG) currently consisting of the Maritime Administrations of the United Kingdom, Anguilla, Bermuda, British Virgin Islands, Cayman Islands, Falkland Islands, Gibraltar, Guernsey, Isle of Man, Jersey, Montserrat, Turks & Caicos and St. Helena;"

5.   Clauses 1.34 and 1.35 of the Agreement shall be deleted in their entirety and any reference in the Agreement to the MCA Code shall be deemed a reference to the Passenger Yacht Code.

6.   Clause 1.37 of the Agreement shall be deleted in its entirety and replaced with:

""Motor Yacht" shall mean an approximately 103 metre motor yacht (which may, in the Owner's option, be extended by a bow ornament in Owner's Supply to a maximum of 105.1 meters) with, for identification purposes, Builder's hull no. 13688, as from time to time constructed hereunder (including, without limitation, its interior parts) and as more specifically referred to in this Agreement, the Specifications, and the General Arrangement Plan;"

7.   For avoidance of doubt, the reference to "instalment no. 1" in clauses 1.45 and 3.8 of the Agreement shall be a reference to instalment no. 1 in its increased amount following the increase in the Contract Sum in accordance with this Amendment Agreement and, the amount secured by the Refund Guarantee shall be increased accordingly by issue of an addendum to the Refund Guarantee.

8.   Clause 1.47 of the Agreement shall be deleted in its entirety and replaced with:

""Reference Yacht" shall mean the Builder's hull no. 13687 with project name "Quantum Blue";"

9.   Clause 2.1 of the Agreement shall be deleted in its entirety and replaced with:

"The Builder hereby agrees to design (subject to the Design Drawings which shall be produced by the Designers), construct, launch, complete, test and deliver the Motor Yacht in accordance with this Agreement, the Specifications and the General Arrangement Plan, and the Owner hereby agrees to take delivery of the Motor Yacht and to pay the Contract Sum, all upon the terms and subject to the conditions set out in this Agreement."

10.   Clause 2.2 of the Agreement shall be deleted in its entirety and replaced with:

"2.2.1   The Owner has retained the Exterior Designer to provide the hull concept and preliminary design of the Motor Yacht as detailed in the Specification and to produce the Exterior Design Drawings **provided that** the design of the hull bottom, hull lines, hull plating and keel of the Motor Yacht shall be the same as the Reference Yacht save in relation to the stern arrangement and hull knuckle design only which in each case shall be in accordance with the Design Drawings submitted by the Exterior Designer and approved by the Builder as at the date of Amendment Agreement no. 2 to this Agreement.

2.2.2   The Owner has retained the Interior Designer to provide the interior design of the Motor Yacht as detailed in the Specification and to produce the Interior Design Drawings. Without prejudice to Clause 3.1.1, the Interior Design Drawings shall be limited to the following:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001863

Private & confidential
Execution form

(1) Owner's, Guests and Staff Accommodation as referred to in section 6100 of the Specifications; and

(2) In relation to section 6200 of the Specifications (Crew Interior), the selection of materials and finishes for the complete crew area from the Builder's proposed material catalogues and the re-arrangement of the lay-out of the galley, crew mess, crew lounge, laundry, pantries and crew gym from that on the Reference Yacht, within the restrictions of the structural elements.

2.2.3    The Design Drawings shall conform to the General Arrangement Plan and any changes to the General Arrangement Plan requested by the Owner, or by the Exterior Designer or the Interior Designer on behalf of the Owner, shall be cosmetic only and shall not affect in any way the structural walls or divisions shown on the General Arrangement Plan. Subject as hereinafter provided, the Builder shall be responsible for reviewing and verifying the Design Drawings and shall be responsible for the design and construction of the Motor Yacht in accordance with the Design Drawings as if the Builder had provided the Design Drawings **provided that** the Owner expressly acknowledges that the Builder shall not be responsible for any aspects (save only for the engineering aspects) of the layout or aesthetic appearance of the Motor Yacht in each case provided for by the Design Drawings, which shall at all times remain the responsibility of the relevant Designer and/or the Owner.

