UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE M/Y *AMADEA*, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,<br><br>    Defendant-*In-Rem*,<br><br>    and<br><br>EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,<br><br>    Claimants. | Case No. 1:23-cv-09304<br><br>The Honorable Dale E. Ho |

## DECLARATION OF LESLEY REYNARD

I, LESLEY REYNARD, hereby declare and state the following under the penalties of perjury.

1. My name is Lesley Reynard, I am above the age of 18, and a citizen of South Africa.

2. I was hired as a stewardess for the Amadea in September 2020, and I served in that role until in or about July 2022. Prior to serving on the Amadea, I served as a stewardess on two other luxury vessels. I typically served as the second stewardess on the Amadea, but at times served in the Chief Stewardess role during guest trips, as that role was vacant at one point.

3. During my employment with the Amadea, I did not know the identity of the owner of the Amadea, either the person or the name of the holding company of the vessel. The identity of the owner of the vessel was never shared with the crew while I worked on the Amadea. However, I was trained to treat all guests as VIPs, if they were the owners of the vessel, when they were on board.

4. In my role as Second Stewardess, I was responsible for assisting the Chief Stewardess with managing the Interior Department, which consisted of Service and Housekeeping. Some of my duties included creating the jobs list – which assigned particular jobs to different members of the Interior Department and I performed certain administrative tasks.

5. When I served in the Chief Stewardess role (which was just in the summer and fall of 2021), I was responsible for the Interior Department, and at times, I also served simultaneously in the Second Stewardess role. When I had a Second Stewardess while in the Chief Stewardess role, I delegated tasks to my Second Stewardess to assist me. As Chief Stewardess, I communicated with management for various issues including orders. I had direct contact with guests on board ensuring that they were being looked after by the Interior team and managing any concerns. At times, I ordered provisions from vendors, and if a vendor needed payment instructions, I sent the vendor a document that we had saved for this purpose that contained the current payment or billing instructions for the Amadea. Thus, I did not know or pay attention to the name of the entity, in other words the Amadea's owning entity, that was to be invoiced for the Amadea.

6. From when I was hired in September 2020 until the summer of 2021, the Amadea was largely inactive, as it did not host guests for overnight trips. During that time and continuing into the fall and winter of 2021/2022, I was present when visitors were hosted on board for

viewings of the Amadea. During this time period of the viewings, rumors circulated amongst the Amadea crew several times that the Amadea had been sold. This rumor—that the Amadea had been sold—spread amongst the crew approximately four or five separate times while I worked on the vessel. However, in my experience on board the Amadea, neither I nor the crew members with whom I worked had direct knowledge of the identity of the owner of the Amadea, or whether the vessel had ever actually been sold.

7. I served as Chief Stewardess during a guest trip in Greece in the summer of 2021. This trip was my first guest trip while working on board the Amadea. I recall during that trip that the guests included a father, mother, and children, and others, including nannies and security. During this trip, these individuals spoke Russian to each other, and I do not speak or understand Russian.

8. I have reviewed a document numbered US000087-134, dated September 18, 2021. This document is a set of handover notes, which are notes that the outgoing lead stewardess would leave for the incoming lead stewardess to bring them up to speed on what happened in the weeks prior, so as to ensure a seamless handover. Regarding the section entitled "New" on page US000091, I do not recall seeing this note or hearing at that time that the boat had been sold, but as I mentioned above, there were several instances of rumors swirling amongst the crew that the boat had been sold, so I did not pay particular attention to that part of the handover notes. With respect to the use of the term "boss trip" in this document, that term was used amongst the crew to refer a "principal" guest, and not necessarily indicative of ownership, given that, as I mentioned above, the crew was not informed of the identity of the Amadea's owner. "Boss trip" simply meant a guest trip, as opposed to relocating the vessel without guests on board or a trip by the vessel's management team.

9. As crewmembers on the Amadea, we were trained not to use guests' real names when addressing them directly, but rather to address them as "Sir" or "Madame," and to refer to the guests amongst the crew members and management staff by code names, such as G1, G2, G3, and so on. These practices applied to all sets of guests. While I worked on the Amadea, the crew interchangeably used terms such as "owner," "principal," "G1," or "boss," to refer to the main guest on board the vessel. In addition,

10. I have reviewed a document numbered US000143-45, entitled "Imperial Accounts Approval Form," with the date requested of September 29, 2021. I believe I created this document. Once we realized we were going to have guests on board more regularly, we needed to have coffee machines on each deck to have coffee readily available and hot when served.

11. Starting on or about October 13, 2021, I served as a stewardess for a trip hosting a group of guests, comprising mainly of women and children in Italy or France in October 2021. I assumed they were charterers because we dropped them off to another charter vessel. This group of guests spoke Russian amongst themselves, and I do not speak nor understand Russian. I understood that this group of guests were planning to do longer-term charters of the Amadea. During this guest trip and thereafter (as this group was preparing to do longer trips), the crew and management team also used G-codes to refer to these guests. However, because there was not a principal male on board with these guests, the crew and management team often used inconsistent G-codes to refer to the principal women. At times, one woman was referred to as G1 or G2, and another woman was referred to as G2 or G3.

