

U.S. Department of Justice

---

*950 Pennsylvania Avenue NW*
*Washington, D.C.  20530*

July 25, 2024

**VIA CM/ECF**
Hon. Dale E. Ho
U.S. District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. M/Y Amadea*, No. 23-cv-9304 (DEH)

Dear Judge Ho,

Plaintiff United States ("the Government") respectfully submits this letter: (1) opposing Claimants' motion for a Protective Order over the location of Claimant Khudainatov's deposition; and (2) opposing Claimants' motion for a three-month extension of the discovery deadline, which the Court already said should not be extended "absent a showing of compelling circumstances and diligence in taking discovery." ECF No. 104 at 3.

**Khudainatov Should Be Required to Sit for Deposition in New York**

Courts have regularly held that a claimant in a forfeiture case must travel to the litigation forum for deposition. These courts have reasoned that, by filing a claim and voluntarily entering the forfeiture case, a claimant consents to the jurisdiction of the forum court and thus cannot resist deposition in the forum. *See, e.g., United States v. $2,164,341 in U.S. Currency*, No. CV12-0105, 2013 WL 321768, at *1 (D. Ariz. Jan. 28, 2013) ("Claimant, having invoked the jurisdiction of the Court to assert his claim, could not refuse to appear in this District for his deposition."); *United States v. Approx. $57,378 in U.S. Currency*, No. C08-5023, 2010 WL 4347889, at *2 (N.D. Cal. Oct. 27, 2010) ("Sims has purposefully submitted to this Court's jurisdiction by filing her third-party ownership claim to money that has already been forfeited. In similar third-party forfeiture challenges, other courts have required claimants to travel outside their home forum for depositions due to the nature of the claim."); *United States v. $100,000.00 in U.S. Currency*, No. 8:07CV218, 2008 WL 5076176, at *2 (D. Neb. Nov. 24, 2008) (ordering forum deposition where "[t]he Claimant filed an answer and a claim, subjecting himself to the jurisdiction of this court."); *United States v. $160,066.98*, 202 F.R.D. 624, 627 (S.D. Cal. 2001) (same).

This rule applies *a fortiori* to the present case, where Khudainatov did not just file a claim but also filed a collateral U.S. lawsuit. Specifically, hours before this forfeiture case was filed,

Khudainatov filed a Federal lawsuit in California to try to force a return of the *Amadea*. *Khudainatov et al. v. United States,* No. 3:23-cv-01946 (S.D. Cal.). Khudainatov can hardly allege that the United States is an unduly burdensome forum when he filed his own U.S. lawsuit.

Khudainatov's main argument against U.S. deposition is that he supposedly fears the Government will arrest or detain him if he enters U.S. territory. This purported fear has no basis, as the Government is willing to give Khudainatov a safe-passage letter promising that he will not be arrested or detained when he travels to the United States for deposition. This should put to rest any legitimate concerns Khudainatov might have on this score. *See E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09CV58, 2011 WL 4404036, at *2 (E.D. Va. Sept. 21, 2011) (ordering forum deposition where Government provided safe-passage letter); *United States v. JP Morgan Chase Bank*, No. CV12-0155, 2013 WL 12188413, at *1 (D. Ariz. Jan. 9, 2013) (ordering U.S. deposition where Government "offer[ed] to obtain a parole entry for Claimants").

A remote deposition from Russia would be wholly inadequate. First, it would violate DOJ security policies and threaten the effectiveness of this Court's Protective Order (ECF No. 83), which contemplates confidentiality. As stated in the Declaration from FBI Agent Todd McGee (filed herewith), a video link with Russia is inherently insecure and poses a risk of spying by the Russian security services—in other words, confidentiality could not be assured.

Second, Khudainatov's credibility is front and center in this case. He claims to own the *Amadea*; the Government believes he is lying. For depositions where credibility is at stake, in-person deposition is important and remote deposition is no adequate substitute. *See, e.g., Charr v. King*, No. 21-CV-61654, 2023 WL 9792732, at *2 (S.D. Fla. Nov. 3, 2023); *Pruco Life Ins. Co. v. Cal. Energy Dev. Inc.*, No. 3:18CV02280, 2021 WL 5043289 at *3 (S.D. Cal. Oct. 29, 2021); *United States v. 2003 BMW X5 SUV*, No. CIV. WDQ-14-0912, 2015 WL 2330292, at *2 (D. Md. May 15, 2015). Claimants' contrary authority is unpersuasive, as Claimants' cited cases stemmed from the height of the pandemic—a time when in-person deposition posed health risks and the ubiquity of masks meant that in-person deposition would not even help with credibility assessments. Needless to say, the circumstances are quite different now.

