O8C5usaC                        phone conference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4                   Plaintiff,

 5          v.                              23 Civ. 9304 (DEH)
                                            Remote Proceeding
 6   THE M/Y AMADEA,

 7                   Defendant-in-Rem.

 8   EDUARD YURIEVICH KHUDAINATOV,

 9                   Claimant.


10   ------------------------------x
                                            New York, N.Y.
11                                          August 12, 2024
                                            3:00 p.m.
12

13   Before:

14                        HON. DALE E. HO,

15                                          U.S. District Judge

16                          APPEARANCES

17

18   DAMIAN WILLIAMS
          United States Attorney for the
19        Southern District of New York
     BY:  JOSHUA L. SOHN
20        TARA LaMORTE
          YIFEI ZHENG
21        JENNIFER ANN JUDE
          ADAM SCHWARTZ
22        DANIEL CLAMAN
          Assistant United States Attorneys
23
     FORD, O'BRIEN, LANDY, LLP
24        Attorneys for Claimant
     BY:  ADAM C. FORD
25         RENEE L. JARUSINSKY
          BRYAN W. MCCRACKEN
```

O8C5usaC                        phone conference

1              (Case called; The Court and all parties appearing

2     telephonically)

3              THE DEPUTY CLERK:  Counsel, can you please state your

4     names for the record, starting with the plaintiff.

5              MS. JUDE:  Hi.  From the United States you have

6     Jennifer Jude from the U.S. Attorney's office, Southern

7     District of New York, and multiple of my DOJ colleagues are

8     also on the line but I will be speaking for the government.

9              MR. FORD:  Good afternoon, your Honor.  It is Adam

10    Ford and Renee Jarusinsky and Bryan McCracken on behalf of

11    defendants.  Good afternoon, your Honor.

12             THE DEPUTY CLERK:  Counsel, this is a reminder that

13    this is a public proceeding.  Members of the public and press

14    can access the proceeding with a public dial-in number.  Please

15    be aware that just as if you were physically present in the

16    courtroom, you are prohibited from recording, rebroadcasting,

17    or disseminating any recording of court proceedings, including

18    this one.

19             Your Honor.

20             THE COURT:  Good afternoon, everyone.

21             We are here on the issue of the location of the

22    deposition of the claimant.  I know there are a number of other

23    minor open items -- well, I won't call them minor, just other

24    open items on the docket that have to be addressed, and I'm not

25    going to resolve them orally today but I will get to them, I

O8C5usaC                        phone conference

1    will say, as soon as I can, which hopefully will be relatively

2    soon.  I'm not going to issue an oral ruling on the deposition

3    location today either but I will try to keep it relatively

4    quick.  I have some I think, in some cases, very basic factual

5    questions for you.  So, with that, I just want to go to the

6    government first.

7            The first question, I assume it will be Ms. Jude, the

8    issue of the MLA requests, you say that they're necessary to

9    have a deposition.  The claimants say that they're only

10   necessary for criminal proceedings.  Can you just walk me

11   through this issue here?

12           MS. JUDE:  Sure, your Honor.

13           So, MLA treaties typically relate to assistance in

14   criminal matters but they also cover civil forfeiture matters

15   in which there is a criminal predicate to the forfeiture, and

16   so we have consulted with the OIA lawyers who are within that

17   office, Office of International Assistance in the Department of

18   Justice who are assigned to the specific countries that are at

19   issue because there are different attorneys assigned to

20   different countries and they're experts in the treaty that's

21   between the countries that there is one or just what the

22   situation is where there isn't one, and this is the information

23   that they have provided to us.  And we are, you know, aware

24   from our normal course of investigating these cases, that MLAs

25   are used to get information in civil forfeiture matters

O8C5usaC                              phone conference

1    regularly.

2              THE COURT:  OK.  That's helpful.  I guess the

3    distinction between the countries that the claimant has offered

4    and the UK is, I guess from your joint letter, the UK will

5    permit voluntary depositions, whereas the country without an

6    MLA request whereas the countries that the claimant has

7    offered, do not?  Do I have that right?

8              MS. JUDE:  That's correct.  Yes, you do.

9              So, in the United Kingdom, my understanding is there

10   is reciprocal treatment between the United States and the

11   United Kingdom as to voluntary depositions in cases that are

12   considered by the United Kingdom to be civil or commercial.

