From: Wang, Jason <jason.wang@citi.com>
Sent: Monday, August 20, 2018 9:36 AM
To: Nariman Gadzhiev <nariman.gadzhiev@daytonadvisors.com>
Cc: Elgen, Selim Hayri <selim.hayri.elgen@citi.com>; Concavage, Jason <jason.concavage@citi.com>;
Subject: RE: Citi Private Bank: Transaction Inquiry for Denver Capital LLC

Hi Nariman,

Hope you had a great weekend.

We wanted to quickly touch base on the below. Thank you.


From: Wang, Jason [ICG-CPB]
Sent: Thursday, August 16, 2018 1:30 PM
To: Nariman Gadzhiev <nariman.gadzhiev@daytonadvisors.com>
Cc: Elgen, Selim Hayri [ICG-CPB]; Concavage, Jason [ICG-CPB]
Subject: Citi Private Bank: Transaction Inquiry for Denver Capital LLC


Hi Nariman,

Hope you're doing very well.

As part of our ongoing security/account monitoring efforts, we have been notified of the following transactions in the Denver Capital LLC's account #xxx188:

8/9/2018 C $1,000,000.00 WIRE APA TREAS 310 MISC PAY

8/2/2018 C $50.56 WIRE APA TREAS 310 MISC PAY

Would you please help us understand the purpose of these transactions, Denver Capital LLC's relationship to APA TREAS 310? Do you anticipate similar transactions to continue going forward? Thank you very much.

**Jason Wang**
Senior Vice President

Private Banker
UHNW Metro NY Region  Citi
Private Bank

**From:** Wang, Jason <jason.wang@citi.com>
**Sent:** Friday, November 23, 2018 4:08 PM
**To:** Nariman Gadzhiev <nariman.gadzhiev@daytonadvisors.com>
**Cc:** Aguilar, Noel D <noel.d.aguilar@citi.com>; Yu, Ainslee <ainslee.yu@citi.com>; Fine, Cory C <cory.c.fine@citi.com>; Burck, Christina <christina.burck@citi.com>; Elgen, Selim Hayri <selim.hayri.elgen@citi.com>; Bradley, Natalia <natalia.bradley@citi.com>
**Subject:** RE: balances

Hi Nariman,

Confirming receipt of $23,777,646.24 to the Definition Services Inc.'s account.

Have a wonderful weekend!

Best,
Jason



**PAUL W. BUTLER**
+1 202.887.4069/fax: +1 202.887.4288
pbutler@akingump.com

March 25, 2019

Selim Elgen
Managing Director
Citi Private Bankl
London,United Kingdom

      Re:    The Heritage Trust

Dear Selim:

      Thanks for again for our call earlier this month. As we discussed, we wanted to make sure Citibank, as Administrative Trustee, was aware of certain events relating to the Heritage Trust that have occurred over the past several months.

      As background, in October 2018 Paul Butler of Akin Gump visited the Grantor in Moscow. In connection with that trip, Mr. Butler provided the Grantor with the attached Memorandum dated October 24, 2018. Among other things, the Memorandum emphasized the need for full compliance with the trust documents including that "[n]o transactional, financing or other activity can take place by-passing the proper decision-making protocols prescribed in the powers of the primary trustee and administrative trustee," and that "[c]ommitments of the Trust for which the Primary Trustee is liable must be honored."

      Since that October 2018 meeting, the following has occurred:

      1.    Mortgage Transactions

      Financial transactions were completed in October 2018 to prepay certain mortgages without prior knowledge or approval of the Trustee (the "Financial Transactions").

      The real estate portfolio at issue was part of Definition Services Inc. ("Definition Services"), transferred from Diversity Foundation and held in two Swiss entities – Allmend Center AG ("Allmend") and CRS AG ("CRS"). These entities were controlled by Orifielco Investments Ltd, Cyprus ("Orifielco"). This real estate portfolio has remained unchanged since September 2015, and included seven (7) properties.

      The mortgages at issue had an outstanding balance of approximately USD $93,400,000.00 and were integrated into the Trust liabilities in September 2017. These liabilities



Selim Elgen
March 25, 2019
Page 2

were assigned to Allmend in the amount of USD $49,200,000.00 (53% of total outstanding balance) with a payment due date of October 2018 and to CRS in the amount of USD $41,100,000.00 (47% of total outstanding balance) with a payment due date of November 2021.

