UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>         v.<br><br>The M/Y Amadea, a Motor Yacht Bearing International Maritime Organization No. 1012531,<br><br>                 Defendant. | 23 Civ. 9304 (DEH)<br><br>**<u>MEMORANDUM ORDER</u>** |

DALE E. HO, United States District Judge:

The factual background of this case is set forth in the Court's Order, dated June 11, 2024, denying the Government's Motion for Interlocutory Sale, *see* ECF No. 121, familiarity with which is presumed.

Before the Court are: (1) the Government's Motion to Strike the Claim, or Motion for Summary Judgment, for Lack of Standing, ECF No. 97; and (2) a number of discovery disputes, addressed in more than a dozen letters and status updates. In essence, the discovery disputes addressed in this Order concern two issues. The first is the location of three depositions, including those of the two Claimants, Eduard Khudainatov ("Khudainatov") and Millemarin Investments, Ltd. ("Millemarin") (collectively, "Claimants"), and a Russian national who is a third-party witness for Claimants. Specifically: Claimants move for a protective order with respect to Khudainatov's deposition, which has been noticed in the United States, *see* ECF No. 149; and the Government moves (a) to compel the 30(b)(6) deposition of Millemarin in the United States, and (b) for a protective order with respect to the deposition of a third-party witness, which has been noticed by Claimants to take place abroad, *see* ECF Nos. 240 (unredacted version under seal), 241 (publicly-filed redacted version). The second discovery

issue before the Court is Claimants' request to extend the discovery period until January 24,

2025, *see* ECF No. 286.

For the reasons explained below, with respect to the parties' motions:

- The Court **RESERVES DECISION** on the Government's Motion to Strike, ECF No. 97, pending an evidentiary hearing.

- Claimant's Motion for Leave to File Expansion of Record with respect to the Government's Motion to Strike, ECF No. 295, is **DENIED AS MOOT**, without prejudice to raising any substantive arguments during the evidentiary hearing.

- Claimants' Motion for a Protective Order, ECF No. 149, is **DENIED IN PART,** and the Government's Motion for a Protective Order, ECF Nos. 230 and 231, is **GRANTED**.  Specifically, the depositions of Khudainatov and the above-referenced third-party witness, shall take place in person in New York, or in a country that: (i) does not require a Mutual Legal Assistance request, and (ii) was previously offered by the Government as the location for the deposition.

- The Government's Motion to Compel, ECF Nos. 230 and 231, is **GRANTED IN PART**.  The 30(b)(6) deposition of Millemarin shall take place in London.

- Claimant's Motion to Extend Discovery, ECF No. 286, is **GRANTED IN PART**. Discovery is extended through **December 20, 2024**, solely for the purpose of completing depositions.

- The Government's Motion to Seal its Opposition to Claimant's Motion to Extend Discovery, ECF No. 289, is **GRANTED.**  ECF No. 290 shall remain under seal with access limited to applicable parties.

- The evidentiary hearing on the Government's Motion to Strike is adjourned to **January 21, 2025**.  A further adjournment will not be granted absent extraordinary circumstances.  A scheduling order setting forth the filing deadlines for hearing materials will issue separately.

## DISCUSSION

### I.    The Government's Motion to Strike

The Government filed its Motion to Strike on May 17, 2024.  *See* ECF No. 97.  In its

opening memorandum of law in support of its motion, the Government alleges that Claimants

"are mere straw owners of the *Amadea*," and that Millemarin gave up ownership of the vessel via

a Memorandum of Agreement with Errigal Marine Limited ("Errigal"), a company owned by a non-party to the suit, Evgeny Kochman ("Kochman"). *See* ECF No. 97 at 1. Per the Government, Claimants "have not had dominion or control over the *Amadea* or any financial stake in it" since receiving full payment from Errigal in exchange for "giving away the right to use the vessel, the right to obtain income or additional proceeds from its sale, and the responsibility for paying for its upkeep." *Id.*

