**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23 Civ. 9304 (DEH) |
| Plaintiff, | |
| -v- | **DECLARATION OF USMS ASSISTANT CHIEF JENNIFER CRANE IN SUPPORT OF THE UNITED STATES'S BILL OF COSTS** |
| THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO, | |
| Defendant-*In-Rem*, | |
| and | |
| EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD., | |
| Claimants. | |

I, Jennifer Crane, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, as follows:

1.      I am Assistant Chief in the Personal Property Unit of the Asset Forfeiture Division of the U.S. Marshals Service ("USMS").  I have had responsibility for managing the maintenance and upkeep of the M/Y *Amadea* while it has been in USMS custody.

2.      While the *Amadea* has been in USMS custody, it has been maintained by the USMS's contractor National Maritime Services, Inc. ("National Maritime").  National Maritime has, in turn, subcontracted with suppliers and shipyards, paid berthing fees and insurance premiums, and hired and managed a crew as necessary to store, preserve and maintain the *Amadea*.

3.      National Maritime generally bills the USMS for services in connection with the

1

*Amadea* on a monthly basis.  It submits the invoice for a given month (also known as a "period of performance") after the end of that month.

4.      There are some exceptions to the rule of monthly invoicing: First, because the contract between USMS and National Maritime contract was first signed in the middle of the month of September, the month of September is divided into two invoices, with one invoice corresponding to each contractual year.  Second, the month of October, 2022, was divided into two invoices for similar reasons of internal administrative and accounting convenience.  Third, the *Amadea*'s insurance premiums have generally been invoiced separately and not as part of a monthly billing cycle.[1]  Fourth, two major capital expenses were invoiced outside of a monthly billing cycle:

i.    From April 25, 2024, to July 2, 2024, the *Amadea* was either en route to or from, or in, dry dock for a maintenance cycle (which is required every two years).  This period of drydock maintenance was invoiced separately on one invoice.  National Maritime did not otherwise submit monthly invoices for this period.

ii.   In approximately April 2024, National Maritime identified the need to overhaul the *Amadea*'s electricity generators.  The USMS authorized work to proceed on the overhaul on August 15, 2024, with an estimated budget of $1,215,844.00.  On April 7, 2025, National Maritime submitted a final invoice for this work for

---

[1] The primary two insurance coverages carried by the *Amadea* are (1) a protection and indemnity policy and (2) a hull and machinery policy.  The protection and indemnity policy is invoiced in February and the hull and machinery policy in May.  Though the insurance premiums are generally separately invoiced, the 2024 protection and indemnity premium was included on the same invoice as the other storage and maintenance costs for February 2024.

$1,203,384.41, which was slightly under the estimated budget.[2]

5.      Attached to this declaration are National Maritime's invoices to the USMS from September 2022 to February 2025 in connection with the *Amadea*.[3]  The invoice for March 2025 is not yet available, but the Government will submit the invoice when it is.  (National Maritime anticipated $664,950 in expenses for March 2025).  These invoices are also summarized in the table below.

| Invoice # | Period of Performance | Invoice Amount |
|---|---|---|
| 202200923A | 9/1/22 - 9/23/22 | $494,533.33 |
| 202200930A | 9/24/22 - 9/30/22 | $84,973.27 |
| 202201023A | 10/1/22 - 10/23/22 | $384,495.67 |
| 202201031A | 10/24/22 - 10/31/22 | $297,874.96 |
| 202201130A | 11/1/22 - 11/30/22 | $588 482.09 |
| 202201231A | 12/1/22 – 12/31/22 | $712,415.23 |
| 202300131A | 1/1/23 - 1/31/23 | $555,315.70 |
| 202300228AA | Insurance (protection and indemnity) | $176,000.00 |
| 202300228AB | 2/1/23 - 2/28/23 | $636,038.64 |
| 202300331A | 3/1/23 - 3/31/23 | $573,159.30 |
| 202300430A | 4/1/23 - 4/30/23 | $541,862.35 |
| 202300526A INS | Insurance (hull and machinery) | $1,725,000.00 |
| 202300531A | 5/1/23 - 5/31/23 | $586,245.19 |
| 202300630A | 6/1/23 - 6/30/23 | $572,995.44 |
| 202300731A | 7/1/23 - 7/31/23 | $642,968.42 |
| 202300831A | 8/1/23 - 8/31/23 | $684,987.57 |

[2] The USMS prepaid both the costs of the drydock maintenance cycle and the generator overhaul. Specifically, USMS prepaid National Maritime $5,631,842.05 on or about February 18, 2024, in anticipation of the upcoming drydock maintenance cycle.  After it became clear that the drydock maintenance cycle would cost less than anticipated, the balance of that prepayment was applied to the generator overhaul and the remainder refunded.

