

April 11, 2025

**VIA ECF**
The Honorable Dale E. Ho
U.S. District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re: *United States v. M/Y Amadea*, No. 23-cv-9304 (DEH)

Dear Judge Ho:

    This firm represents Claimants in the above-referenced matter. We write to inform the Court that Claimants timely filed a Notice of Appeal in the Second Circuit earlier today, and now respectfully request that the Court enter an order pursuant to 28 U.S.C. § 1355 "necessary to preserve the right of [Claimants] to the full value of" the Amadea. Claimants have conferred with the government, and the government opposes Claimants' requested relief and asked that we convey the government's position in our letter, which is set forth in Exhibit A.[1]

    Section 1355(c) of Title 28 (titled "Fine, penalty or forfeiture") provides in full:

> In any case in which a final order disposing of property in a civil forfeiture action or proceeding is appealed, removal of the property by the prevailing party shall not deprive the court of jurisdiction. *Upon motion of the appealing party, the district court or the court of appeals shall issue any order necessary to preserve the right of the appealing party to the full value of the property at issue*, including a stay of the judgment of the district court pending appeal or requiring the prevailing party to post an appeal bond.

28 U.S.C. § 1355(c) (emphasis added).

    Here, on March 10, 2025, the Court struck Claimants' claim in this civil-forfeiture action and directed the Clerk of Court to enter default judgment for the government [ECF Nos. 466, 467, 468], which the Clerk entered on March 11, 2025. [ECF No. 469]. The government subsequently moved for a judgment of forfeiture on March 14, 2025 [ECF No. 471], which the Court entered on March 18, 2025 [ECF No. 473]. Because the Court did not order otherwise, "execution" on the

---

[1] Claimants seek the relief requested herein from this Court before seeking such relief in the Second Circuit, if necessary. *See* Fed. R. App. P. 8(a).

Hon. Dale E. Ho, U.S.D.J.
Case No. 23-cv-9304 (DEH)
April 11, 2025
Page 2

forfeiture judgment and "proceedings to enforce it are stayed for 30 days after its entry." *See* Fed. R. Civ. P. 62(a).

Claimants expect that, once this automatic stay expires, the government will seek to sell the Amadea. The government has previously alleged that the *Amadea* is worth $230 million based on an "apprais[al] by an independent surveyor in October 2022," and that the vessel has been reported to be worth between $300 million and $500 million. *See* Op. & Ord. at 11 n.9 (collecting government's various estimates and allegations regarding *Amadea*'s value) [ECF No. 121]. But Claimants have serious concerns that, absent this Court's intervention, the government will now sell the vessel for substantially less than its value, thereby prejudicing Claimants' rights on appeal.

Indeed, Claimants' concerns about the government conducting a significantly below-market sale of the *Amadea* are well founded. For example, in the civil-forfeiture case involving the M/Y *Galactica Star*, the government alleged that $82 million was used to purchase that yacht. *See* Am. Compl. ¶ 162, *United States v. M/Y Galactica Star*, 4:17-cv-02166 (S.D. Tex. Oct. 20, 2017) [ECF No. 35]. The government reiterated this figure in its request to sell the vessel. *See* Mot. & Br. for Interlocutory Sale at 2, *Galactica Star*, 4:17-cv-02166 (S.D. Tex. Mar. 6, 2019) [ECF No. 169].[2] But the government then requested that the "minimum reserve price" for auction of the *Galactica Star*—i.e., the floor for any successful bid to sell the vessel—be set at $42 million, or roughly half the purchase price. *See id.* at 6-7. The court granted the government's request in a minute entry on March 20, 2019, and it was later reported in the yachting press that the vessel was sold at a sealed-bid auction with the minimum reserve price set at the requested $42 million. *See, e.g.*, Yacht Harbor, *USD 42 million superyacht Galactica Star sold after Nigerian corruption scandal* (July 26, 2019), https://yachtharbour.com/news/%2442-million-superyacht-galactica-star-sold-after-nigerian-corruption-scandal-3372 (last accessed Mar. 26, 2025).[3]

Here, a potential sale of the *Amadea* at half its value would reflect (conservatively) a more-than-$100-million gap that the government would have to close if Claimants ultimately prevail on

---

[2] In *Galactica Star*, no party opposed interlocutory sale of the vessel. The Court will recall that the government relied heavily on the *Galactica Star* case in its efforts to secure an interlocutory sale of the *Amadea*, which the Court denied. *See* Ord. & Op. at 8 [ECF No. 121].

