UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    Plaintiff,

-v-

THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,

    Defendant-*In-Rem*,

and

EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,

    Claimants.

23 Civ. 9304 (DEH)

**MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANTS' MOTION FOR STAY AND IN SUPPORT OF GOVERNMENT'S MOTION FOR COST BOND**

---

**PLAINTIFF UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANTS' MOTION FOR STAY
AND IN SUPPORT OF GOVERNMENT'S MOTION FOR COST BOND**

    The Government respectfully submits this memorandum of law in opposition to Claimants' motion to stay the judgment and in support of the Government's motion for Claimants to post a cost bond.

    As set forth below, the statute on which Claimants rely does not require either a stay or the Government to post a bond. The Government, therefore, opposes Claimants' motion for a stay. The Government would, however, consent to a stay if the Claimants post a bond for $10,370,000, the anticipated taxable costs that the Government would incur pending an appeal. The Government

1

also separately moves for Claimants to post a bond of $25,600,000 as security for the taxable costs that the Government has already incurred.

## FACTUAL BACKGROUND

The relevant factual background is set forth in the Government's bill of costs (ECF No. 476, 477) and the Government's memorandum of law concerning the taxation of costs (ECF 477-2), which the Government incorporates by reference herein.[1]

As the Government's memorandum of law on costs explains, since the Government took custody of the *Amadea* in Fiji on June 7, 2022, the United States Marshals (USMS) has incurred approximately $32 million in transportation, maintenance, storage and other costs. The substantial scale of these costs is in large measure the result of Claimants' actions to delay resolution of this case and block the sale of the *Amadea*. As set forth in the Government's memorandum, Claimants first falsely asserted that they were the true beneficial owners of the *Amadea* (without disclosing that Alisa Gadzhieva had paid them €225 million for it). They then not only filed a claim in the case to oppose forfeiture, but also sought several discovery extensions. Claimants sought those discovery extensions while delaying their own depositions and avoiding Khudainatov's deposition entirely. Throughout, Claimants repeatedly opposed interlocutory sale of the *Amadea* (even though they had themselves allegedly been trying to sell the *Amadea* at the time it was seized). *See* ECF No. 477 at 2-4, 8-9.

The Court entered a judgment of forfeiture on March 18, 2025. *See* ECF No. 473. But even after the Court did so, Claimants continue to try to block a sale. For instance, Claimants, through counsel, have told news media they will "challenge any [allegedly] illegitimate sale" in

---

[1] On April 11, 2025, the clerk denied without prejudice the Government's bill of costs given the pending appeal. However, the facts and legal arguments set forth in the bill of costs and the Government's associated memorandum of law bear on the issues in the present motions.

2

foreign courts and warned that this Court's judgment of forfeiture may not be respected "[i]f the vessel is taken beyond U.S. jurisdiction." Conor Feasey, *What's Next for the Amadea*, SuperYacht News (March 25, 2025), https://www.superyachtnews.com/opinion/what-is-next-for-amadea; *see also* ECF No. 478-1 at 2 (Claimants' counsel's 4/11/25 email declining to facilitate a sale and reserving the right to take "legal actions in other forums"). In addition to engaging in such extrajudicial self-help to deter potential purchasers in defiance of this Court's judgment, Claimants now ask this Court to order that USMS may not sell the *Amadea* during the pendency of Claimants' appeal unless the Government posts a bond. ECF No. 478.

## ARGUMENT

The Court should deny Claimants' motion to stay judgment or for the United States to post an appeal bond under 28 U.S.C. § 1355(c). Claimants are not entitled to such relief, nor is there any reason to force the Government to incur millions of dollars of additional storage costs. The Government would, however, consent to a stay of judgment if Claimants posted a bond of $10,370,000, the anticipated taxable costs the Government would incur pending an appeal. Claimants should also be required to a post a bond for the approximately $25,600,000 in taxable costs that the Government has incurred to date. The Government therefore moves under Local Civil Rule 54.2 and Federal Rule of Appellate Procedure 7 to require Claimants to post a bond in the amount of $35,970,000, representing the past and anticipated future taxable maintenance costs that the USMS will incur through the end of an appeal.

