UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------:

UNITED STATES OF AMERICA, Plaintiff,

v.

THE M/Y AMADEA, a Motor Yacht Bearing International Maritime Organization No. 1012531, Including All Fixtures, Fittings, Manuals, Stocks, Stores, Inventories, and Each Lifeboat, Tender, Defendants.

Case No.: 23-cv-9304

New York, New York

December 10, 2024

-----------------------------:

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE DALE E. HO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Government: UNITED STATES ATTORNEY'S OFFICE
BY: Hunter Smith, AUSA
Dominika Tarczynska, AUSA
Yifei Zheng, AUSA
Lindsay Gorman, AUSA
86 Chambers Street - 3rd Floor
New York, New York 10007

For Claimant Eduard Khudainatov: FORD O'BRIEN LANDY
BY: Amy Brown, Esq.
Steve Halpin, Esq.
275 Madison Avenue
New York, New York 10016

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

THE DEPUTY CLERK: Good afternoon, everyone. The judge has been brought into the conference, so we can begin.

The Honorable Dale E. Ho presiding in the matter of U.S.A. v. The M/Y Amadea; Docket Number: 23-cv-9304.

Counsel, can you please state your names for the record, starting with the plaintiff.

MR. SMITH: Good afternoon. This is Hunter Smith for plaintiff, United States. I have some of my colleagues on the line, I believe, Dominika Tarczynska, Yifei Zheng and Lindsay Gorman.

MS. BROWN: Good afternoon, Your Honor. This is Amy Brown on behalf of the claimants. And I have on the line with me Steve Halpin, my colleague.

THE DEPUTY CLERK: Counsel, this is a public -- this is a reminder that this is a public proceeding. Members of the public and press can access the proceeding with a public dial-in number. Please be aware that, just as if you were physically present in the courtroom, you are prohibited from recording, rebroadcasting or disseminating any recording of court proceedings, including this one.

Your Honor.

THE COURT: Good afternoon. We're here for

a case management conference in this matter. And I know that the government had withdrawn its application for an emergency conference, but I still wanted to have this conference to get a status update on the current situation and, at least, whatever information is currently available.

I'm going to remind everyone that it's a public line. We don't have a court reporter on, but the conference is being recorded in the event that anyone wants a transcript at a later time. And given that it's a public line, if there are any matters that should be discussed under seal with a closed courtroom -- with a closed courtroom and with a transcript placed under seal, then any of the parties can make an application to do that at that time, and we can move the conference to a private line.

So with that, I just have some questions about the filings that have been submitted. And the first is if there's an update on Mr. Khudainatov's medical emergency, and when, if it is known now, he might be able to travel for a deposition.

Ms. Brown?

MS. BROWN: Yes, Your Honor. Thank you.

I don't have any further information, other

than what was provided by letter earlier today. My understanding is we do not yet know the nature of the medical emergency or when he'll be able to travel. We expect to get that information, hopefully, tomorrow. I know that we're working to get it as soon as possible, but I don't have any further information at this time.

THE COURT: So you don't even know the nature of the emergency?

MS. BROWN: Correct.

THE COURT: Okay.

MS. BROWN: That's my understanding from my colleagues who were -- who are present overseas for the deposition.

THE COURT: Your colleagues are already in the host country for the deposition?

MS. BROWN: Correct.

THE COURT: I see. Okay.

When did you become aware of the medical emergency?

MS. BROWN: So my -- again, I am very new to this matter, and I am not involved in the taking of any of the depositions or the scheduling of them. My -- I first became aware by e-mail in the middle of the night. I guess it was approximately 3 a.m.


New York time.

(Technical interruption.)

MS. BROWN: Was everyone able to hear me?

THE COURT: I'm sorry about that, Ms. Brown. Please go ahead and proceed.

MS. BROWN: Okay. So I don't know exactly when my colleagues found out because I am not there with them. I know that I was privy to an e-mail that came in in the middle of the night, probably at the same time the government was notified. So I do not know when exactly they found out, but I know they communicated it as soon as -- as soon as they were aware, to try to prevent everyone from traveling unnecessarily.