2.2.4    Subject to the prior written approval of the Builder (which the Builder may freely withhold if it considers that the change will have a material effect on its other commitments), the Owner may change the identity of the Designer and the Owner shall be responsible for any additional costs or production time (which shall be a Permissible Delay) necessarily incurred by the Builder as a result of any such change."

11.    Clause 2.3 of the Agreement shall be deleted in its entirety and replaced with:

"Subject to Clause 2.1, the Builder shall construct the Motor Yacht to classification notation GL ⊕ 100 A5 Motor Yacht ⊞MC AUT with the Classification Society and notwithstanding anything to the contrary in this Agreement, it shall be the duty of the Builder to construct, complete and deliver the Motor Yacht in compliance with the rules and regulations of the Classification Society and other Regulatory Bodies in force as at the date of Amendment Agreement no. 2 to this Agreement and applicable to that classification notation at no extra cost to the Owner."

12.    Clause 2.4 of the Agreement shall be deleted in its entirety and replaced with:

"Subject to Clause 2.1 the Builder shall construct the Motor Yacht so that the Motor Yacht complies also with (i) the Passenger Yacht Code, category of passenger yacht: passenger yacht unrestricted (engaged in trade), (ii) the Maritime Labour Convention 2006 (MLC) as published at the date of Amendment Agreement no. 2 to this Agreement and (iii) the rules, regulations and requirements in force and applicable to this size and type of motor yacht, registered under the Flag, as at the date of Amendment Agreement no. 2 to this Agreement, as set out in Section 0220 of the Specifications."

13.    The Contract Sum shall be increased to the amount of One hundred and sixty six million Euros (€166,000,000) and Clause 3.1 of the Agreement shall be amended accordingly. The Builder

HFWLDN\15187973-7

3

Private & confidential
Execution form

acknowledges receipt of the sum of Twenty eight million thirty one thousand two hundred and fifty Euros (€28,031,250) from the Owner towards the first instalment of the Contract Sum.

14.   Clause 3.2 of the Agreement shall be deleted in its entirety and replaced with the following:

"The Owner shall pay the Contract Sum to the Builder in instalments as follows:

| Instalment No. and Event | | Percentage of Contract Sum |
|---|---|---|
| 1. | Promptly upon signing of Amendment Agreement No.2 but no later than five (5) Business Days thereafter and against increase in the Refund Guarantee, with credit being given in the amount of €28,031,250.00 representing the amount already paid by the Owner under the Agreement and now applied towards this Instalment No. 1 | 25% |
| 2. | Upon the date which is 6 months after the Date of Amendment Agreement No. 2; | 10% |
| 3. | Upon the date of receipt by the Owner of a telefax notice from the Builder attaching a Stage Certificate signed as per Clause 3.3 certifying that steel cutting of 100 tons of steel for the Motor Yacht has been completed, but not earlier than 10 months after the Date of Amendment Agreement No. 2; | 15% |
| 4. | Upon the date of receipt by the Owner of a telefax notice from the Builder attaching a Stage Certificate signed as per Clause 3.3 certifying that placing of the first block of the Motor Yacht's hull in the building berth has been completed, but not earlier than 14 months after the Date of Amendment Agreement No. 2; | 15% |
| 5. | Upon the date of receipt by the Owner of a telefax notice from the Builder attaching a Stage Certificate signed as per Clause 3.3 certifying that the main engines have been put in place but not earlier than 18 months after the Date of Amendment Agreement No. 2; | 10% |
| 6. | Upon the date of receipt by the Owner of a telefax notice from the Builder attaching a Stage Certificate signed as per Clause 3.3 certifying that all structural welding of the hull and superstructure have been completed (including the joining of the hull and the superstructure), but not earlier than 25 months after the Date of Amendment Agreement No. 2; | 10% |
| 7. | Upon the date of receipt by the Owner of a telefax notice from the Builder attaching a Stage Certificate signed as per Clause 3.3 certifying that the installation of the Owner's and Guests' Interior Outfit has been commenced, but not earlier than 30 months after the Date of Amendment Agreement No. 2; | 10% |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                            EKMM0001865