12. I have reviewed a document numbered US000063 (Exhibit W to the Motion to Strike), and I recall editing this document to assign cabins to the guests for this guest trip (referred to in paragraph 11 above). I have also reviewed a cover email dated October 10, 2021

4

and marked DOJ-000037-759 attaching this document. The use of the term "Owners Rep" for Max in this document was my shorthand way of describing him as the liaison between the crew and the guests, and was in no way intended to convey that I knew that these guests were actual owners of the Amadea. Max was known to the crew as the guests' security and personal trainer, and because he spoke English, he was our main source to communicate and translate guest requests. For example, we would ask him when the guests would like dinner, and he would get back to us with a time and place.

13.     During that guest trip, I did a walkaround the Amadea with a group of people, during which a man who appeared to be a liaison to a principal guest was suggesting the removal of random décor. I have reviewed a document numbered US000361-366 (Exhibit Q to the Motion to Strike), which is an email dated October 14, 2021. While I do not recall this email specifically, it appears I received it because I forwarded it to myself from the Chief Stewardess email account to the Second Stewardess email account to ensure I would have a copy of it when I turned the Chief Stewardess email account back over to the Chief Stewardess. The contents of the email dated October 14, 2021 from the Captain comports with my recollection of the walkaround I referred to above. The man I recall from that walkaround—the liaison to a principal guest—is depicted in the top left photograph on the page numbered US000363. I see the reference to "O.Rep" in that email. In my experience, usage of the terms "O.Rep" and "owner's rep" are not intended to connote the writer's knowledge of the identity of the owner of the vessel. Rather, those words and phrases are used amongst crew as ways to refer to the principal guest or that guest's liaison for a particular trip. With respect to the changes requested by the liaison as reflected in that email, such changes are not unusual to be made by guests

seeking to charter or use a vessel for a particular trip or trips, and are in my experience not indicative of ownership.

14. I have reviewed a document marked US000233-38, which is an email exchange dated October 14-15, 2021 that I would have received, given that I was performing in the role of either Chief Stewardess or Second Stewardess at this time. While I do not recall these emails in particular, I do recall discussions about moving the gym to the wintergarden, but I did not think that change was for a particular set of guests, but rather because the existing gym was small and upgraded machines would not be able to fit, whereas the wintergarden was large and was unused space.

15. I was on board serving as a stewardess when a gentleman came on board for a day or two shortly after the prior group of guests. I have reviewed a document marked US000298-303 (Exhibit P to the Motion to Strike), with the heading "G1 Guest preferences October 2021." This type of document would be created and used by the interior for any guest trip, regardless of whether the guest was an owner. This type of document is used to ensure that the interior team provides the guest with the highest level of service, customized to that particular guest's interests and preferences. The use of the term G1 as reflected in that document means "Guest 1" and was used to refer to the principal guest on board for a particular trip. Thus, for the brief time the gentleman was on board, he was referred to as G1.

16. I have reviewed a document marked US000309-312 (Exhibit S to the Motion to Strike) which is an email chain with the subject line "FW: G1 Nike Shoes" dated October 20, 2021. While I do not recall this group of emails or the particular situation with the Nike shoes referred to in these documents, it was not unusual for guests to make requests like this, and for

the crew to prepare to have a variety of certain types of clothing and footwear options on board in a variety of sizes either as requested by a particular guest or for guests in general.

17. I have reviewed a document marked US000139-42, which is an email exchange regarding portable reading lamps dated between October 29, 2021 and November 4, 2021. I recall that one of the women on the female guest trip referred to above read outside in the evenings and requested portable reading lamps. I did not think much of the reference to "new owner" in the October 29, 2021 email, as this term was used as short-hand by the crew to refer to a principal guest, or in this case a new guest who appeared to be planning to return to the vessel. At this time, we were making preparations with the understanding that this female group of guests was planning to return to the Amadea for a longer-term trip.

18. I have reviewed a document marked US000152-54, entitled "Imperial Tech-02 – Work Order Form M/Y Amadea," which was created October 22, 2021 regarding the removal of refrigerators. I believe that I completed this document. I wrote "G1" as the person who requested the change, not in reference to any particular person, but because this had been a guest request, as opposed to a request from Imperial Yachts or the crew. If it was a guest request, I would always put G1.

19. I have reviewed a document marked US000146-151, which is a wine inventory spreadsheet. While I do not recall this particular inventory, I did conduct inventories of wine in my role on the Amadea, and may have prepared this one. With respect to the last page, US000151, I do not recall a "new owner lunch." In addition, the guests who were on board in October were very health conscious and did not drink alcohol.

20. I do not know, and I never knew who the identity of the owner of the Amadea, or whether the vessel had been sold while I was working on the Amadea.

7

21.    I am providing this declaration of my own free will, and for no other reason than to tell the truth.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: June 7th, 2024

*/s/ Reynard*

_____
Lesley Reynard