Third, remote deposition is disfavored when a deposition will be document-heavy and require the assistance of translators. *Rep. of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 406 (S.D.N.Y. 2018). Such is the case here—Khudainatov does not speak English, and his deposition will feature voluminous documents, including Russian language documents.

Khudainatov's back-up offer of an in-person deposition in the United Arab Emirates (UAE) also poses significant challenges. The U.S. Government has no authority in foreign jurisdictions, and thus will need to coordinate with the Government of the UAE to secure permissions for the deposition to be taken and for DOJ attorneys to attend. Based on past DOJ experience, even a voluntary deposition in the UAE has required that the U.S. Government submit a formal Mutual Legal Assistance request to the UAE Government. Even if a formal request is submitted, the UAE Government is not obligated to assist in the absence of a bilateral mutual legal assistance treaty (which the United States does not have with the UAE). Further, mutual legal assistance requests to the UAE can be time-consuming and uncertain, as the law and procedure of the UAE dictate the progress and outcomes of those requests. Thus, permitting a deposition in the UAE

would leave the prospect, timing, and conditions of the deposition at the mercy of whatever the UAE authorities allow.

Even beyond these concerns, it would be unduly burdensome for Government counsel to travel halfway around the world to the UAE. Indeed, counsel for *both* parties reside in New York or Washington D.C., which means a UAE deposition would entail a huge amount of aggregate travel. By contrast, requiring Khudainatov (one person) to travel to New York, where he has engaged counsel, would entail far less aggregate travel. This travel disparity militates strongly towards a New York deposition as opposed to a UAE deposition.[1] *See $160,066.98*, 202 F.R.D. at 628-29 ("The burden and expense to the government, were the court to order claimants' depositions to proceed in Pakistan, are legitimate considerations . . . All counsel of record in this matter are located in San Diego . . . at least double the expenditure for travel and lodging would likely accompany a Pakistan venue compared to a San Diego venue."); *see generally* Fed. R. Civ. P. 1 (Federal Rules should be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding."); 1993 Advisory Comm. Note to Rule 1 (similar).

### **Claimants' Request for a Three-Month Discovery Extension Should Be Denied**

Claimants' request for a three-month discovery extension should also be denied, as Claimants have not shown the "compelling circumstances" and "diligence" necessary for such an extension. Claimants' main ground for seeking an extension is the sizable number of foreign deponents, yet this fact was well-known when the Court set the current discovery cut-off of August 30. There are no new or changed circumstances here. Nor have Claimants shown diligence, as Claimants did not even file their Hague requests until five months after discovery opened.

Moreover, a three-month discovery extension would greatly prejudice the Government, which is spending nearly $1 million per month to maintain the *Amadea*. Given these carrying costs, the Government deserves prompt resolution of this case. Serial delay is not in the interests of justice.

In the alternative—if the Court were to grant Claimants *some* discovery extension—the Government proposes two measures to minimize the prejudice of an extension. First, the extension should be short: on the order of one month (end of September) rather than the three months Claimants have requested. If Claimants are unable to complete their desired international depositions by the end of September—well, that is Claimants' fault for waiting five months to file their Hague requests. Second, the Court should take steps to ensure that an extension of the discovery deadline does not unduly delay resolution of the overall case. For example, it could order that expert discovery continue as scheduled even as some final fact depositions are taken.

Respectfully Submitted,

---

[1] This is particularly true since Khudainatov does not even live in the UAE. Thus, setting deposition there would require *all* parties and counsel to engage in international travel.

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
U.S. Department of Justice

By: /s/ *Jennifer Jude*
JENNIFER JUDE
Assistant U.S. Attorney
Southern District of New York

MARGARET A. MOESER
Acting Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By: /s/ *Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney
Money Laundering and Asset Recovery
Section

JENNIFER KENNEDY GELLIE
Executive Deputy Chief
Counterintelligence and Export Control
Section, National Security Division
U.S. Department of Justice

By: /s/ *Yifei Zheng*
YIFEI ZHENG
Trial Attorney
Counterintelligence and Export Control
Section

cc: Claimants' counsel (by ECF)