13   This case falls under that in the United Kingdom's view.  We

14   are told if the witness is willing to sit voluntarily in the

15   United Kingdom, we can take a deposition without an MLA request

16   and without needing to give advance notice to UK authorities.

17             THE COURT:  Got it.

18             MS. JUDE:  And that is what is happening for the

19   deposition of a witness that is happening later this month.

20             THE COURT:  OK.  What is the process for an MLA

21   request?  And I apologize for my lack of familiarity here but

22   if you can walk me through that and how long that process

23   takes?

24             MS. JUDE:  I will invite my colleagues who may be more

25   expert in this to correct me if I get this wrong, but my

O8C5usaC                              phone conference

1    understanding is that we need to put together a written

2    request, which we do along with the folks at OIA, and that that

3    is communicated to our counterpart in the foreign country and

4    then we wait for a response from them and for information about

5    whether there are any terms that they are going to impose on a

6    deposition if they permit a deposition to take place on their

7    soil.

8            THE COURT:  Any sense for what that -- I imagine there

9    is a lot of variance here, but any sense for how long that

10   might take, either as a general matter or for the countries

11   that the claimants have offered?

12           MS. JUDE:  Right.  So I will say because we recently

13   ran this down with OIA with respect to the two countries that

14   have been offered most recently, which are Vietnam and Tunisia,

15   that for Vietnam what we have been told is that past experience

16   is that there is a very long wait for their response.  I

17   unfortunately don't have any information about what very long

18   means, whether that's -- I assume it is probably either months

19   or years but I can get that information for your Honor if that

20   would be useful.  And as for Tunisia, we were told based on the

21   current state of relations with between Tunisia and United

22   States, to not expect any response at all.

23           THE COURT:  Thanks.  That is helpful.

24           One sort of random thought that occurred to me, and it

25   is not addressed in the parties' joint letter so, again,

1   forgive me if this is just an uneducated supposition on my part

2   having never dealt with this kind of issue before, but has

3   there been any discussion amongst the parties about having a

4   deposition at, say, the United States Embassy in any of the

5   countries that the claimants have offered?

6           MS. JUDE:  Well, from the government's perspective, we

7   certainly haven't had any conversations with claimant's counsel

8   about that exact scenario but I do note in their section of the

9   joint letter they say that they are not open to that.  They are

10  not open to a deposition in the United States or in any -- it

11  is even broader than embassy -- U.S. government building in any

12  other country.

13          THE COURT:  I am just trying to understand if that is

14  something that is ever done when you have had these kinds of

15  challenges of having depositions in foreign countries.

16          MS. JUDE:  I guess I can get into what you may be

17  asking about.

18          My understanding is that doing it in an embassy would

19  not relieve us of the obligation to do an MLA request.

20          THE COURT:  That's I guess what I was getting at.

21  Thank you, Ms. Jude, for explaining that.

22          MS. JUDE:  Sure.

23          THE COURT:  That is helpful.

24          Let me turn to the claimants.  I don't know if it will

25  be Mr. Ford or Ms. Jarusinsky.

O8C5usaC                          phone conference

1          MR. FORD:  Yes, Judge; Mr. Ford, Adam Ford will be

2     talking.

3          THE COURT:  Great.

4          One basic question, all the arguments that you are

5     making with respect to Mr. Kerimov I assume you are making with

6     respect to -- I don't have the person's name in front of me,

7     I'm sorry, excuse me -- not Mr. Kerimov, Mr. Khudainatov; that

8     to have been, I don't have the person's name in front of me but

9     the person who is more familiar with the documents who I guess

10    works with Mr. Khudainatov.

11         MR. FORD:  Yes, your Honor.  I think for that

12    individual we offered one additional location of Istanbul,

13    Turkey, but the arguments would be the same for both

14    Mr. Khudainatov and his assistant who we have identified that

15    we seek.