In October 2018, Nariman Gadzhiev of Dayton Advisors AG effected an early termination of these mortgages with VP Bank in Liechtenstein. A penalty of USD $26,000.00 was assessed to Allmend for the mortgage that was set to expire by the end of October 2018. And a penalty in the amount of USD $2,000,000.00 was assessed against CRS as an early termination fine for the mortgage set to expire in November 2021.

On October 3, 2018, at the direction of Nariman Gadzhiev, Definition Services transferred approximately USD $67,999,964.82 from Citibank to VP Bank. On October 10, 2018, those funds were transferred from VP Bank to complete the Financial Transactions, including the payment of early termination fees.

After learning of the Financial Transactions, we obtained a letter of representations and warranties from Nariman Gadzhiev which affirms that 1) Mr. Gadzhiev did not inform the Trustee or the Trustee's counsel before undertaking any and all parts of the Financial Transactions; (2) the Trustee and his counsel did not come to learn of the Financial Transactions until after it had been completed, (3) Mr. Gadzhiev did not effectuate the Financial Transactions at the instruction of, or consultation with, any Specially Designated National (as that term is defined pursuant to the applicable United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations); (4) Mr. Gadzhiev has not, and will not, take instruction from any SDN; and (5) Mr. Gadzhiev has since been directed not to make any transfers or transactions with respect to the Trust property without prior approval of the Trustee.

2. One Equity Partners Capital Call

On March 30, 2018 Denver Capital, a Heritage Trust subsidiary, executed a subscription agreement with One Equity Partners ("OEP"), to become a limited partner and invest $25 million in fund OEP VII. On September 17, 2018 OEP sent notice to Denver Capital of its first capital call in the amount of $3,475,681 and due on September 28, 2018. Despite requests from the Trustee to fund the OEP Capital Call from trust assets, the representative of the Grantor informed the Trustee that the beneficiaries wanted to pursue a more conservative investment strategy and requested an extension of time to respond to the OEP notice. The Capital Call was not paid by Denver Capital by the due date of September 28, 2018.



Selim Elgen
March 25, 2019
Page 3

On December 27, 2018, at the direction of the Trustee, $3,475,681 was wired from the Denver Capital account at Citibank to OEP's designated account to pay the Capital Call. On December 31, 2018, the funds were returned by OEP to Citibank, and Citibank received a "Return wire Notification" stating "UTA as per bene request." On December 12, 2018, OEP had sent to Denver Capital a "Notice of Withdrawal" stating:

"[T]he General Partner undertook a review of your account and, after investigation, uncovered certain events that have raised concerns with respect to you and/or one or more entities controlled by you or your affiliates. Accordingly, pursuant to section 13.14 of the Amended and Restated Agreement of Exempted Limited partnership of the Fund, the General partner has determined to cause the withdrawal of your Interest, effective as of the date hereof."

Section 13.14 of the of the Amended and Restated Agreement pertains to Compliance with Anti-Money Laundering Requirements. We subsequently learned that OEP's concern pertains to certain AML-related due diligence that remains outstanding. Since that time, we have been cooperating with OEP to address their concern and resolve the issue so that Denver Capital may re-invest in the Fund. We hope that the issue will be resolved this month.

3.  RizviTraverse Capital Call

On September 30, 2014, Prosperity Investments L.P. entered into an Amended and Restated Limited Partnership Agreement with Rizvi Opportunistic Equity Fund III, L.P. (("Rizvi"). The first capital call from Rizvi Opportunistic Equity Fund ("Rizvi") was for $971,827 and was due November 9, 2018. It was not paid on the due date and the same request was made by the representative of the Grantor for an extension of time as referenced above with regard to OEP. Rizvi granted that extension and the capital call was paid on January 9, 2019.

4.  Mantle Ridge and Morgan Stanley Resignation

We understand that Morgan Stanley is in the process of resigning as fund administrator to the Mantle Ridge fund in which Heritage Trust has invested. We further understand that as a result of Morgan Stanley's resignation, E&Y resigned as auditors to the Mantle Ridge Fund. We also understand that as a result of these resignations, Mantle Ridge has decided to exercise an option to make an early distribution to Heritage of its entire investment plus profit and has approached OFAC directly for approval to transfer the funds. We are told that OFAC informed Mantle Ridge orally that the Heritage Trust is not blocked property, allowing the monies to be refunded, and that Mantle Ridge wrote to OFAC to confirm this in writing, but OFAC has not yet responded.