    In their opposition, Claimants dispute the Government's contention about the Errigal transfer, asserting that "[n]o transfer of ownership ever took place" because the agreement was "ultimately cancelled." *See* ECF No. 123 at 2, 4. Rather than a sale or transfer, Claimants characterize Kochman's use of the *Amadea* as temporary pending his finding a bona-fide buyer for the vessel. *Id.* at 7. According to Claimants, after the Errigal agreement was cancelled, "possession and all use rights" of the *Amadea* were returned "back to Mr. Khudainatov." *Id.* at 10. And upon termination of the Errigal agreement, Khudainatov "became liable to return the full amount of the funds that he had received in connection with the Errigal Agreement." *Id.* Moreover, any use of the *Amadea* by another party or entity, and specifically by Suleiman Kerimov ("Kerimov") or a member of his family, was in the *Amadea*'s capacity as a chartered vessel, and is not indicative of a transfer of ownership. *See id.* at 11.

    In its reply, the Government disputes Claimants' contention that the Errigal agreement was terminated, pointing to the fact that there was no written evidence of the agreement having been cancelled and asserting that Claimants failed the dominion and control test for establishing standing. *See* ECF No. 197. Claimants sur-reply disputes the Government's assertion and again argues that the Errigal agreement was terminated. *See* ECF No. 147. The Government's supplemental brief presents what the Government describes as "new bombshell evidence"

substantiating its assertions regarding the Errigal transaction.  *See* ECF No. 197.  And Claimants, in their opposition to the Government's sur-reply, deny the significance of the Government's new evidence, reassert that the Errigal agreement was terminated, and argue that "there [was] no evidence that the Errigal Arrangement has anything to do with Suleiman Kerimov."  *See* ECF No. 216 at 1.

To contest the Government's seizure of the *Amadea*, Claimants must have both statutory standing and Article III standing.  *See United States v. Cambio Exacto*, 166 F.3d 522, 526 (2d Cir. 1999).  The Government's Motion to Strike their Claim is presented in a summary judgment posture, as allowed under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  *See* Supp. R. G(8)(c).[1]  The Court therefore scrutinizes Claimants' ownership claim in "a manner consistent with the principles of Rule 56 of the Federal Rules of Civil Procedure."  *United States v. $138,381 in U.S. Currency*, 240 F. Supp. 2d 220, 227 (E.D.N.Y. 2003).  For the Court to grant summary judgment, the moving party must demonstrate the absence of any genuine issues of material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Here, the parties' submissions contain numerous factual disputes—most significantly, whether the Errigal transaction was in fact consummated, which in turn depends in part on the credibility of Khudainatov's declaration denying that it was.  In this context, the Court cannot adjudicate the Government's Motion to Strike in a summary judgment posture on the papers.  But as the Government notes, *see* Reply, ECF No. 137 at 19, Supplemental Rule G permits its motion to be considered via an evidentiary hearing at which Claimants must establish their standing by a preponderance of the evidence.  *See* Supp. R. G(8)(c)(ii)(B).

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

Accordingly, the Court reserves judgment on the Government's Motion to Strike pending an evidentiary hearing.  For reasons stated below, the hearing is adjourned to **January 21, 2025**. Claimants' motion to expand the record on the Government's Motion to Strike, ECF No. 295, is denied as moot, without prejudice to Claimant's ability to raise any substantive arguments during the evidentiary hearing.

## II.     The Discovery Disputes

### A.  Procedural History

The issue of Khudainatov's deposition was first raised in a Letter Motion from Claimants dated July 22, 2024, ECF No. 149.  There, Claimants requested a Protective Order and authorization from the Court for the deposition to be conducted remotely rather than in-person in New York, citing the burden of logistics involved in traveling from Russia and the concern that Khudainatov might be a target of the United States Government.  *See* ECF No. 149 at 2.  The letter further noted that Khudainatov had offered to have an in-person deposition in various locations, including Dubai and Abu Dhabi. *See id.* at 1.  In its opposition letter filed on July 25, 2024, the Government responded to Claimants' concerns by, *inter alia*, offering Khudainatov a safe passage letter, but did not attach a draft letter and did not indicate whether a draft had been provided to Claimants.  *See* ECF No. 156.  The Court held a conference on July 26, 2024, ordered the Government to produce a draft safe passage letter to Khudainatov, and directed the parties to meet and confer again regarding the location of his deposition.  During the conference, Claimants, for the first time, raised an additional concern: that Khudainatov may be subject to reprisals from the Russian government upon returning from the United States.  *See* July 26, 2024 Conference Tr., ECF No. 165.