[3] National Maritime also provides back-up with each invoice, including an Excel spreadsheet, receipts and subcontractor invoices.  I have not included such back-up with the attachments to this declaration, but am willing to make it available for inspection.

| 202300923A | 9/1/23 - 9/23/23 | $501,627.23 |
| 202300930A | 9/24/23 - 9/30/23 | $230,420.37 |
| 202301031A | 10/1/2023 - 10/31/2023 | $577,876.23 |
| 202301130A | 11/1/2023 - 11/30/2023 | $594,690.57 |
| 202301231A | 12/1/2023 - 12/31/2023 | $713,703.33 |
| 202400131A | 1/1/2024 - 1/31/2024 | $754,802.33 |
| 202400229A | 2/1/2024 - 2/29/2024 | $839,881.91 |
| 202400331A | 3/1/2024 - 3/31/2024 | $552,627.74 |
| 202400424A | 4/1/2024 - 4/25/2024 | $419,172.02 |
| 202400515A | Insurance (hull and machinery) | $1,725,000.00 |
| 202400702A | 4/26/2024 - 7/2/2024 (dry dock) | $3,545,523.42 |
| 202400731A | 7/3/2024 - 7/31/2024 | $557,376.89 |
| 202400831A | 8/1/2024 - 8/31/2024 | $625,877.99 |
| 202400923A | 9/1/2024 - 9/23/2024 | $532,319.54 |
| 202400930A | 9/24/2024 - 9/30/2024 | $154,010.93 |
| 202401031A | 10/1/2024 - 10/31/2024 | $620,219.95 |
| 202401130A | 11/1/2024 - 11/30/2024 | $594,211.45 |
| 202401231A | 12/1/2024 - 12/31/2024 | $588,096.48 |
| 202500131A | 1/1/2025 -1/31/2025 | $671,418.02 |
| 202500218A | Insurance (protection and indemnity) | $264,824.76 |
| 202500228A | 2/1/2025 – 2/28/2025 | $633,520.94 |
| 2025000404A | Generator overhaul | $1,203,384.41 |
| TBD | 3/1/2024 – 3/31/2025 | TBD (estimated $664,950.00) |

6.     National Maritime's charges to USMS are determined according to a vessel pricing schedule that was negotiated between National Maritime and USMS based on going market rates and is applied to other vessels of which the USMS has taken custody.

7.     The USMS and National Maritime have incurred only expenses necessary to maintain the *Amadea* in good working condition and to ensure the vessel retains its classification

and insurance status, which prescribe specific maintenance requirements. The USMS and National Maritime have achieved cost savings in relation to the ordinary costs of a vessel similar to the *Amadea*. Thus, for example, while most superyacht crews work on a rotating shift basis such that at any given time, each crewmember has a counterpart on shore or in transit to or from the vessel, the crew employed by National Maritime (with one exception)[4] does not rotate, thus resulting in significant cost savings in both crew salaries and crew travel costs.

8.      In February 2024, I submitted a declaration describing the maintenance and upkeep costs of the *Amadea*, which is available on the docket at ECF No. 34. That declaration described both costs that the USMS had incurred to date as well as anticipated drydock maintenance and insurance costs. I understand that, in response, the Claimants submitted the declaration of a marine consultant opining that the expenses I described were "reasonable, normal and necessary." ECF No. 53-9. The expenses reflected on the attached invoices are consistent with the expenses that I described in my previous declaration. Indeed, in my prior declaration I had anticipated $5,600,000 in expenses for the upcoming drydock maintenance cycle, while the actual expenses were $3,545,523.42. Even including the $1,203,384.41 in generator overhaul expenses (which I had not anticipated in February 2024), the USMS's total expenditures on the dry dock and generator overhaul are approximately $850,000 less than the $5,600,000 estimate that I provided in my previous declaration, and that Claimants' consultant considered "reasonable, normal and necessary."

9.      I understand that the Government is seeking to tax costs arising from the USMS's expenses for two different periods: (i) September 8, 2022, to October 23, 2023, and (ii) October 23, 2023, to March 18, 2025. Each of these periods involves partial months, but prorating the

---

[4] The Chief Engineer is the sole position that does rotate on the current crew.

relevant invoices provides a fair estimate of the relevant parts of those months. The USMS's prorated expenses for the relevant invoices are as follows:

    a.   September 8 to September 23, 2022: ($494,533.33/23[5])*15=$322,521.74

    b.   October 1 to October 22, 2023: ($577,876.23/31)*22=$410,105.71

    c.   October 23 to October 31, 2023: ($577,876.23/31)*9=$167,770.52

    d.   March 1 to March 18, 2025: (to be determined after receipt of March 2025 invoice)

10.    The total of the invoices from the relevant periods including such proration is therefore as follows:

| | |
|---|---|
| Prorated invoice for 9/8/2022 to 9/23/2022 | $322,521.74 |
| Prorated invoice 10/1/23 to 10/22/23 | +$410,105.71 |
| Subtotal of all intermediate invoices | +$8,906,379.34 |
| **TOTAL September 8, 2022, to October 23, 2023** | =$9,639,006.79 |
| Prorated invoice for 10/23/23 to 10/31/23 | $167,770.52 |
| Prorated invoice for 3/1/25 to 3/18/25 | +TBD upon receipt of invoice |
| Subtotal of all intermediate invoices | +$15,590,662.68 |
| **TOTAL October 23, 2023, to March 18, 2025** | =$15,758,433.20 + TBD prorated March 2025 invoice |
| **GRAND TOTAL September 8, 2022, to March 18, 2025** | **$25,397,439.99** + TBD prorated March 2025 invoice |

11.    The costs stated above reflect the USMS's actual expenses incurred during the relevant periods of performance, are correctly stated and were necessarily incurred for the "keeping" of the Amadea, including "storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, [and] insurance." 28 U.S.C. § 1921(a)(1)(E).

---

[5] As noted above, the month of September, 2022, is divided into two invoices. The first invoice covers 23 days of expenses, which is why the invoice is prorated over 23 days to calculate the daily rate before multiplying by 15 to calculate the costs over the 15 days between September 8 and September 23.

Dated:  April 10, 2025

By: _____

JENNIFER CRANE