[3] The actual sales price does not appear to have been publicly reported, but Claimants expect it would be well below $80 million based on the low minimum reserve price and the thin market of potential buyers for luxury yachts. The case of the *Alfa Nero* provides another cautionary tale regarding a government's efforts to sell a seized superyacht at auction: "In July 2024, the government of Antigua and Barbuda sold [the *Alfa Nero*] . . . for a reported $40 million, according to the filing, which noted that the vessel originally was valued at an estimated $120 million." *See* Dánica Coto, Associated Press, *US attorneys for a Russian woman seeking to recover a megayacht target Antigua* (Mar. 12, 2025), https://apnews.com/article/antigua-russia-yacht-alfa-nero-guryev-bac7a1c879b9cf0814adacf39845658d (last accessed Mar. 26, 2025). The sale for roughly a third of the vessel's value followed the withdrawal of a prior bid for roughly half the vessel's value. *See id.*

appeal and subsequent remand. In other words, permitting the government to conduct such a sale would not preserve Claimants' right to the full value of the vessel while their appeal is pending. As quoted above, § 1355(c) directs that a court "*shall* issue" certain orders while an appeal of a civil-forfeiture action is pending. "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (citations omitted); *see also Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (quoting *Kingdomware*); *accord United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is "mandatory, not precatory.'" (quoting *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486 (2015))). Accordingly, under the plain language of the statute, Claimants—as the "appealing part[ies]"—are entitled to "any order necessary to preserve [their rights] to the full value" of the *Amadea*, i.e., at least $230 million, "including a stay of the judgment of the district court pending appeal or requiring the prevailing party to post an appeal bond."[4] Claimants respectfully request that a stay under § 1355(c) is particularly appropriate because the government is unlikely to seek, much less obtain, adequate value for the *Amadea* if it attempts to sell the vessel.

In short, Claimants respectfully request that the Court enter an order necessary to preserve the full value of the Amadea, which the Court is required to do while Claimants' appeal is pending. In order to preserve the full value of the Amadea, the Court may either stay the forfeiture order

---

[4] To the extent the government argues that case law interpreting § 1355(c) requires a party seeking a stay to demonstrate the four factors courts consider in determining whether to grant a *discretionary* stay pending appeal, those are cases where the government lost and sought to keep the property seized while an appeal was pending, raising grave constitutional concerns plainly inapplicable here. For example, in *United States v. $1,399,313.74 in U.S. Currency*, 613 F. Supp. 2d 433, 433-34 (S.D.N.Y. 2009), the government seized the defendant funds held in a personal savings account at HSBC Bank in New York and filed a complaint for civil forfeiture of the funds. Judge Scheindlin dismissed the government's complaint and declined to permit *the government to keep the seized funds while it appealed*. *Id.* at 434-46 (declining to grant automatic or discretionary stay for government under § 1355). In doing so, Judge Scheindlin relied on *In re All Funds in Accts. in Names Registry Pub., Inc.*, 58 F.3d 855, 856 (2d Cir. 1995) (per curiam), where the Second Circuit explained that allowing *the government* to first seize property and then granting it an automatic stay under § 1355(c) if it lost in the district court would implicate "the gravest constitutional doubts under the Due Process clause of the Fifth Amendment." *Id.* (citations omitted). Obviously, such constitutional concerns are not implicated where, as here, a *claimant* loses below and requests that the government retain, rather than sell, the subject property during pendency of an appeal. Additionally, it would make little sense for Congress—when it added § 1355(c) in 1992 *requiring* stay—to have simply duplicated courts' then-preexisting, well-established authority to grant discretionary stays pending appeal. *Compare Housing and Community Development Act of 1992*, Pub. L. 102-550, § 1521, 106 Stat. 3672 (1992), *with, e.g.*, *Nassau Boulevard Shell Serv. Station, Inc. v. Shell Oil Co.*, 869 F.2d 23, 24 (2d Cir. 1989) (per curiam) (granting stay pending appeal).

Hon. Dale E. Ho, U.S.D.J.
Case No. 23-cv-9304 (DEH)
April 11, 2025
Page 4

pending appeal, or require the government to post a bond, as the governing statute indicates. Alternatively, Claimants ask that the Court order the government not to sell the *Amadea* for less than its previously appraised value, i.e., $230 million, while Claimants' appeal is pending.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Adam C. Ford*
Adam C. Ford
Robert S. Landy
Renée L. Jarusinsky
Anjula S. Prasad
Stephen R. Halpin III
Ford O'Brien Landy LLP

*Counsel for Claimants Eduard Yurievich Khudainatov and Millemarin Investments Ltd.*