**I.     CLAIMANTS ARE NOT ENTITLED TO A STAY OF JUDGMENT UNDER THE FEDERAL RULES OR 28 U.S.C. § 1355(C)**

    **A.     Legal Framework**

"Federal Rule of Civil Procedure 62 governs stays [pending appeal] of civil proceedings in federal court." *Merrill v. Hyman*, No. 3:21-CV-551 (JAM), 2023 WL 2433427, at *1 (D. Conn.

3

Mar. 9, 2023).[2] Specifically, Federal Rule of Civil Procedure 62(d) provides that a court may issue a stay pending appeal "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Such a stay, however, is "'an exercise of judicial discretion,'" and the party requesting it "bears the burden of showing that the circumstances justify an exercise of that discretion." *Merrill*, 2023 WL 2433427, at *2 (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).[3]

Four factors—known as the *Nken* factors—guide courts' exercise of that discretion. *See Lalama Gomez v. United States*, No. 24-CV-7850 (CBA), 2025 WL 777170, at *1 (E.D.N.Y. Mar. 11, 2025) (citing *Nken*, 556 U.S. at 425). Those factors are: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* (quoting *Nken*, 556 U.S. at 425). The first two factors "are the most critical." *Fed. Trade Comm'n v. Shkreli*, No.

---

[2] Similar to a district court's authority under Federal Rule of Civil Procedure 62, the Court of Appeals has power to grant a stay pending appeal under Federal Rule of Appellate Procedure 8. "Under both Rules, however, the factors regulating the issuance of a stay are generally the same." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). It also bears mention that Rule 62 was reorganized in 2018 and, as a result, pre-2018 cases cite differently lettered provisions. *See* Fed. R. Civ. P. 62, Committee Note – 2018 Amendment.

[3] By contrast, Federal Rule of Civil Procedure 62(b) provides for a "stay as a matter of right upon receiving judicial approval of [a supersedeas] bond." *Babad v. 45 John Lofts, LLC*, No. 1:23-CV-5357 (MKV), 2024 WL 54105, at *1 (S.D.N.Y. Jan. 4, 2024) (emphasis omitted); *Cohen v. Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009). However, that provision applies "*exclusively* to stays of money judgments." *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-CV-8414 (KMW), 2019 WL 2454094, at *1 (S.D.N.Y. June 12, 2019) (emphasis in original) (quotation marks omitted); *see Merrill*, 2023 WL 2433427, at *1-*2. Because the Government would consent to a stay if Claimants post a bond of $10,370,000 for anticipated taxable costs, the Court need not decide whether the automatic-stay-upon-bond provision of Federal Rule 62(b) applies to stay a judgment of forfeiture.

4

20CV706 (DLC), 2022 WL 1210834, at *2 (S.D.N.Y. Apr. 25, 2022) (quoting *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020)).

In forfeiture cases, a statute also provides in relevant part:

> Upon motion of the appealing party, the district court or the court of appeals shall issue any order necessary to preserve the right of the appealing party to the full value of the property at issue, including a stay of the judgment of the district court pending appeal or requiring the prevailing party to post an appeal bond.

28 U.S.C. § 1355(c). Courts have "uniformly" held that "the usual four-part test for determining whether to grant a stay pending appeal [under Federal Rule of Civil Procedure 62(d)] also applies under § 1355(c)." *United States v. $1,026,781.61 in Funds from Fla. Cap. Bank*, No. CV 09-04381-MLG, 2013 WL 781930, at *1 (C.D. Cal. Mar. 1, 2013); *see In re All Funds in Accts. in Names Registry Pub., Inc.*, 58 F.3d 855, 856 (2d Cir. 1995).