(Technical interruption.)

THE COURT: Excuse me. I'm sorry for those interjections.

All right. Mr. Smith, can you tell me when the government became aware?

MR. SMITH: The government became aware shortly after 3 a.m. last night. Well, most of us were sleeping at the time, so I suppose it's really when we woke up and received an e-mail from claimant's counsel notifying us of the medical emergency and the inability for the deposition to

proceed on the date scheduled. And that's about all we know today.

THE COURT: Okay.

Ms. Brown, you expect to have an update on Mr. Khudainatov's status tomorrow?

MS. BROWN: Yes. That's my understanding according to my colleagues.

(Technical interruption.)

THE COURT: I'm sorry. We're just still having some technical issues over here. If you could, just hold on for a moment.

MS. BROWN: Sure.

(Pause in proceedings.)

THE COURT: My apologies, everyone. We're having a little bit of a difficulty with the two-track lines here, the public and the private line. If you would just give us a few minutes to try to work out the technical issues, we would appreciate it. Thank you.

(Pause in proceedings.)

THE COURT: All right, everyone. My apologies for the technical difficulties. We're set, I think.

So the last question I think I posed to the government was when you learned about the situation.

Let me turn back to Ms. Brown now.

Can you tell me what the current status is with respect to the depositions of Witnesses 2 and 3?

MS. BROWN: Oh, Your Honor, I actually can't. I -- like I said, I'm very new to this matter, and I don't have any other -- the only information I have is what was communicated by letter today.

THE COURT: So, as of now, there's been no change with respect to your plans with respect to Witnesses 2 and 3?

MS. BROWN: Not that I know of. Again, I'm just not -- I am not versed in the logistics and the scheduling of those depositions. And unfortunately, my colleagues who are -- it's 2:30 in the morning where they are, and my other colleagues are on their way to another country for another deposition in this matter.

THE COURT: Okay. Let me turn back to Mr. Smith.

Mr. Smith, has the government taken any additional action? I know it's only been 24 hours, and obviously today was very disruptive, so it's fine. Whatever the answer is, it's fine. I just

want to know where things stand.

Has the government taken any actions with respect to depositions of Witnesses 2 and 3?

MR. SMITH: It has, Your Honor, within -- I don't want to say minutes, but not long after receiving the Court's order last night, the government began drafting a request for permission of the same format as the prior request as instructed by the official that we mentioned under seal. That was sent -- my understanding, the Department of Justice doesn't send that. That's sent by the Embassy. So we drafted and provided it for, I suppose, edits and to be sent by the Embassy.

My understanding is that it was sent this morning local time, so in that country, asking for permission for Witnesses 2 and 3 proceed on the date which we've, at that time, been told that those depositions were going to occur, which is December 15th. That's why when we received an e-mail at -- the same e-mail at 3 a.m. this morning saying that November -- that December 15th was being -- we interpreted it as saying December 15th was now being taken off in light of the uncertainty, and the witnesses were being rescheduled to December 17th and 18th. We were concerned because we had just

submitted, you know, official correspondence to the foreign government saying that this -- asking for permission to take -- to participate on the 15th.

Obviously, I don't think a difference of a couple days would make a huge difference to that country, but it does get to a point where we have sent so many changes and modifications that, you know, the Embassy will start to have concerns about how many -- the amount of requests that we are making --

THE COURT: I understand.

MR. SMITH: -- and the amount of correspondence that's being sent.

THE COURT: I understand. I just want to confirm what I thought I heard, which was that, when you say that the request was sent, you don't mean the draft request was sent to the Embassy, you mean that the Embassy made the request of the foreign government.

MR. SMITH: Well, Your Honor, I -- that's my understanding. I know for certain that it was sent to the Embassy. And my understanding -- but, to be candid, it's based on hearsay because I don't have a direct line to the Embassy. But my understanding was that it was also transmitted this

morning, local time. I would have to confirm that, but I'm reasonably certain that occurred.