Private & confidential
Execution form

8.      Upon signing of the Protocol of Delivery & Acceptance.           5%"

15.   The words "Subject to Clause 2.2," shall be added at the beginning of Clause 6.1.

16.   The first sentence (only) of Clause 6.2 shall be deleted and replaced with the following:

"Either Party may request from the other Party in writing a Variation **provided that** each Party reserves the right to reject requests of the other Party which exceed the scope of changes set out in Clause 2.2 and/or substantially alter the concept of the Motor Yacht as of the Date of this Agreement and in such case the Builder shall not propose a Variation Certificate. "

17.   As a result of the Owner's requested changes to the design of the Motor Yacht, the Builder has issued replacement Specifications, General Arrangement Plan, Decision List, Demarcation Plan and Production Schedule and, accordingly:

(a)      Schedule I of the Agreement shall be replaced by Schedule One of this Amendment Agreement and any references to the Specifications in the Agreement shall be to the Specifications as attached at Schedule One hereto;

(b)      Schedule II of the Agreement shall be replaced by Schedule Two of this Amendment Agreement and any references to the General Arrangement Plan in the Agreement shall be to the General Arrangement Plan as attached at Schedule Two hereto;

(c)      Schedule III of the Agreement shall be replaced by Schedule Three of this Amendment Agreement and any reference to the Decision List in the Agreement shall be to the Decision List as attached at Schedule Three hereto;

(d)      Schedule IV of the Agreement shall be replaced by Schedule Four of this Amendment Agreement and any reference to the Demarcation Plan in the Agreement shall be to the Demarcation Plan as attached at Schedule Four hereto; and

(e)      Schedule XII of the Agreement shall be replaced by Schedule Five of this Amendment Agreement and any reference to the Production Schedule in the Agreement shall be to the Production Schedule as attached at Schedule Five hereto.

18.   Clause 13.1 of the Agreement shall be amended so that the value of items of Owner's Supply is increased from Three Million Euros (€3,000,000) to Five Million Euros (€5,000,000).

19.   The restriction agreed by the Builder in Clause 17.3 of the Agreement shall apply in respect of the Motor Yacht both (i) as described in the General Arrangement Plan originally attached  as Schedule Two to the Agreement and (ii) as described in the replacement General Arrangement Plan attached as Schedule Two to this Amendment Agreement.

20.   The terms of this Amendment Agreement shall be Confidential Information.

21.   Expressions used with initial capitals and not defined in this Amendment Agreement shall have the meaning given to them in the Agreement.

HFWLDN\15187973-7

5

Private & confidential
Execution form

22. Save as amended by this Amendment Agreement, all terms and conditions of the Agreement remain in full force and effect.

23. This Amendment Agreement may be signed in counterparts, which together, shall be considered as a single instrument.

24. This Amendment Agreement and any non-contractual obligations arising out of or connected with it are governed by English law and Clause 20 of the Agreement shall apply to this Amendment Agreement mutatis mutandis.

25. This Amendment Agreement shall become effective upon the date of signing by both Parties.

By:   JAMES LAWSON
      ATTORNEY-IN-FACT

For and on behalf of
Nereo Management Limited

By:   **William MacLachlan**
      **Attorney-in-Fact**

For and on behalf of
Fr. Lürssen Werft GmbH & Co. KG

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001867

Private & confidential
Execution form

**SCHEDULE ONE**

**SPECIFICATIONS**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001868

Private & confidential
Execution form

## SCHEDULE TWO

### GENERAL ARRANGEMENT PLAN

HFWLDN\15187973-7

8

EKMM0001869

Private & confidential
Execution form

**SCHEDULE THREE**

**DECISION LIST**

HFWLDN\15187973-7

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001870

Private & confidential
Execution form

**SCHEDULE FOUR**

**DEMARCATION PLAN**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001871

Private & confidential
Execution form

**SCHEDULE FIVE**

**PRODUCTION SCHEDULE**

HFWLDN\15187973-7

11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EKMM0001872