16         THE COURT:  I am just trying to understand the

17    boundaries of the parties' positions here, but from your

18    perspective there is no difference between the Southern

19    District of New York and any other locations under United

20    States jurisdiction; is that right?

21         MR. FORD:  Yes, your Honor.  I think that's right.

22    Our position, and just to start off, obviously our clients are

23    willing to engage in this dialogue, try and find a mutually

24    acceptable location outside the United States, but certainly

25    our position, and as your Honor knows from some filings that

O8C5usaC                              phone conference

 1    are not in the public view, obviously the government is aware

 2    of, our position is that we run into problems in sort of

 3    anywhere within the United States but then also in countries

 4    that are closely aligned with the United States and which is

 5    why we run into the same issues with the proposal for London

 6    and the Bahamas that the Government made.

 7            So, we have offered several options, I believe that

 8    there is sort of other options that we could also consider, but

 9    it really would have to be sort of a more neutral country, more

10    neutral location for both sides because we obviously recognize

11    that the government has legitimate concerns with respect to

12    certain areas as well and we, of course, take that into

13    account.  And so the goal is to find either a location that is

14    acceptable to all parties or -- I assume we will talk about

15    this later -- but the idea of the video conference deposition.

16    But to answer your Honor's question, yes, it is all the same.

17            THE COURT:  There is no difference between the

18    Southern District of New York and, like, Guam or the Northern

19    Mariana Islands.  I know neither side mentioned those as

20    options but I am just trying to understand the boundaries of

21    your argument.  And it is not that it is in the continental

22    United States, it is United States jurisdiction; is that right?

23            MR. FORD:  I think that's right, yes.  And, as I said,

24    right, it is United States jurisdiction as well as that of its

25    closest allies.

O8C5usaC                              phone conference

1           THE COURT:  Are there any countries that you have

2    discussed with the government that are along the lines of the

3    UK that permit voluntary depositions without an MLA request?

4           MR. FORD:  Your Honor, maybe we need to do a little

5    bit more work on this because we were -- we really were under

6    the understanding that the options of Dubai and Abu Dhabi,

7    obviously both part of the United Arab Emirates, were very,

8    very reasonable places to take depositions because of how easy

9    they are to get to and modern and safe for everyone across any

10   accounts.  We were under the understanding that in fact if,

11   because it is a voluntary deposition, right, our client is

12   willing to attend voluntarily at the right location, and so we

13   are not asking -- so we understood, just to be clear, that we

14   would be able to arrange for this sort of deposition in a hotel

15   conference room or other appropriate confidential and safe

16   location that we were willing to do that without the government

17   being involved.  That was our understanding and what we had

18   been told.  I understand Ms. Jude to be saying that it would

19   require an MLAT request, but to be clear that MLAT request, as

20   far as we are concerned, hopefully that would be -- it is not

21   asking that country to do anything because it does not need to

22   compel Mr. Khudainatov's appearance, he is appearing

23   voluntarily.  And so I do wonder if the government's experience

24   in terms of seeking an MLAT request, seeking assistance is more

25   a space where it is actually asking to compel something where,

O8C5usaC                            phone conference

1   as here, it is more of a notification.  They're obviously

2   not -- nobody has been telling Mr. Khudainatov to appear in

3   Abu Dhabi or Dubai, he is doing so voluntarily.  And as long as

4   the government is on notice, I would think that that process

5   would be much quicker than the idea of asking the officials

6   there to try and compel somebody's attendance which is not the

7   case.

8           THE COURT:  OK.  Thanks, Mr. Ford.

9           I do have some other questions for you but given what

10  you have just said, why don't I go back to Ms. Jude and ask her

11  to respond to that.

12          MS. JUDE:  We fully understand that this is a

13  voluntary deposition situation and our understanding is that

14  the MLA request is required nevertheless, and there are special

15  restrictions.  I don't know if Mr. Ford has had experience

16  doing depositions that were in cases in these foreign

17  jurisdictions in cases that didn't involve the U.S. government

18  as a counterparty, but whenever we travel to take depositions

19  in foreign countries we are traveling on an official passport

20  and there are certain steps that take place that don't take

21  place when you are in a purely commercial or private matter.

22  So, that may just be something that's sort of different than

23  his experience in other cases but this is the exact scenario

24  that we presented to the Office of International Affairs and

25  the advice that we got was that we would have to do an MLA

1    request regardless of the fact that the witness was sitting

2    voluntarily.