08447-00001/10785173.1



Selim Elgen
March 25, 2019
Page 4

     5.     Rizvi investment opportunity

On January 10, 2019, Rizvi sent Definition Services a notification of a follow-on investment opportunity for members of RT RLD Co-Invest, LLC. On March 4, 2019, Stefan Kaufmann of Dayton Advisors emailed Rizvi and stated "Please note on the Heritage Trust's decision not to participate in the upcoming follow-on investment opportunity related to RT RLD Co-Invest LLC. The Trustee was not copied on this email, nor was the Trustee consulted before Mr. Kaufmann informed Rizvi that the Trust was declining the follow-on investment opportunity. On March 4, 2019, Rizvi forwarded Mr. Kaufmann's email to the Trustee (and the Trustee's counsel) and asked for confirmation of the decision. On March 11, 2019, counsel for the Trustee confirmed the decision in an email to Rizvi, based on the Trustee's independent judgment that the Trust should not participate in the follow-on opportunity. This issue was raised in the Trustee's letter to the Grantor dated March 12, 2019, which stated, in relevant part: "Please be reminded, however, that the decision to invest with Rizvi or any other investment vehicle is solely in my discretion as Trustee, pursuant to Section 6.3 of the Trust Agreement (Investment Powers)."

     6.     Selection of Investment Advisor and Co-Distribution Advisor

By attached letter dated February 19, 2019, the Grantor stated that Laird Cagan would be appointed as investment advisor to the Trust and that William Bricker, Esq. would be appointed as Co-Distribution Advisor. Among other things, compensation of both individuals was discussed with the Grantor without the knowledge of the Trustee. We responded by attached letter dated March 12, 2019, once again clarifying the various roles under the Trust documents and making clear that it is the role of the Primary Trustee to appoint the Investment Advisor and any Co-Distribution Advisor.

With regard to retaining Mr. Cagan as Investment Advisor, the Trustee met with Mr. Cagan, and Quinn Emanuel conducted a background check on him using an outside private investigator. That background check raised certain questions that Julia Beskin of Quinn Emanuel discussed with Mr. Cagan at a meeting on March 5. Among other things, the background check indicates that Mr. Cagan is a partner in Global Venture Alliance (GVA), which was founded by Magomed Musaev. In addition, the Trust has an investment in GVA, which gives rise to a conflict. Mr. Cagan sold his home in Silicon Valley to Mr. Musaev in November 2017, though Mr. Cagan continues to reside in the home as part of a three-year sale-leaseback transaction between him and Mr. Musaev. With these considerations in mind, the Trustee determined that it would be unwise to hire Mr. Cagan, and we are compiling and vetting a list of other candidates.



Selim Elgen
March 25, 2019
Page 5

      With regards to Mr. Bricker, before moving forward with his appointment, the Trustee intends to discuss Mr. Bricker's potential appointment as co-Distribution Advisor with the Administrative Trustee, but given that there are no distributions of Trust assets intended for several years, his appointment is questionable. Similarly, as with an Investment Advisor, the decision to appoint a co-Distribution Advisor belongs to the Trustee alone under the Trust Agreement.

      The Grantor responded by letter dated March 15, 2019 that "I acknowledge your need to exercise all due care in selecting the relevant fiduciaries according to the power and authority granted by the Trust agreement. I rely fully on your independent judgment and discretion."

Sincerely,

Paul W. Butler

# JAMES C. LANGDON, JR.
2001 K Street, N.W.
Washington, D.C. 20006

October 18, 2019

Mr. Divesh Makan
ICONIQ Capital
394 Pacific Avenue
San Francisco, CA 94111

     Re:    <u>The Heritage Trust</u>

Dear Mr. Makan:

     I write in my capacity as the Protector, Distribution Advisor, Investment Advisor and Designated Representative of the Heritage Trust to report on the recently completed legal assessment of whether the Trust and the HWE Sub-Trust (collectively, the "Trust") are blocked property under U.S. sanctions law. The August 1, 2019 memorandum from the law firm of WilmerHale, attached hereto, reports its conclusion that the Trust is not blocked property.[1] Although the WilmerHale memorandum is not privileged, I would ask that you not forward it to anyone outside your organization (or your counsel) without checking with me first.