After receiving another status letter dated August 7, 2024, *see* ECF No. 170 (under seal), the Court held a conference on August 12, 2024, during which the parties represented that they still could not agree on a location for the deposition. Although Claimants represented that they had offered several countries where Khudainatov would agree to be deposed in person, the Government explained that it would not be possible for the Government to take a deposition in any of those countries, because of the need to submit a Mutual Legal Assistance (MLA) request—a time-consuming process that may or may not result in authorization for the Government to take a deposition, and which, even if granted, could be subject to cumbersome procedural restrictions.[2]  In follow-up letters dated August 12, 2024, the Government further explained that, in countries where an MLA requirement applies, the United States must comply with it regardless of whether the deposition is taken in-person or via remote means. *See* ECF Nos. 173 and 174. Accordingly, on the following day, August 13, 2024, the Court issued an Order directing the parties to meet and confer in good faith again, essentially directing them to attempt to identify a mutually agreeable location where the Government can take a deposition without an MLA request, or where such a request may be granted quickly within the discovery period and without unduly onerous restrictions. *See* ECF No. 177.

Over the next two and a half months, the parties submitted more than a dozen status updates regarding their efforts to identify such a location.[3]  The Court does not summarize these

---

[2] For example, as the Government explained at a subsequent conference on October 30, 2024, such restrictions may include having all depositions questions be posed through a legal official of the host country (presumably in that country's national language, requiring multiple rounds of translation), rather than by an attorney for the Government. This has proven to be the case with more than one country. *See* ECF Nos. 276, 290 (under seal).

[3] One or both parties submitted numerous status updates and/or motions regarding the location of this and other depositions, including on: August 14, *see* ECF No. 179; August 20, 2024, *see* ECF No. 186; August 23, *see* ECF Nos. 192 (under seal) and 193 (publicly-filed redacted version); August 28, *see* ECF No. 203 (under seal); August 29, *see* ECF No. 206 (under seal); September

voluminous filings except to note that they raise several additional matters.  First, in addition to Khudainatov's deposition, the depositions of two others—the 30(b)(6) representative of Claimant Millemarin, and a third-party witness for Claimants who is a Russian national—also became the subject of motions practice, with the Government seeking to compel the former in New York, and requesting a protective order as to the latter, which Claimants noticed abroad.  *See* ECF Nos. 240 (under seal) and 241 (publicly-filed redacted version).  With respect to the 30(b)(6) deposition, the Government noted that Millemarin is a British Virgin Islands Company; and as for the third-party deposition, the Government noted that it is unable to participate in a deposition in the country where Claimants have noticed it, for substantially the same reasons that it cannot depose Khudainatov in the countries that Claimants have offered: namely, the infeasibility of an MLA request.  *See* ECF No. 241 at 2.  For their part, Claimants now seek an extension of the discovery period for various reasons, including to accommodate oustanding depositions.  *See* ECF No. 286.

### B.  Legal Standards

District courts have "broad discretion to manage the manner in which discovery proceeds." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003).  Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery.

The general rule regarding the location of a deposition is that the "party noticing the deposition usually has the right to choose the location." *Buzzeo v. Bd. of Educ., Hempstead*, 178

---

4, *see* ECF Nos. 212 (under seal) and 214; September 6, *see* ECF No. 220 (under seal); September 13, *see* ECF Nos. 237 (under seal), 240 (under seal), and 241 (publicly-filed redacted version); September 18, *see* ECF No. 252; September 20, *see* ECF No. 257; October 4, *see* ECF No. 275; October 11, *see* ECF No. 281; October 18, *see* ECF No. 285; and October 21, *see* ECF No. 286 (discovery extension).