### B.  Claimants Are Not Entitled to an Automatic Stay Under 28 U.S.C. § 1355(c)

The Court should reject Claimants' argument that they are "entitled" to an automatic stay of judgment pending appeal under 28 U.S.C. § 1355(c). ECF No. 478 at 3.

"Virtually all courts to consider a motion to stay under § 1355(c), including two Courts of Appeals, have held that the statute does not mandate a stay upon request." *United States v. All Assets Listed in Attachment A*, No. 1:14-CV-969, 2015 WL 13021735, at *1 (E.D. Va. May 29, 2015). Instead, courts "have uniformly found that § 1355(c) does not necessarily mandate a stay in every case; rather, the usual four-part test for determining whether to grant a stay pending appeal also applies under § 1355(c)." *Funds from Fla. Cap. Bank*, 2013 WL 781930, at *1.

The Second Circuit is among the courts that have so held. *See In re All Funds in Accts. in Names Registry Pub., Inc.*, 58 F.3d at 856. As the Second Circuit has explained, that uniform case law follows from the statute's text: the statute requires a court to issue orders "to preserve the *right* of the appealing party to the full value of the property at issue." 28 U.S.C. § 1355(c) (emphasis

5

added). But a party's "right" to full value necessarily "depends upon the strength of the merits of its case." *Accts. in Names Registry Pub., Inc.*, 58 F.3d at 856. Thus, "the usual standards for determining whether to grant a stay pending appeal apply under Section 1355(c)." *Id.*; *see United States v. Various Tracts of Land in Muskogee & Cherokee Ctys.*, 74 F.3d 197, 198 (10th Cir. 1996) (following same analysis); *United States v. $1,399,313.74 in U.S. Currency*, 613 F. Supp. 2d 433, 435 (S.D.N.Y. 2009) (same).

Claimants' attempt (*see* ECF No. 478 at 3 n.4) to distinguish that case law as applying only to cases where the *Government* seeks a stay pending appeal is unavailing. Nothing in the case law suggests that one standard applies for stays sought by the Government while a different and more lenient standard applies to stays sought by claimants. To the contrary, several cases have applied the same standard and analysis when it was the claimants who sought a stay. *See, e.g.*, *Various Tracts of Land*, 74 F.3d at 198; *All Assets Listed in Attachment A*, 2015 WL 13021735, at *1; *United States v. 7046 Park Vista Rd.*, No. C-3-02-557, 2008 WL 2357339, at *2 (S.D. Ohio June 5, 2008); *United States v. Real Prop. Known as 4401 Collins Ave., Unit 3315, Miami Beach, Fla. 33140*, No. 1:15-CV-20407, 2017 WL 5308147, at *1 (S.D. Fla. July 26, 2017). The statute's text likewise does not suggest any asymmetry depending on who is seeking a stay. Claimants here—who were adjudged to not even have *standing* and therefore to have no cognizable "right" to the defendant property at all—are particularly undeserving of a lenient standard for obtaining a stay, much less an automatic one.[4]

---

[4] Moreover, Claimants fail to establish that a stay is "necessary" (28 U.S.C. § 1355(c)) to preserve any right they may have to the full value of the *Amadea*. Even assuming Claimants had a right to its full value, the USMS would only sell the *Amadea* for the highest obtainable market price. Claimants' speculation that it might sell the *Amadea* for less than that is baseless. Nor should the Court entertain Claimants' complaints about the price the *Amadea* will fetch, given their own public statements and litigation threats that appear designed to drive down the price obtainable in

For similar reasons, Claimants are not entitled to have the Government—the party that prevailed below—post a bond pending appeal. Claimants, who are adjudged straw owners, have no "right" (28 U.S.C. § 1355(c)) to the full value of the *Amadea* and are unlikely to establish one on appeal. Nor do Claimants cite any case law requiring such a bond or even state the amount of the bond they seek. Further, because the Government would consent to a stay of judgment if Claimants posted a bond, *see infra,* Claimants' requested relief is not "necessary" to preserve whatever rights Claimants have. *See* 28 U.S.C. § 1355(c) (providing that courts must issue only orders "necessary" to preserve appealing party's rights). Put differently, Claimants could obtain an agreed stay by posting a bond (which they have the financial means to post), and such an agreed stay would protect Claimants' alleged right to "the full value of the property at issue" under Section 1355(c). Thus, Claimants do not need a bond from the Government to protect their alleged Section 1355(c) rights.