THE COURT: Okay.

Well, I guess the first thing is that the order that I put -- the endorsement that I put out yesterday, which directed the government to file a renewed motion for a protective order, if it wanted to, by -- I think it was the end of the day tomorrow.

I'm not sure whether or not that still makes sense in light of our current situation here. I'm not sure that -- it's not clear to me -- I'll say it's up to, ultimately, you all about how to determine how you want to proceed.

But if Mr. Khudainatov is not able to travel right now -- and I know we won't have an update on that for a day or so -- I'm not sure it makes sense to proceed with the depositions of Witnesses 2 and 3, given the amount of travel that would take to do those depositions. That's assuming, obviously, that permissions are granted and for you all to go out there again.

I mean, the reason why I required such a tight turnaround on any renewed motion was because everything was scheduled to happen rather quickly

and, in order to get everyone's positions and have time to rule before those depositions were scheduled, I thought it was necessary to impose that tight of a timeline. I'm not sure that that remains the case at this point.

So let me see if there are any suggestions from the parties as to how to proceed. I'll start with Mr. Smith.

MR. SMITH: Well, Your Honor, you know, we're also trying to figure out how to proceed, candidly. Right now, this is, kind of a last-minute surprise that we're -- you know, we have a couple different stakeholders, including the Embassy and the relevant country authorities that we're dealing with.

I think part of the reason we are in this pickle is because of the delayed nature of the noticing of the disclosure of these witnesses and, relatedly, the delay in scheduling the deposition of Mr. Khudainatov, which, just for the record, was noticed on June 6th to occur on July 15th in New York.

We're obviously saddened to hear that there's a medical emergency, but, you know, part of the reason that we did not want to leave the

deposition until the last -- the waning weeks of the discovery period was to avoid, precisely, this situation.

The government still wants to take the deposition of Mr. Khudainatov. We obviously don't know what is feasible until we have more of a sense of what the medical situation is.

As to the other two witnesses, Your Honor, I discussed at length, I think, yesterday a litany of reasons, aside from the permission reason, that we thought those depositions were prejudicial and should be precluded. And I think there's further evidence of the logistical difficulties of making that happen with such late disclosed witnesses. You know, that's what we have here. So I think our position is those depositions should not go forward and those witnesses should be precluded.

THE COURT: So given the timing in which the witnesses are disclosed, you know, if it wasn't clear yesterday, you know, I'm inclined to agree that there are -- let me just say, I'm inclined to agree that the timing of the disclosure of these witnesses was problematic.

That being said, if everyone was in the same place and the government had permission to take

those depositions, then it seemed to me that the best resolution, notwithstanding the relatively late disclosure of those witnesses, would be to simply take those depositions.

Now, if everyone's not in the same place and/or if the government can't get permission to take the depositions, then I think it's a slightly -- you know, it's a -- not slightly, but a very different story.

So here's what I'll say as a way forward:

Ms. Brown tells me that there's supposed to be an update on Mr. Khudainatov's status tomorrow, so I'll just ask you all to file a letter that gives that status update, and then a proposal for what to do in light of that status update with the depositions of Witnesses 2 and 3.

Now, if Mr. Khudainatov has a -- you know, it turns out false alarm or he's fine and claimants want to proceed as they previously proposed, then I think we can stick with the existing game plan and, you know, the government can let everyone know where it stands with respect to the permissions by the end of the day tomorrow as well. But if that's not where things stand, then that obviously changes the facts and it, perhaps, changes how we should

proceed. And I'll take suggestions from the parties as to what we should do.

Does that make sense for next steps?

MS. BROWN: Your Honor?

THE COURT: Go ahead, Ms. Brown.

MS. BROWN: Yes. I just wanted to add one thing.

I know I said this, but I just wanted to reiterate that, you know, Mr. Ford and Ms. Prasad are already in the host country, so I know it's their plan, if Mr. Khudainatov can travel, to continue with the depositions.