3           And I also just want to mention that in addition to

4    the United Kingdom, the Bahamas, which is another backup option

5    that we discussed with claimants, is a jurisdiction that does

6    not require an MLA request or require notification of law

7    enforcement for the Bahamas when doing a voluntary deposition

8    as long as the deponent is not a Bahamian national.  So that

9    would be another relatively convenient location that would not

10   require that we jump through these hoops and potentially wait a

11   long time, your Honor.  But I don't want to lose sight of the

12   fact that we think that the district is really the most

13   appropriate location for this deposition because it is both

14   more convenient for the parties given that counsel is located

15   here, we have court reporters and translators and videographers

16   who are here, as well as the fact that we think that these new

17   security concerns are not well-founded and I am happy to

18   address that, if your Honor would like.

19          THE COURT:  Thanks, Ms. Jude.  I may later.  Again, I

20   am just really at this point trying to wrap my brain around

21   some really basic factual issues here.  The parties do seem to

22   be take talking past each other a little bit as to the

23   necessity of an MLA request and I think I understand the

24   government's position.

25          Mr. Ford, have you been in a situation where the other

1   party is the United States government where you have been able

2   to take depositions in other countries without an MLA request?

3   Because the government is telling me they can't do it.

4           MR. FORD:  Yes, and it is other commercial profit

5   matters, so that may be sort of the disconnect.  But where I

6   think where we are still not -- I understood -- I think the

7   point is still, even if the government, because it is traveling

8   officially needs to go through the MLAT request, I am not

9   positive that the length of time it would take to organize that

10  would necessarily interfere with our discovery schedule.  We

11  are still in August, we have over two months.  So, look.  We

12  know that the government was able to get out an MLAT request to

13  Fiji to seize the vessel in I think about 12 hours.  And so I

14  wonder if we all are in agreement that Dubai and Abu Dhabi are

15  safe places for everyone, if the government did do its MLAT

16  request, again notify them it is on consent, that we could

17  still schedule the deposition within the current discovery time

18  frame and that is our goal, obviously.

19          MS. JUDE:  Your Honor, I know you know our position on

20  this already but we are not open to the United Arab Emirates as

21  a location for the reasons stated in Special Agent McGee's

22  declaration.

23          THE COURT:  OK.  Let me come back to Mr. Ford.  I want

24  to understand the practical implications of what you are

25  seeking here.  We are not just talking about the deposition at

1   this point, right, it sounds like if we have an evidentiary

2   proceeding in November or December or a trial later we are not

3   going to have any in-person testimony is I think what your

4   position is from Mr. Khudainatov or his assistant; is that

5   right?

6           MR. FORD:  That would be correct, your Honor; yes.  We

7   would seek to have it done either through a deposition that had

8   been videotaped and played or through video conferencing at the

9   proceeding as well.  So, that's correct; yes.

10          THE COURT:  You have also put on the table the

11  possibility of remote deposition but I think you said the last

12  time you were here that would not take place in Russia but in a

13  different country.  So, again, I am just trying to, as a

14  practical matter, picture what you are envisioning.  Where

15  would Mr. Khudainatov be, where would you be, where would the

16  government be if it were to be remote deposition?

17          MR. FORD:  Yes.  I think -- look.  What we are

18  envisioning is we would be present with Mr. Khudainatov.  In

19  fairness why we haven't decided, certainly Dubai, as we

20  mentioned, is a safe and appropriate location.  So I think,

21  again, without committing to location, be present with him

22  somewhere, we will say Dubai for purposes of today's call, and

23  then the government, if they want to -- the government, because

24  it is a video conference, could be anywhere that they felt safe

25  as well.  So, for example, for the purpose of working with the

1    time difference because I think it is a seven or eight-hour

2    time difference depending on Daylight Savings.  But, if the

3    government wanted to travel to London which only has a

4    couple-hour time difference, they would be able to do that or,

5    of course, they could stay in New York.  But I do think the

6    video deposition very well might be the easiest for all parties

7    because the government could travel if it wanted to, it would

8    not have to.  We would obviously travel so that we are present

9    with our client.  And, most certainly our client, and obviously

10   us, would be outside of Russia for the full deposition.