     As you know, the Trust was settled in July 2017 by Kuncha Kerimova, mother of Suleiman Kerimov, whom the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") added to its Specifically Designated Nationals and Blocked Persons ("SDN") List on April 6, 2018, pursuant to Executive Order 13661. Despite the fact that Ms. Kerimova established the Trust with funds that ultimately trace back to Mr. Kerimov, WilmerHale concluded that "the Trust is neither blocked property nor itself an SDN."

     In summary, the legal opinion concluded that the Trust is not blocked property because Mr. Kerimov has no fiduciary role in connection with the Trust nor is he a beneficiary of the Trust. In addition, shortly after the OFAC designation of Mr. Kerimov, I exercised my power as Protector and Distribution Advisor of the Trust to foreclose any contingent interest Mr. Kerimov may have in the Trust assets by designating him a "Prohibited Person" under the terms of the Trust Agreement, meaning that "no distributions shall be made to or for the benefit of [Mr. Kerimov], except in the case of a distribution to [his] estate."

---

[1] WilmerHale partner David S. Cohen has substantial expertise with U.S. sanctions law. Mr. Cohen previously served within the U.S. Department of the Treasury as Assistant Secretary for Terrorist Financing and as Under Secretary for Terrorism and Financial Intelligence; he also served as the Deputy Director of the Central Intelligence Agency. In these positions, Mr. Cohen had a key role in developing and implementing the Iran, North Korean, and Russian sanctions programs, among others.

Mr. Divesh Makan
October 18, 2019
Page 2

Likewise, the WilmerHale legal opinion concluded that OFAC's so-called 50 Percent Rule, which treats entities owned 50 percent or more by an SDN as an SDN by operation of law, does not render the Trust an SDN because Mr. Kerimov does not have any ownership stake in the Trust.

I encourage you to read the opinion and welcome any questions you have about the analysis.

In addition, I would like to request that any communications concerning investments, financial transactions, strategic decisions, or any other activities related to the Trust be made exclusively with me or my designated representative(s). If you have any questions regarding who is authorized to speak on behalf of the Trust, please do not hesitate to reach out to me for clarification.

Thank you for your attention to this matter. I look forward to continuing our productive relationship in support of the Trust.

Sincerely,

James C. Langdon, Jr.
Protector, Distribution Advisor, Investment Advisor and Designated Representative

Enclosure
cc:     David S. Cohen, Esq.

# WILMERHALE

**David S. Cohen**

+1 202 663 6205 (t)
+1 202 663 6363 (f)
david.cohen@wilmerhale.com

April 24, 2019

**By E-mail and First Class Mail**

Nariman Gadzhiev
c/o Dayton Advisors AG
St. Leodegarstrasse 2
6006 Lucerne, Switzerland

Re: Heritage Trust and HWE Sub-Trust

Dear Mr. Gadzhiev:

I, along with Julia Beskin of Quinn Emanuel Urquhart & Sullivan, represent Mr. James C. Langdon, Jr., in his capacity as Protector, Investment Advisor, Designated Representative, and Distribution Advisor to the Heritage Trust and the HWE Sub-Trust (collectively, "the Trust"). I am writing to reiterate and confirm certain critical points that have been previously conveyed to you by Ms. Beskin and Mr. Langdon's law partner, Paul Butler, of Akin Gump Strauss Hauer & Feld.

As you know, on April 6, 2018, the Office of Foreign Assets Control of the United States Department of the Treasury designated Suleiman Kerimov as a specially designated national under Executive Order 13661. As a result, all property and interests in property of Mr. Kerimov subject to U.S. jurisdiction are blocked; no U.S. person may deal in any such blocked property; and no U.S. person may provide services of any kind, directly or indirectly, to Mr. Kerimov.

I understand that you have a business and familial relationship with Mr. Kerimov, and that before Mr. Kerimov's designation you occasionally acted on Mr. Kerimov's behalf. I also understand that you have signed a document dated December 13, 2018, entitled "Representations and Warranties," in which you "affirm, represent and warrant" that, among other things, you "have not, and will not, take instruction from any SDN in relation to Trust property."