F.R.D. 390, 392 (E.D.N.Y. 1998) (citations omitted); *see also* Fed. R. Civ. P. 30(b)(1) (dictating that notice "must state the time and place of the deposition"); 7 Moore's Federal Practice, § 30.20[1][b][ii] ("The notice must state the location at which the deposition will take place."). Ultimately, however, courts have substantial discretion to designate the location of an in-person deposition. *See Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y. 1997) ("[C]ourts retain substantial discretion to designate the site of a deposition[.]"); *Shibata v. Swingle*, No. 16 Civ. 1349, 2018 WL 4522050, at *2 (N.D.N.Y. Feb. 26, 2018) (same). In a forfeiture action, a court may order a foreign claimant to sit for a deposition in the district where the action is proceeding absent a showing of good cause. *See United States v. Kokko*, No. 06 Civ. 20065, 2007 WL 2209260, at *7 (S.D. Fla. July 30, 2007).

A court may also order that a deposition be conducted remotely, and has considerable discretion in considering an application for a remote deposition. Rule 30(b)(4) provides that "the court may on motion order . . . that a deposition be taken by telephone or other remote means." Because "Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request [for a remote] deposition . . . the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts." *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020) (quoting *RP Family, Inc. v. Commonwealth Land Title Ins. Co.*, No. 10 Civ. 1149, 2011 WL 6020154, at *3 (E.D.N.Y. Nov. 30, 2011) (citations & internal quotation marks omitted)).

### C.  Application

#### 1.  The 30(b)(6) Deposition of Millemarin

Claimants have now indicated that they are willing to conduct the 30(b)(6) deposition of Millemarin in person in London; the only dispute is over when it will take place, as Claimants request a date in late November or early December—*i.e.*, a few weeks after the currently-scheduled close of discovery.  *See* ECF No. 285, at 1, 3.  Given the inherent logistical difficulties of scheduling depositions internationally, the Court finds that this is a suitable compromise and ORDERS that the 30(b)(6) deposition shall take place in London no later than December 20, 2024.

#### 2.  The Depositions of Khudainatov and the Third Witness

##### a.  The Government's Position

With respect to Khudainatov, the Government's primary argument is that it needs to take his deposition in person because his "credibility is front and center in this case. He claims to own the Amadea; the Government believes he is lying. For depositions where credibility is at stake, in-person deposition is important and remote deposition is no adequate substitute."  ECF No. 156, at 2.  The Court finds that, under the circumstances of this case, the Government has asserted an adequate basis for an in-person deposition.

To be sure, some courts have observed that conducting depositions "remotely is becoming the new normal," *Rouviere*, 471 F. Supp. 3d at 574.  Taking depositions via remote means has become much more common in recent years, and courts have often refused to require in-person depositions where a remote option is an adequate substitute.  *See, e.g.*, *D'Arezzo v. Appel*, No. 22 Civ. 177, 2024 WL 538538, at *1 (S.D.N.Y. Feb. 8, 2024); *PC-41 DOE v. Poly*

*Prep Country Day School*, No. 20 Civ. 3628, 2022 WL 420619, at *1 (E.D.N.Y. Jan. 20, 2022).
But even so, district courts have continued to recognize that there is nothing extraordinary or
inappropriate about seeking to take a deposition in person, particularly for a key witness. *See,
e.g.*, *Charr v. King*, No. 21 Civ. 61654, 2023 WL 9792732, at *2 (S.D. Fla. Nov. 3, 2023)
("Remote depositions preclude in-person confrontation and the assessment of a deponent's
demeanor, affect, non-verbal responses, and facial expressions. . . . Here, Plaintiff's deposition
testimony is presumably critical, and the value of accurately assessing Plaintiff's credibility is
heightened."); *Pruco Life Ins. Co. v. California Energy Dev. Inc.*, No. 18 Civ. 2280, 2021 WL
5043289, at *3 (S.D. Cal. Oct. 29, 2021) ("[T]he Court finds that the circumstances of this case
demand that depositions take place in person. There is an exceedingly high level of distrust
among all parties, as evidenced by the near-constant stream of accusations of bad faith and
dishonest conduct the Court has faced from all sides. The credibility of the parties is also a key
substantive issue in this case. For that reason, the Court is not inclined to permit key witnesses
such as Mr. Voelker to appear by videoconference.").