### C.     Claimants Are Not Entitled to a Stay Under the Traditional Four-Factor Analysis

Claimants are not entitled to a stay pending appeal under the "usual" four-factor analysis either. *See Accts. in Names Registry Pub., Inc.*, 58 F.3d at 856; *Dep't of Homeland Sec.*, 974 F.3d at 214 (describing the so-called *Nken* factors).

First, Claimants have not made a "strong showing that [they are] likely to succeed on the merits." *Dep't of Homeland Sec.*, 974 F.3d at 214. Indeed, their motion does not even attempt to make such a showing. Nor could it, given the deferential standard of review that will apply to this Court's rulings on appeal. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (factual findings after bench trial reviewed for clear error); *Mirlis v. Greer*, 80 F.4th 377, 381 (2d Cir.

---

any sale, *see* Feasey, *What's Next for the Amadea*, *supra*, and their refusal to cooperate in facilitating such a sale, ECF No. 478-1.

2023) (Rule 37 sanctions are reviewed for abuse of discretion and "the factual findings in support of the district court's decision for clear error").

Second, Claimants cannot show "irreparable injury to the applicant in the absence of a stay." *Dep't of Homeland* Security, 974 F.3d at 214. The only injury they might suffer is that the USMS may sell a yacht that Claimants themselves had allegedly been attempting to sell for years—and that this Court found that they had, in fact, sold and been paid for in full. *See* ECF No. 467 at 42 (finding that there could be no "genuine dispute of fact" that the September MOA effected a sale). Even putting that aside, a sale would still not cause irreparable harm because Claimants could have recourse to the proceeds of the sale, if they prevail on appeal. Claimants' speculation that USMS will sell the yacht for less than its market value is both unsupported and inappropriate, given Claimants' continued public statements that appear intended to intimidate potential buyers and thus drive down the *Amadea*'s value, *see* Feasey, *What's Next for the Amadea*, *supra*, and their own refusal to cooperate in such a sale, ECF No. 478-1 (email from Claimants' counsel). Thus, Claimants' motion fails on the first two, and "most critical," factors for a stay pending appeal. *Dep't of Homeland* Security, 974 F.3d at 214.

Claimants' motion also fails on the other two factors. The Government will face a "substantial injury . . . if a stay is issued" by being forced to spend millions of dollars to maintain the *Amadea. Dep't of Homeland* Security, 974 F.3d at 214. Though such maintenance costs are taxable upon the conclusion of the case, *see* 28 U.S.C. § 1921(a)(1)(E); ECF No. 477-2, there is a substantial chance that Khudainatov—who lives in Russia and has already defied other court orders—will refuse to pay. For substantially similar reasons, a stay is not "in the public interest." *Dep't of Homeland* Security, 974 F.3d at 214; *see In re Search Warrant dated Nov. 5, 2021*, No.

21 MISC. 813 (AT), 2024 WL 283460, at *1 (S.D.N.Y. Jan. 25, 2024) ("When the Government is the opposing party, the third and fourth factors merge." (citing *Nken*, 556 U.S. at 435)).

## II. THE COURT SHOULD REQUIRE CLAIMANTS TO POST A BOND FOR PAST AND FUTURE MAINTENANCE COSTS

A stay pending appeal generally requires "bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see* Fed R. Civ. P. 62(b). Thus, to obtain a stay, Claimants should be required to post a bond of $10,370,000, representing the anticipated future taxable maintenance costs of the *Amadea* during the pendency of their appeal. If Claimants posted such a bond, the Government would consent to a stay. Indeed, even if the Court does not enter a stay, the Court should also require an additional bond of $25,600,000 for past costs incurred to ensure Claimants pay them if their appeal is not successful.