And, you know, again, I know I'm of limited utility in this conference, but it may be that -- I don't know if it's possible to conduct some of these depositions virtually. That might also be a possible solution. But, again, I guess we will all convene tomorrow once we have more information and make suggestions from there.

THE COURT: Much time and energy has been spilled already on the issue of virtual depositions, Ms. Brown. And the challenge -- I'm not sure which of the conferences you may have been at in the past -- is that the government faces the same -- as represented to me anyway, and I accepted that

representation, that they face the same challenges for virtual depositions as for in-person ones with respect to permissions from the host country.

You're right, there's the travel logistics. But the government's position, as I understand it -- and I do accredit it -- is that they believe that the deposition of Mr. Khudainatov should be in person. And I understand that desire.

So, you know, if your colleagues plan on proceeding with Mr. Khudainatov's deposition, if possible, if he can, in fact, travel, obviously, I understand, kind of, a least-change posture being one that you want to adopt here, but the government was supposed to travel today. It's not a short jaunt. And I assume that if something along the lines of the original game plan is still possible, that, at a minimum, the -- I don't want to speak for the government, but I guess I'll say I'm not -- I wouldn't be surprised if they needed a change in the date as well, given that they were supposed to be in the air today.

Do I have that right, Mr. Smith?

MR. SMITH: You do, Your Honor.

And I would also add that scheduling the deposition doesn't just require the government's

lawyers and the witnesses.

THE COURT: I know.

MR. SMITH: We have to arrange court reporters and videographers, interpreters. And that's a challenge in this part of the world in general, and it's doubly a challenge when it's in such short notice, so -- and, frankly, quite expensive, too. So there's also that hurdle, which we, you know, were able to resolve for this date. And we will do our best to resolve it for whatever future date gets set, but it is an issue.

THE COURT: Okay.

So let's just get a status update at the end of the day tomorrow. I'm not going to require the government -- unless we're in a situation where nothing has changed except for maybe pushing things a day or two later, I'm not going to ask for the government to file any renewed motion for protective order, if any, by the end of the day tomorrow. Just give me a status update with -- if there's any new information about Mr. Khudainatov's health status and his ability to travel and what the parties propose as a game plan going forward. And if the answer is, we still don't know Mr. Khudainatov's status, that's, you know, fine, but then we still

need a game plan.

Does that make sense?

MR. SMITH: It does, Your Honor.

I have one further comment -- or comment to make if now is the appropriate time, which is that for at least Mr. Khudainatov and, I believe, both, but certainly one of the other two witnesses that we've been discussing -- the government is able to bring them to the United States or to arrange for them to come to the United States, in terms of the immigration-type restrictions. And, you know, that certainly would make a lot of logistical problems simpler. It would require, you know, obviously, the witnesses to travel, but wouldn't require all the lawyers and the court reporters to travel. And it also resolves the permissions issue.

It may be difficult for one of the witnesses because that witness has -- currently subject to a travel ban, but with sufficient notice, that's something that is possible for -- it may be possible to resolve, but it's certainly true for Mr. Khudainatov and one of the witnesses 2 and 3.

THE COURT: Okay. Duly noted.

Ms. Brown, anything else?

MS. BROWN: No, Your Honor.

THE COURT: Okay.

So just to make clear, the government is not required to file renewed protect motion for protective order by the end of the day tomorrow. Not filing that won't prejudice the government's ability to file such a motion at a later time.

What I just need from the parties is a status update and a proposed game plan for not only Mr. Khudainatov's deposition, but also for the depositions of Witnesses 2 and 3. Okay.

Since I added some clarification there, I'll just ask one more time.

Anything further or any other questions, Mr. Smith?

MR. SMITH: No, Your Honor. That's clear. Thank you.

THE COURT: Ms. Brown?

MS. BROWN: No, Your Honor.

THE COURT: Okay. Thank you very much.

MS. BROWN: Thank you.

MR. SMITH: Thanks.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of United States of America v. The M/Y Amadea, et al, Docket #23CV9304 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature ___Adrienne M. Mignano___
ADRIENNE M. MIGNANO, RPR

Date: January 22, 2025