11          That's what we are envisioning.

12          THE COURT:  OK.  Thanks.  I wanted to understand, as a

13   practical matter, what that would actually look like.

14          I think those are the basic factual questions that I

15   had.  I do want to give you an opportunity to make the

16   substantive points that you wanted to and you each alluded to

17   earlier.  I just want to note that the line is open, this is an

18   open proceeding.  To the extent that you want to address those

19   points substantively is to be mindful of the fact that certain

20   filings are still, at this point, under seal.  If we need to

21   close the line to talk about some specifics then we can do that

22   but let's see if there are arguments that can be made while we

23   are still in open proceedings.

24          MS. JUDE:  Yes.  Thank you, your Honor.

25          So, our position remains that Mr. Khudainatov should

O8C5usaC                           phone conference

1    be deposed in New York.  He is a party to the case, his

2    credibility is at issue.  I would say this is the single most

3    important deposition.  We absolutely need to be in the same

4    room as him.  The idea of him being in another location with

5    his counsel and us doing this over video is absolutely not

6    acceptable for us in a deposition of this importance in which

7    whether he is telling the truth or not is a key issue.  And,

8    the default rule is that a claimant, even a foreign one, comes

9    to the forum for deposition.

10            As directed by your Honor, we drafted a safe passage

11   letter for claimant's consideration and we received no comment

12   on it at all.  And I think it is worth pointing out, that since

13   claimants filed their motion seeking a protective order for

14   this deposition a few weeks ago, they've changed their position

15   as to the reason why the deposition cannot take place here.

16   Their original letter motion on this issue, which is

17   Docket 149, stated that the reason Mr. Khudainatov didn't want

18   to come to New York for his deposition is that he had concerns

19   over his personal safety and the U.S. government's intentions

20   while he was in the United States.  And that was also the

21   reason in the letter that was filed a few days later and this

22   is the letter in response to our request for attorneys eyes

23   only treatment for the identity of our expert witness, and that

24   gave the same rationale, it said and this is Docket 154:  "Our

25   client wishes to testify remotely out of a fear of a

1  politically expedient arrest in the United States or the hands

2  of one of its allies that is similarly hostile to the Russian

3  Federation."

4          So, after that, the government offers Mr. Khudainatov

5  a safe passage letter which alleviates that concern, and his

6  excuse for not coming here shifts 180 degrees.  Now he has

7  security concerns about Russia based on a fear that the Kremlin

8  will perceive him as being a cooperator if he is deposed here.

9  And as we cited -- it is illogical on its face, your Honor,

10  because Mr. Khudainatov is himself a Kremlin insider.  He

11  helped organize President Putin's first presidential campaign.

12  He was a long-time deputy to Igor Sechin who was Putin's chief

13  of staff.  These are very well known and public parts of his

14  biography, but to the extent you find it helpful, we are happy

15  to put that into evidentiary form.  And, Mr. Khudainatov is

16  very obviously and openly adversarial to the United States in

17  this case.  So we think that this concern that he is going to

18  be perceived as a cooperator, it simply doesn't make sense, and

19  given the fact that the letter motion that they filed for

20  protective order failed to mention this rationale at all, we

21  think it is lacking in credibility and he should come to the

22  United States for the deposition.

23          THE COURT:  Thank you, Ms. Jude.

24          Mr. Ford?

25          MR. FORD:  Thank you, your Honor.

O8C5usaC                              phone conference

1        I think one thing your Honor may have noticed in the

2   joint letter that the parties filed is that the government's

3   portion of its letter did not contain citation to any cases

4   whatsoever and we would suggest that is because all of the

5   relevant case law on this exact issue finds that in these sorts

6   of circumstances, a Court ordering either a video deposition or

7   a deposition in a third and neutral location, is entirely

8   appropriate.

9        Just to respond very quickly to Ms. Jude's comment

10  about us changing our position, to be clear, we absolutely have

11  not changed our position.  We certainly have added to the

12  concerns and the reasons that Mr. Khudainatov simply cannot

13  come to the United States to be deposed in this case.  But what

14  is most important is that he really should not have to.  Right?