In an abundance of caution to ensure compliance with the law and regulations of the United States relating to economic and financial sanctions, I want to reinforce that Mr. Langdon, and those acting on his behalf, will continue to refuse to consider, accept or act on any advice, input or direction from you, or anyone acting or purporting to act your behalf (*e.g.*, Dayton Advisors AG), with respect to Mr. Langdon's conduct as the Protector, Investment Advisor, Designated Representative, or Distribution Advisor of the Trust. This special focus on scrupulous compliance with U.S. sanctions law is, of course, in the best interests of the Trust and its beneficiaries.

WILMERHALE

Nariman Gadzhiev
April 24, 2019
Page 2

Please understand that this is not an accusation or assertion of any kind that you or anyone else has acted improperly or unlawfully. Nor is this a repudiation of whatever rights you, as a potential future beneficiary, or the Grantor (on whose behalf I understand you occasionally communicate) may have under the Trust now or in the future. Moreover, Mr. Langdon, or those acting on his behalf, from time to time may ask you to perform certain administrative tasks related to the Trust that Mr. Langdon believes are necessary or appropriate for the operation of the Trust, such as assisting in the "de-layering" process and facilitating payment on bills incurred by the Trust. Nonetheless, because of the unusual circumstances brought about by the designation of Mr. Kerimov, prudence dictates that Mr. Langdon and those acting on his behalf will not seek from you any suggestions, advice or direction regarding the operation of the Trust, nor will he or anyone acting on his behalf act on any such suggestions, advice or direction that may be received from you.

If you would like to have a phone call to discuss any of these matters, we will make ourselves available.

Best regards,

David S. Cohen

cc: Julia Beskin, Esq.

**WilmerHale**

**CONFIDENTIAL**

MEMORANDUM

Date  August 1, 2019

From  Wilmer Cutler Pickering Hale and Dorr, LLP

Re  Heritage Trust and the HWE Sub-Trust

We have been asked to offer an opinion on whether the Heritage Trust and the HWE Sub-Trust (collectively, "the Trust") are blocked property. Based on the facts as we understand them as of the date of this Memorandum,[1] in our opinion the Trust is not blocked property.

*    *    *

The Trust was settled on July 7, 2017 by Kuncha Kerimova ("Grantor") with funds that ultimately trace back to Suleiman Kerimov, the Grantor's son. On April 6, 2018, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") added Mr. Kerimov to its Specially Designated Nationals and Blocked Persons ("SDN") List pursuant to Executive Order ("E.O.") 13661, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine."[2]

E.O. 13661, which was issued pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.*, blocks, and prohibits nearly all dealings by U.S. persons in, the property or property interests of an SDN such as Mr. Kerimov.[3] The Ukraine Related Sanctions Regulations, 31 C.F.R. Part 589, which implement E.O. 13661, define "the term interest, when used with respect to property (e.g., 'an interest in property')," as "an interest of any nature whatsoever, direct or indirect."[4] These regulations broadly define "property" and "property interest" to include, among other things, "services of any nature whatsoever," "contracts of any

---

[1] Our factual inquiry has consisted of a review of the Trust instrument, other pertinent documents and correspondence, and interviews with several individuals with relevant knowledge of the establishment and post-April 6, 2018 operation of the Trust.

[2] *See* OFAC, *Ukraine-/Russia-related Designations and Identification Update* (Apr. 6, 2018), https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20180406.aspx.

[3] E.O. 13661, 79 Fed. Reg. 15,535, 15,535 (Mar. 19, 2014). E.O. 13661 applies to U.S. persons, including entities, and provides that "[a]ll property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States Person (including any foreign branch)" of individuals or entities designated pursuant to E.O. 13661 "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *Id.* E.O. 13661 includes prohibitions on dealings with property interests of SDNs; on "the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order"; and on "the receipt of any contribution or provision of funds, goods, or services from any such person." *Id.*

[4] 31 C.F.R. § 589.304.

WilmerHale

**CONFIDENTIAL**

August 1, 2019
Page 2

nature whatsoever," and "any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future, or contingent."[5]

Despite the broad scope of these key terms and the corresponding impact of OFAC's designation of Mr. Kerimov, in our opinion the Trust is neither blocked property nor itself an SDN.