Here, Khudainatov is perhaps the key witness in this case. A critical issue in the
Government's motion to strike is whether he consummated the Errigal transaction—which, the
Government argues, would deprive him of standing. *See generally* Mot. to Strike, ECF No. 97.
In denying that the transaction was actually consummated, Claimants rely heavily (although not
exclusively) on Khudainatov's declaration. *See generally* Opp'n to Mot. to Strike, ECF No. 123.
His credibility is therefore a matter of critical importance at this stage of the litigation. Under the
facts of this case, it is entirely appropriate for the Government to seek to have his deposition be
conducted in person.

### b. Claimants' Arguments

In the initial status letter, Khudainatov objected to an in-person deposition on two grounds: the burden of logistics from traveling from Russia, and his stated fear that he might be a target of the United States Government. *See* ECF No. 149 at 2. As to the first concern, Khudainatov has no real argument as to hardship from long-distance travel, as he states that he is willing to travel quite far for purposes of a deposition, including to places including the U.A.E. *See id.* As to the second concern, the Court ordered the Government to produce a draft safe passage letter, which Claimant indicated he would consider, and which the Government has since offered. *See* ECF No. 179-2.

In the parties' next filing and in subsequent status updates to the Court, Claimants no longer focused on these concerns, but instead concentrated on a third one (which, as noted *supra*, was first raised at a conference before the Court on July 26): a purported fear of reprisal by the Russian government upon return from the United States, or from any country that is or is perceived to be a U.S. ally. To substantiate this fear, Khudainatov relies principally on an expert, *see* ECF No. 170-1 (under seal). But Claimants offer no reasonable alternative: all of the countries that they have proposed for the depositions of both Khudainatov and the third-party witness suffer from the same problem regardless of whether the depositions are remote or in-person—either way, they will require an MLA request, which the Government represents cannot be satisfied within the timeframe for discovery (indeed, after more than three months of jockeying, it is unclear whether *any* amount of time will be sufficient), and/or will entail impractical constraints. Furthermore, the Court has reviewed Claimants' submissions regarding potential threats to Khudainatov's safety from traveling to these countries and finds them too

11

general and too conclusory to form a basis for finding good cause for Claimants' requested protective order.

The cases on which Claimants rely to support the propriety of a remote deposition are irrelevant given the infeasibility of a remote deposition here, due to the MLA requirement in the locations that they have offered. And the cases are inapposite. Of the cases offered by Claimants, *United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10 (D.D.C. 2014), is the most relevant. But, notwithstanding some language about the general feasibility of video depositions, that case seemed to be motivated primarily by foreign sovereignty concerns, as the claimant in that case was the sitting Vice President of Equatorial Guinea. *See id.* at 14 ("The uniqueness of Nguema's top-level government position distinguishes this matter from most other discovery disputes involving foreign litigants, and 'special protections' must be afforded to him."). Similarly, *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575 (S.D.N.Y. 2020), also involved high-ranking foreign government officials, *see id.* at 578, and was largely about the logistical concerns and burdens of international travel during the then-raging COVID-19 pandemic before vaccination became available, *see id.* at 580 (rejecting arguments against remote depositions because "Plaintiffs have not demonstrated how, on balance, potential issues posed by remote depositions outweigh the burden of requiring high-ranking and former Saudi government officials to travel and potentially quarantine abroad in the midst of a global pandemic."). Finally, *PC-41 DOE* was also primarily about the risks of the pandemic, particularly for the deponent and his family, which included someone ineligible for COVID vaccination. *See* 2022 WL 420619, at *1 ("Plaintiff has identified a number of specific risks to an in-person deposition, including risks to his child who is not vaccine-eligible, and his

12

healthcare worker spouse, were he to catch COVID-19 either from the in-person deposition itself, or from travel to and from the deposition from his home in Oregon.").