The amount of the bond can be calculated as follows: as detailed in the Government's memorandum of law concerning the taxation of costs, the Government will seek to tax the approximately $25.5 million in expenses that the USMS has already incurred to store, maintain and insure the *Amadea* from September 8, 2022, to March 18, 2025 (which is approximately $850,000/month). Because Second Circuit appeals average 12.2 months in length,[5] the *Amadea*'s expected maintenance costs during the appeal are likely to total approximately $10,370,000 ($850,000 x 12.2). The Government has also incurred approximately $100,000 in other taxable costs. *See* ECF No. 476-2. Thus, the expected amount of past and future taxable costs is approximately $35,970,000 ($25,500,000+$10,370,000+$100,000), which is the amount of the

---

[5] Table B-4, U.S. Courts of Appeals – Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending Sept. 30, 2022 (Federal Judicial Center), https://www.uscourts.gov/file/61261/download

9

bond that this Court should require Claimants to post if it enters a stay.[6] The Court should require a bond of $25,600,000, representing the past costs incurred, if it does not enter a stay.

This Court has authority to impose such a bond for costs under Local Civil Rule 54.2 and Federal Rule of Appellate Procedure 7. Local Civil Rule 54.2 provides that "the court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." Local Civ. R. 54.2. The "primary purpose" of the Rule is to ensure that a party will pay taxable costs "by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999).[7] Thus, bonds under this rule may be required for both anticipated future costs and past incurred costs. *See Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 CIV. 10254 (JFK), 2008 WL 161239, at *1 (S.D.N.Y. Jan. 15, 2008) (imposing bond for anticipated costs); *Watson v. E.S. Sutton, Inc.*, No. 02 CV 2739, 2006 WL 4484160 (S.D.N.Y. Dec. 6, 2006) (imposing bond for past incurred costs). "Courts have broad discretion in deciding whether a party should be required to post such a bond." *Teri v. Oxford Mgmt. Servs., Inc.*, No. 05 CV 2777 DRH WDW, 2013 WL 132660, at *2 (E.D.N.Y. Jan. 10, 2013); *see also id.* (listing several factors courts may consider).

Here, several factors weigh strongly in favor of a Local Civil Rule 54.2 bond for past and future costs. First, Khudainatov and Millemarin do not reside or have any known assets in the United States. Thus, there is substantial risk that they may not pay any costs with which they are

---

[6] "It should be noted that [Claimants] will not necessarily lose the full value of the bond if they do not prevail on appeal. . . . Rather, if [Claimants] ultimately lose the appeal, in order for [the Government] to recover any portion of the bond [it] will be required to prove up the amount of damages that [it] actually suffered during and as a result of the stay. Once proven, that amount will be drawn from the bond fund, and the remainder will revert to [Claimants]." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 368 n.167 (S.D.N.Y. 2007).

[7] Under Local Rule 54.1, costs are not taxed until an appeal is concluded. *See* Local Civ. R. 54.1; *cf.* 4/11/25 Clerk's Minute Entry (denying Government's bill of costs as premature).

10

taxed at the conclusion of the case. *See Sea Trade Co.*, 2008 WL 161239, at *2 (party's status as foreign corporation "weigh[ed] heavily" in favor of cost bond); *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, No. 06 CIV. 3085 KMW FM, 2008 WL 2876508, at *3 (S.D.N.Y. July 21, 2008) (party's "foreign status and lack of United States assets . . . supports the posting of a bond"); *Knight v. H.E. Yerkes & Assocs., Inc.*, 675 F. Supp. 139, 142 (S.D.N.Y. 1987) (requiring cost bond because party "[p]laintiff is a resident of Thailand, and if defendant prevails in this litigation, collection of costs would likely prove difficult"); *see also Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33, 36 (S.D.N.Y. 1989) ("Cases requiring a security bond generally involve [parties] with no reachable assets.").