15       The question that is before your Honor at this point

16  is whether there is any reasonable method available to depose

17  Mr. Khudainatov somewhere other than the Southern District of

18  New York.  And with respect to video conferencing, numerous

19  Courts would, and we direct your Honor to the cases in both of

20  our letters, but certainly the *Gulf Stream* case and the *SEC v.*

21  *Aly* case, right, where the Courts find, and then there is also

22  *Packard v. City of New York*, where the courts have found that

23  in today's day and age -- and this is even pre-COVID, even

24  before Zoom, you absolutely can judge credibility from video

25  conferencing.  So, the idea that the government needs to be in

1  the same room to judge his credibility is an argument that is

2  consistently rejected by the Court.

3          And by the way, your Honor, as Ms. Jude said, they're

4  not there to judge his credibility, they are telling your Honor

5  that he is lying.  They already know his credibility.  And it

6  is no longer up to the government to judge credibility, it is

7  up to the fact finder, and certainly the fact finder is able to

8  judge credibility through someone's video deposition or videoed

9  testimony.  This is really standard fare at this point.

10         I would note also, your Honor, that there is a

11 presumption that defendants and their corporate representatives

12 are deposed where they live.  And while it is certainly true

13 that in this case Mr. Khudainatov is a claimant, right, that is

14 only for the purposes of standing, at which point the

15 government then takes over its burden of proving forfeiture.

16 And so, Mr. Khudainatov is really, effectively, a defendant.  I

17 assure you he did not choose to come here and file a lawsuit to

18 try and get his property back.  Right?  But the government

19 seized it, they seized it in Fiji.  By the way, the vessel, the

20 Amadea, has never been in United States waters.

21 Mr. Khudainatov had never been in the United States.  Right?

22 The United States government took his property and compels him

23 to come here and to try and get it back.  That is basically him

24 being more of a defendant than it is a claimant, and so the

25 presumption is really that the government should have to go to

1    where he is.  We are, of course, not suggesting that, the

2    government go to Russia for obvious reasons, but we also expect

3    the government to look at it objectively and not try and claim

4    that he needs to come here to get his property back and that is

5    certainly -- it is simply not what courts are finding.

6            So, if the government is unable or unwilling to do a

7    deposition in a location other than the United States, the

8    United Kingdom or Bahamas, then the next option is a video

9    conference and that is perfectly acceptable and numerous courts

10   have held that.  If I didn't mention it earlier, also the

11   *Republic of Turkey v. Christies* case is another case.

12           So, I think for all of those reasons, the Court would

13   be well within its discretion granted to it under the federal

14   rules to order the deposition to take place by video conference

15   and that's that.

16           As for the government's just wrong claims in terms of

17   my client's relationship with the Russian government, I don't

18   think now is the time for that, for that discussion, but we

19   object in the strongest terms to these reckless statements

20   which, if not false, then are stated in a way intended to be

21   misleading but we can save that for another day.  But, for

22   today's purpose, we would really request that your Honor grant

23   the ability to do deposition by remote video conferencing means

24   which is more than sufficient for our purposes in this

25   litigation at this time.

1      THE COURT:  I have some very quick questions,

2   Mr. Ford.  The first is with respect to Mr. Khudainatov's

3   assistant.

4      MR. FORD:  Yes.

5      THE COURT:  Why are you willing to have that person's

6   deposition in Turkey but not Mr. Khudainatov's?

7      MR. FORD:  Your Honor, that is a good question, and

8   the reason I think that -- I think it has to do with

9   Istanbul's -- the countries that have extradition treaties with

10  the United States.

11     THE COURT:  OK.

12     MR. FORD:  Between the two, there is a difference

13  which opens up the Istanbul opportunity for the assistant.

14     THE COURT:  I see.

15     I am sure I know the answer to this one already but I

16  am just going to confirm.  There is no version of a safe

17  passage letter here that is going to accommodate all of your

18  concerns, right, because regardless of what your concerns are

19  with respect to the United States government you have concerns

20  with respect to the Russian government; correct?

21     MR. FORD:  Yes, for the reasons -- yes, your Honor.  I

22  think that's right, for the reasons stated in our prior

23  filings.