*First,* Mr. Kerimov does not have any property interest in the Trust by the terms of the Trust documents. His name appears nowhere in the documents establishing the trust (collectively, the "Trust Agreement"), either as a beneficiary or otherwise; the Trust skips his generation as beneficiaries; and, on April 27, 2018, James C. Langdon, Jr.—acting in his capacity as Protector and Distribution Advisor of the Trust[6]—designated Mr. Kerimov a "Prohibited Person" under the Trust Agreement, meaning that "no distributions shall be made to or for the benefit of such person, except in the case of a distribution to such person's estate."[7] This action by Mr. Langdon specifically foreclosed any contingent interest Mr. Kerimov may have had in the Trust Assets.

And while it is possible, under the terms of the Trust Agreement, that the Grantor could invoke her discretion to add Mr. Kerimov as a beneficiary or to direct a distribution to Mr. Kerimov, she may not take these actions so long as Mr. Kerimov is a Prohibited Person; the Grantor acting alone has no power under the Trust Agreement to reverse that designation because that power rests solely with "the Distribution Advisors, with the consent of the Protectors."[8] Thus, unless and until Mr. Kerimov's "Prohibited Person" status is revoked by the Distribution Advisor, with the consent of the Protector (Mr. Langdon, in both cases), Mr. Kerimov may not be added as a beneficiary, may not receive any distribution from the Trust, and otherwise has no interest in the Trust.

Moreover, although we are aware that Mr. Kerimov participated in some investment decision-making regarding the Trust prior to his designation on April 6, 2018, it is our understanding that since his designation Mr. Kerimov has not played any role, directly or indirectly, in the ongoing management and decision-making regarding the Trust, and has not exhibited an understanding that he maintains any property interest in the Trust.

Accordingly, in our opinion, Mr. Kerimov has no interest, direct or indirect, tangible or intangible, present or future, in the Trust, and thus the Trust is not blocked property under OFAC's regulations.

---

[5] *Id.* § 589.308.
[6] Mr. Langdon also presently serves as the Trust's Investment Advisor and Designated Representative.
[7] Trust Agreement ¶ 1.4; Sub-Trust Agreement ¶ 1.2. *See also Letter from Langdon to Concavage* (Apr. 27, 2018).
[8] Heritage Trust Agreement ¶ 1.4; *see also id.* ¶¶ 1.5-1.6.

WilmerHale

**CONFIDENTIAL**

August 1, 2019
Page 3

*Second,* in our opinion the Trust itself is not an SDN by operation of OFAC's so-called "50 Percent Rule." This rule establishes that entities 50 percent or more owned, individually or in the aggregate, by SDNs are themselves deemed to be SDNs.[9] Specifically, an SDN is deemed to:

> ha[ve] an interest in all property and interests in property of an entity in which it owns, directly or indirectly, a 50 percent or greater interest. The property and interests in property of such an entity, therefore, are blocked, and such an entity is a person whose property and interests in property are blocked pursuant to § 589.201, regardless of whether the name of the entity is incorporated into [OFAC's SDN List.][10]

As noted above, Mr. Kerimov has no ownership stake in the Trust, let alone a 50 percent or more ownership stake. The Trust skips Mr. Kerimov's generation, and, per the Prohibited Persons letter, Mr. Kerimov cannot receive distributions from the Trust or be named as a beneficiary of the Trust. Mr. Kerimov also has not signed any of the contracts regarding the Trust or Trust entities and his name appears nowhere in the Trust Agreement, other than in the original deeds for the gifts to his children (which eventually became Trust assets, thereby extinguishing his prior property interest), thus eliminating the risk of violating OFAC's proscription against "enter[ing] into contracts that are signed by a blocked individual."[11] Nor does Mr. Kerimov himself appear to be exerting control over the Trust or taking any actions regarding the Trust. Even if he were, the 50 Percent Rule "speaks only to ownership and not to control,"[12] so that control would not, on its own, automatically render the Trust blocked property.

\* \* \*

In sum, it is our opinion that the Heritage Trust and the HWE Sub-Trust are not blocked property under applicable law and regulations. This analysis is subject to revision in light of further factual developments. Please do not hesitate to contact the undersigned should you have any questions or wish to discuss this opinion.

David S. Cohen
David M. Horn
Tara E. Levens

---

[9] 31 C.F.R. § 589.406.
[10] *Id.*
[11] OFAC FAQ # 400.
[12] OFAC FAQ # 398.