In sum, the Government has made Herculean efforts over the last few months to identify a country where Khudainatov can be deposed and has offered numerous locations on multiple continents. Based on the record before it, the Court cannot find good cause to order that the deposition take place anywhere other than one of the countries that the Government has already offered. Given that the MLA requirement for certain countries applies regardless of whether a deposition is remote or in-person, there appears to be no alternative.

Notwithstanding the above, the Court is not convinced that the deposition of Khudainatov *must* take place in New York. It is true that the party noticing a deposition is generally entitled to choose the location of it, and while there is authority for ordering a foreign claimant to appear in the district where a forfeiture action takes place, here, the Government has identified several locations outside of the United States where it can conduct a deposition without an MLA request. The Court finds that any of these locations are appropriate for the depositions of Khudainatov and the third-party witness, and exercises its discretion to **ORDER** the parties to conduct these depositions either in New York or in one of the countries that the Government has offered, where it may take a deposition without an MLA request.

In light of the additional time necessary to complete these depositions, the Court grants in part Claimants' request to extend discovery, ECF No. 286. Discovery is hereby extended through **December 20, 2024**, solely for the purpose of completing depositions.[4] The parties are

---

[4] The Court finds that the Government's request to place ECF No. 290 under seal with access limited to applicable parties is appropriate to protect sensitive information regarding foreign relations. *Cf. Halpern v. F.B.I.*, No. 94 Civ. 365, 2002 WL 31012157, at *7 (W.D.N.Y. Aug. 31, 2001) (redactions proper under FOIA to protect "relations between the United States and a foreign government").

further advised that, while the Court may, in a summary judgment posture, consider testimony from a witness who has not been deposed, *see* ECF No. 227 (citing authority), it is not inclined to do so in the context of evidentiary proceedings given the procedural posture of this case. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 269 (2d Cir. 1999) (affirming district court's exercise of discretion to preclude testimony of a witness who has not been deposed).

## CONCLUSION

For the reasons stated above,

- The Court **RESERVES DECISION** on the Government's Motion to Strike, ECF No. 97, pending an evidentiary hearing.

- Claimant's Motion for Leave to File Expansion of Record with respect to the Government's Motion to Strike, ECF No. 295, is **DENIED AS MOOT**, without prejudice to raising any substantive arguments during the evidentiary hearing.

- Claimants' Motion for a Protective Order, ECF No. 149, is **DENIED IN PART,** and the Government's Motion for a Protective Order, ECF Nos. 230 and 231, is **GRANTED**. Specifically, the depositions of Khudainatov and the above-referenced third-party witness, shall take place in person in New York, or in a country that: (i) does not require a Mutual Legal Assistance request, and (ii) was previously offered by the Government as the location for the deposition.

- The Government's Motion to Compel, ECF Nos. 230 and 231, is **GRANTED IN PART**. The 30(b)(6) deposition of Millemarin shall take place in London.

- Claimant's Motion to Extend Discovery, ECF No. 286, is **GRANTED IN PART**. Discovery is extended through **December 20, 2024**, solely for the purpose of completing depositions.

- The Government's Motion to Seal its Opposition to Claimant's Motion to Extend Discovery, ECF No. 289, is **GRANTED.** ECF No. 290 shall remain under seal with access limited to the applicable parties.

- The evidentiary hearing on the Government's Motion to Strike, is adjourned to **January 21, 2025**. A further adjournment will not be granted absent extraordinary circumstances. A scheduling order setting forth the filing deadlines for hearing materials will issue separately.

The Clerk of the Court is respectfully directed to close ECF Nos. 240, 286, and 289, and 295.


SO ORDERED.

Dated: November 15, 2024
New York, New York

DALE E. HO
United States District Judge