Second, Claimants have a history of non-compliance with court orders. *See, e.g.*, ECF No. 468 (entering a case-dispositive sanction for this reason). This "past non-compliance with court orders evidence[s] poor likelihood of compliance with any future court orders to pay [taxable] costs." *Mattsson v. Pat McGrath Cosms. LLC*, No. 21CIV5187JSRSLC, 2022 WL 1718928, at *3 (S.D.N.Y. May 27, 2022).[8]

Third, the size of the taxable costs is substantial, which also weighs in favor of a bond. *K.M. v. Maclaren USA, Inc.*, No. 10 CIV. 7942 LTS RLE, 2011 WL 1900137, at *5 (S.D.N.Y. Apr. 7, 2011), *report and recommendation adopted*, No. 10 CIV. 7942 LTS RLE, 2011 WL 1900141 (S.D.N.Y. May 18, 2011) ("extraordinary" costs support a bond).

Finally, here, unlike in some cases where courts have denied bond, the case is "sufficiently developed to suggest that [the Government] will prevail." *Maclaren USA, Inc.,* No. 10 CIV. 7942 LTS RLE, 2011 WL 1900137, at *5. Indeed, the Government *has* prevailed in the district court

---

[8] Indeed, Khudainatov's lawyers have characterized this Court's forfeiture judgment as a "miscarriage of justice" and suggested that their client will not respect it if the *Amadea* is taken beyond U.S. jurisdiction. Feasey, *What's Next for the Amadea*, *supra*.

11

and all that remains is an appeal. This is yet another reason to impose a bond to ensure payment of taxable costs. *See Beverly Hills Design Studio*, 126 F.R.D. at 37 (likelihood that party will prevail supports bond in its favor).

Though Local Civil Rule 54.2 already provides such authority, Federal Rule of Appellate Procedure 7 also authorizes the Court to require a bond for anticipated future costs to be incurred during appeal (*i.e.*, $10,370,000 of the $35,970,000 total). It states: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7; *see also* Fed. R. Civ. P. 62(d) (authorizing stays pending appeal "on terms for bond"). "[W]hen deciding whether to require an appellant to post an appeal bond, district courts consider several factors, including '(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct.'" *In re AOL Time Warner, Inc. Sec. and "Erisa" Litig.*, No. 02-cv-5575, 2007 WL 2741033, *2 (S.D.N.Y. Sept. 20, 2007). Khudainatov clearly has the ability to post a bond (the first factor), and the remaining factors substantially overlap with the Local Civil 54.2 factors that support a bond for all the reasons described above.

Here, the Government would consent to a stay pending appeal if the Claimants post a bond of $10,370,000, the expected amount of taxable maintenance costs to be incurred during an appeal. Regardless of whether it enters a stay, the Court should require a bond of $25,600,000 representing the taxable costs incurred to date.

## CONCLUSION

The Court should deny Claimants' motion for a stay pending appeal without a bond. The Government would, however, consent to a stay pending appeal if Claimants post a bond of

$10,370,000 representing the anticipated taxable maintenance costs during the period of Claimants' appeal. Regardless of whether it enters a stay, the Court should also order Claimants to post a bond for past incurred costs of $25,600,000. Thus, the Court should order Claimants to post a bond of $25,600,000, and, if the Court stays the judgment of forfeiture pending appeal, it should order Claimants to post an additional $10,370,000, for a total of $35,970,000.

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By: /s/ Dominika Tarczynska
DOMINIKA TARCZYNSKA
RACHAEL DOUD
Assistant United States Attorneys

MARGARET A. MOESER
Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By: /s/ Joshua L. Sohn
JOSHUA L. SOHN
D. HUNTER SMITH
LINDSAY P. GORMAN
Trial Attorneys
Money Laundering and Asset Recovery
Section