24     THE COURT:  OK.  Thank you, Mr. Ford.

25     Ms. Jude, I know the claimants are not offering

1   Mr. Khudainatov for Turkey but is Turkey acceptable for his

2   assistant or does it have --

3        MS. JUDE:  We haven't noticed the deposition of his

4   assistant.  I'm not sure why that was mentioned in the letter.

5   That is something that we could, we may consider whether we

6   want to take that deposition, but at the moment we have not

7   noticed that deposition.

8        THE COURT:  Right.  I just sort of assumed, given the

9   representations in the letter, that you would want to take that

10  person's deposition, but if Mr. Khudainatov had been offered in

11  Turkey, is Turkey an acceptable location for the government or

12  is that something you can't answer today?

13       MS. JUDE:  That is something I can't answer without

14  conferring internally.  Of course we have to figure out what

15  the OIA situation is.

16       We don't quite understand how the concerns, at least

17  the current type of concerns that are articulated in the letter

18  would make a deposition in the United Kingdom or the Bahamas

19  off the table and make it such that the deposition would need

20  to be conducted in Turkey.  This really seems to be far afield

21  of what we think is appropriate for a case that is set in this

22  forum in which the deposition is of the claimant, the party to

23  the case.

24       THE COURT:  Sure, and I understand that.  I am just

25  trying to again understand the metes and bounds of everyone's

O8C5usaC                         phone conference

1  concerns here.  Is Turkey analogous to the UK in the sense that

2  it permits voluntary depositions without an MLA request or does

3  it not?

4           MS. JUDE:  That I don't know.

5           THE COURT:  You don't know.  That's fine.

6           MS. JUDE:  I do not know that sitting here because

7  that is not something that we asked OIA about.

8           THE COURT:  OK.  That's fine.

9           I think I have everything that I had questions about.

10  I appreciate you all jumping on the phone and I will try to get

11  an answer on this relatively soon, mindful of the discovery

12  period.

13           Thank you very much.

14           MS. JUDE:  Just one additional question, your Honor?

15           THE COURT:  Sure.

16           MS. JUDE:  Because I had an issue in another case

17  recently where we called chambers and learned that there had

18  been an order docketed that hadn't uploaded, I assume that the

19  request to file a five-page supplemental brief is one of the

20  open items that you were referring to.  I wanted to mention

21  that we hadn't gotten an order on that, just in case it was the

22  same situation as in my other case.

23           THE COURT:  That's right.  I have yet to issue an

24  order on that but I hope to do so soon.

25           MS. JUDE:  OK.

1          THE COURT:  Anything else, Ms. Jude?

2          MS. JUDE:  The only other thing, your Honor, this is

3    very minor, is that the concern with a remote deposition is not

4    purely about credibility and the sort of more difficult

5    judgment of credibility in a remote deposition that is being

6    done by video conference and therefore is sort of a lower

7    quality, but also concerns related to witness coaching where we

8    are not in the room actually with the witness to see what is

9    happening.  So I would say that that is an additional concern

10   with a remote deposition and another reason that we think that

11   this absolutely needs to be in person.

12         And thank you very much, your Honor, for the

13   additional time.

14         THE COURT:  Thank you, Ms. Jude.

15         Mr. Ford, is there anything else you would like to

16   raise?

17         MR. FORD:  Yes, if I could just respond to that.

18         And absolutely -- I mean, the idea that Ms. Jude would

19   just accuse us of witness coaching and use that as a reason for

20   the need for in-person is absolutely outrageous.  It really is

21   offensive to me and it is offensive to all of my colleagues and

22   I would think the Court -- there is no basis for that sort of

23   statement.  And, your Honor, I have tried 24-day trials over

24   Zoom.  I have taken dozens of depositions.  We have all been

25   doing that.  We are all on camera during Zoom depositions.  So

O8C5usaC                          phone conference

1    if Ms. Jude is suggesting I am doing sign language under the

2    table.   I can't believe -- so, other than expressing my

3    absolute disbelief that I would be accused of witness coaching

4    in an upcoming deposition, your Honor, no, I have nothing

5    further.

6              Thank you.

7              THE COURT:   Thank you all very much for your time.   I

8    appreciate it.

9                                 o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25