UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>THE M/Y *AMADEA*, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531,<br><br>                          Defendant. | 23 Civ. 9304 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court is Eduard Khudainatov and Millemarin Investments Ltd.'s (collectively, "Claimants") Motion for Relief under 28 U.S.C. § 1355(c), including a stay pending appeal, ECF No. 478 ("Claimants' Section 1355(c) Motion"). For the reasons stated below, Claimants' motion is **DENIED**.

## BACKGROUND

The general facts of this case are set forth in the Court's Findings of Fact and Conclusions of Law, ECF No. 467, and the Court's Opinion and Order granting the Government's Motion for Sanctions, ECF No. 468, familiarity with which is presumed. Since those decisions, the Court has entered judgment against and ordered forfeiture of the M/Y *Amadea*. *See* ECF No. 473. Claimants have appealed. *See* ECF No. 474. Meanwhile, the Government may seek to sell the *Amadea* while that appeal is pending, because it has already incurred approximately $32 million in transportation, maintenance, and other costs associated with the *Amadea*, and continues to incur approximately $850,000 per month in such costs. *See* Gov'ts Mem. in Opp'n. to Stay and in Supp. of Bond, ECF No. 483 ("Gov't Mem.") at 2, 9.

1

Claimants, however, are concerned the Government may sell the *Amadea* for an amount far less than its last appraised value (according to the Government) of $230 million. *See* Claimants' Section 1355(c) Motion at 2. They ask this Court: (1) to stay the forfeiture order pending appeal; or (2) to order the Government to post bond in the amount of the *Amadea*'s purported appraised value of $230 million; or (3) to order the Government not to sell the *Amadea* for less than that amount while the appeal is pending. *See id.* at 2-3; Claimant's Reply in Supp. of Stay Mot. ("Claimant's Section 1355(c) Reply") at 1, ECF No. 490.

The Government opposes such relief but states that it would consent to a stay provided that the Court require Claimants to post bond pending appeal in the amount of $10,370,000, representing the anticipated taxable costs the Government expects to incur pending an appeal. *See* Gov't Mem. at 3.

## THE PARTIES' MOTIONS

I.  **Claimants' Section 1335(c) Motion**

    A.  **Legal Standards**

Claimants seek relief under 13 U.S.C. § 1355, which provides that, in forfeiture cases,

> Upon motion of the appealing party, the district court or the court of appeals shall issue any order necessary to preserve the right of the appealing party to the full value of the property at issue, including a stay of the judgment of the district court pending appeal or requiring the prevailing party to post an appeal bond.

13 U.S.C. § 1355(c). The parties disagree whether relief under Section 1355(c), such as a stay, is mandatory or discretionary, with Claimants contending that it is mandatory, *see* Claimants' Section 1355(c) Motion at 3, and the Government arguing that it is guided by the traditional four-factor analysis that normally governs a request for a stay pending appeal (i.e., irreparable harm to the movant, likelihood of success on appeal, harm to the non-movant, and the public interest), *see* Gov't Mem. at 7. The Court concludes the Government is correct that Claimants' stay request is

governed by the traditional four-factor analysis for requests for a stay pending appeal. But as explained in the discussion section below, the Court also concludes that Claimants' request fails under either standard.

The Second Circuit has squarely addressed whether a stay request under Section 1355(c) is mandatory and has held that it is not, but rather is subject to the "usual" four-factor standards for a stay on appeal:

> [T]he usual standards for determining whether to grant a stay pending appeal apply under Section 1355(c). Under those standards, we must consider: (i) whether, absent a stay, the moving party may suffer irreparable harm; (ii) the substantiality of harm to the opposing party if a stay is granted; (iii) whether the movant has demonstrated a substantial possibility of success on appeal; and (iv) any public interests that might be affected.

*In re All Funds in Accts. in Names Registry Pub., Inc.*, 58 F.3d 855, 856 (2d Cir. 1995)[1] ("*All Funds*") (per curiam) (citing *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994)); *see also United States v. $1,399,313.74 in U.S. Currency*, 613 F. Supp. 2d 433, 435 (S.D.N.Y. 2009) (rejecting argument that a stay is automatic, and instead balancing the equities); *United States v. $1,026,781.61 in Funds from Fla. Cap. Bank*, No. CV 09-04381, 2013 WL 781930 at *1 (C.D. Cal, Mar. 1, 2013) (noting that courts "have uniformly found that § 1355(c) does not necessarily mandate a stay in every case; rather, the usual four-part test for determining whether to grant a stay pending appeal also applies under § 1355(c)."). This Court is bound by the Circuit's *All Funds* decision.

Claimants' counterarguments are unavailing. First, Claimants contend that the Second Circuit's decision in *All Funds*, and that other cases employing similar language, were limited to holding that requests for a stay under Section 1355 by the *government* are discretionary—but that

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

3

a stay request by a *claimant* is mandatory. *See, e.g.*, Claimants' Section 1355(c) Motion at 3 n.4. However, Claimants cite no authority for the proposition that whether relief under Section 1355(c) is mandatory or not depends on the identity of the movant. Indeed, they identify no language in either the statute itself or in the Second Circuit's decision in *All Funds* suggesting any such asymmetry.

In fact, Section 1355(c) refers to a "motion of the appealing party," 13 U.S.C. § 1355(c), suggesting a single standard applicable regardless of whether the movant is a claimant or the government. And the Second Circuit's language in *All Funds* also suggests a single uniform standard. *See All Funds*, 58 F.3d at 856. There, the Circuit began its analysis by considering the government's contention that Section 1355(c)'s use of the word "shall" meant that its request for a stay under the statute was mandatory, and rejected that contention. *Id.* The Court then went on to say "[w]e *also* hold that the usual standards for determining whether to grant a stay pending appeal apply under Section 1355(c)." *See id.* (emphasis added). That is, the Court first rejected the government's contention that its request for relief under Section 1355(c) was mandatory, and then went on to say that the "usual standards" apply to stay requests under the statute—without any limitations based on the identity of the movant. *Id.* Other courts have routinely applied the standard four-factor analysis to requests for a stay pending appeal by a claimant. *See, e.g.*, *United States v. Various Tracts of Land in Muskogee & Cherokee Ctys.*, 74 F.3d 197, 198 (10th Cir. 1996) ("*Various Tracts of Land*") (applying "the same four-part test we apply in other cases" to a claimant seeking an injunction under Section 1355(c) against the sale of forfeited property pending appeal); *United States v. Real Prop. Known as 4401 Collins Ave., Unit 3315, Miami Beach, Fla. 33140* ("*4401 Collins Ave.*"), 15 Civ. 20407, 2017 WL 5308147, at *1 (S.D. Fla. July 26, 2017) (applying four-factor analysis to a stricken claimant's motion to stay forfeiture proceedings pending appeal);

4

*United States v. All Assets Listed in Attachment A, & All Int., Benefits, & Assets Traceable Thereto*, No. 14 Civ. 969, 2015 WL 13021735, at *1 (E.D. Va. May 29, 2015) (rejecting the claimants' contention that Section 1355(c) "requires the Court to enter a stay"); *United States v. 7046 Park Vista Rd.*, No. C-3-02-557, 2008 WL 2357339, at *2 (S.D. Ohio June 5, 2008) (applying four part test to claimant's stay request under Section 1355(c)).

Claimants nevertheless point to the text of the Section 1355(c), noting that it provides that a court "*shall* issue any order necessary to preserve the right of the appealing party to the full value of the property at issue." Claimants' Section 1355(c) Motion at 1 (quoting 13 U.S.C. § 1355(c) (emphasis added)). Noting that the Government has previously sold at least one forfeited vessel at well below its purported appraised value, they contend that a stay to prevent an auction is "necessary to preserve" their right to "the full value" of the *Amadea*. *See id.* at 3. They also quote a treatise on civil asset forfeiture, which states that "[t]he mandatory nature of the statute is abundantly clear from both the language of the statute and its legislative history." Claimant's Section 1355(c) Reply at 4 (quoting Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 13-2, p. 620-21 (3d ed. 2022)).

Claimants' text-based argument fails for several reasons. First, it is foreclosed by the Second Circuit's decision in *All Funds*, which considered and rejected the same textual argument. *See* 58 F.3d at 856. Regardless of whether it would reach the same conclusion as a matter of first impression, this Court is bound by *All Funds*. Second, Claimants overread the statute's text, which does not suggest that a stay is *automatic* in all cases. At most, it suggests that a stay must issue when it is "*necessary* to preserve the right of the appealing party the *full value* of the property at issue." 13 U.S.C. § 1355(c) (emphasis added). Claimants, as the moving party, carry the burden of making such a showing. *See Nken v. Holder*, 556 U.S. 418, 433-34, (2009) ("The party

5

requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion."). And as explained below, the Court concludes that even under such a standard, Claimants' request would still fail.

Next, Claimants argue that applying the traditional standard for a stay request under Rule 62(d) to such requests under Section 1355(c) would render the latter "redundan[t]." Claimant's Section 1355(c) Reply at 3. But interpretive canons, like the canon against superfluousness, are interpretive aids to assist a court when a statute is *ambiguous*. "Redundancies across statutes are not unusual events in drafting," and "[w]hen the words of a statute are unambiguous, . . . this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Claimants identify no ambiguity in the statute that would require resort to a canon of interpretation. And the cases holding that a stay request under Section 1355(c) is discretionary follow its unambiguous text. The statute provides that a court "shall issue any order necessary to preserve the right of the appealing party to the full value of the property at issue." 28 U.S.C. § 1355(c). And as the Second Circuit explained in *All Funds*, a party's "right" to the full value of the property at issue, in turn, "depends upon the strength of the merits of its case," which is one of the factors (i.e., likelihood of success) in the traditional four-factor analysis for a stay pending appeal. *All Funds*, 58 F.3d at 856; *see also Various Tracts of Land*, 74 F.3d at 198 (noting that "'Appellant's 'right . . . to the full value of the property at issue' under § 1355(c) is bound up with the strength of his argument on appeal").[2]

---

[2] Claimants' argument that Section 1355(c) governs over Rule 62(d) because a specific statute takes precedence over a general one, *see* Claimants' Section 1355(c) Reply at 3, fails for essentially the same reasons. First, it is foreclosed by the Second Circuit's ruling in *All Funds*. Second, the canon applies only where there is a conflict between a "specific" statute and a "general" one—and the Court concludes that there is no such conflict between Section 1355(c) and Rule 62(d), at least with respect to the issues raised by Claimants here.

6

In sum, the Second Circuit has held that requests for a stay under the Section 1355(c) statute are governed by the normal Rule 62 standard for a stay pending appeal, and this Court, even if it were inclined—which it is not, because the unambiguous text of Section 1355(c) compels the same conclusion—may not depart from that controlling authority. Accordingly, the Court concludes that Claimants' request for relief under Section 1355(c) is discretionary rather than mandatory, and is governed by the same four-factor analysis generally applied to requests a stay pending appeal.

### B. Discussion

Having determined the applicable legal standard, the Court now considers the merits of Claimants' various requests for relief.

1. Stay

Claimants' request for a stay fails under both the traditional four-factor analysis governing stays, and the quasi-mandatory standard that they urge the court to adopt.

   a. *Four Factor Analysis*

With respect to the traditional four-factor stay analysis, the Court concludes that a stay is unwarranted.

*Likelihood of success on the merits*. Claimants have not made a "strong showing that [they are] likely to succeed on the merits," *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020). The Court found two bases for striking the claim in this case, which was the predicate for entering default judgment against the *Amadea*: first, that Claimants lack standing, and second, that case-dispositive sanctions were appropriate for failure to comply with the Court's orders. *See* ECF Nos. 466, 467, and 468. In their motion, Claimants do not even address the issue of sanctions, nor do they make an effort to show a likelihood of success on appeal as to this Court's decision in that regard. That failure is by itself an adequate basis to deny their motion. And even

with respect to the Court's standing decision, Claimants do nothing more than note that it involved several novel legal questions, and quibble with the Government's articulation of the applicable standard of appellate review (that is, whether it is deferential or not). *See* Claimants' Section 1355(c) Reply at 7-8. Those points do not amount to an effort to demonstrate the requisite "strong showing" of a likelihood of success on the merits.

*Irreparable harm*. Claimants cannot show "irreparable injury to the applicant in the absence of a stay," *Dep't of Homeland Sec.*, 974 F.3d at 214. The only injury they assert is that the United States might sell the *Amadea* at below its purported appraised value. As an initial matter, Claimants themselves have claimed throughout the litigation that they have also been trying to sell the *Amadea*. *See, e.g.*, Claimants' Amended Proposed Findings of Fact ¶¶ 30, 90-94, 106-09, ECF No. 455-1; Claimants Amended Proposed Conclusion of Law ¶ 38d, ECF No. 455-1. Any purported injury to Claimants cannot be based on the mere sale of the vessel, but rather on Claimants' assertion that the Government will sell it for below its appraised value. But generally speaking, a loss of money is not, by itself, irreparable harm. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.").

In any event, Claimants do not make much of a showing that such a below-value sale will occur. For example, Claimants point to the sale of another seized vessel, the M/Y *Galactica Star*, which the Government alleged was initially purchased for $82 million, and which was ultimately sold at a sealed-bid auction with a minimum reserve price of $42 million. *See* Claimants' Section 1355(c) Motion at 2. But Claimants acknowledge that "[t]he actual sales price does not appear to have been publicly reported," and they simply assert that they "expect it would be well below $80 million based on the low minimum reserve price and the thin market of potential buyers for luxury

8

yachts." *Id.* at 2 n.3.³ As discussed in more detail below, Claimants point to no concrete evidence demonstrating that the price at which the Government may be willing to sell the *Amadea* or that the price the *Amadea* would fetch at auction would substantially deviate from the true market value of the boat. On the record currently before the Court, the notion of a below-value sale of the *Amadea* is speculative.

*Injury to the Non-Movant and the Public Interest*. "When the Government is the opposing party, the third and fourth factors merge." *In re Search Warrant Dated Nov. 5, 2021*, No. 21 Misc. 813, 2024 WL 283460, at *1 (S.D.N.Y. Jan. 25, 2024) (citing *Nken*, 556 U.S. at 435). Here, a stay will cause some injury to the United States, and thus, to the public interest—namely, via the continued payment of approximately $850,000 monthly in maintenance costs. *See* Gov't Mem. at 9. Claimants say that these costs are "not a cognizable harm," *see* Claimants' Section 1355(c) Reply at 9, but cite no authority for that proposition. To be sure, the loss of money is not "irreparable," but it is certainly cognizable, as "[t]he Government has a strong interest in avoiding financial loss." *4401 Collins Ave.*, 2017 WL 5308147, at *1.

      b. *Quasi-Mandatory Standard*.

Even under Claimants' proposed quasi-mandatory standard—under which a stay must be granted automatically if necessary to preserve the "full value" of the *res*—the Court concludes that a stay would not be warranted on this record. That is because Claimants have not established that a hypothetical auction sale price of the *Amadea* would in fact be below its "full value."

---

³ Claimants also point to news reports about the sales of two other vessels, alleging that one was sold for approximately one third of its "estimated" value, and that the other was sold for less than one half of its current list price. *See* Claimants' Section 1355(c) Reply at 8 n.7. But these reports of the "estimated" value or current "listed" price do not substantiate the actual or full value of these vessels.

9

As defined in Black's Law Dictionary at the time Section 1335(c) was enacted,[4] the phrase "full value" is synonymous with the term "fair market value." *See Full Value*, Black's Law Dictionary (6th ed. 1991). "Fair market value," in turn, means "[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Fair Market Value,* Black's Law Dictionary (6th ed. 1991). Claimants have not made a showing that the Government will dispose of the *Amadea* for less than such a price. As noted, they allege (but do not demonstrate) that the Government previously sold a different vessel, the M/Y *Galactica Star*, at well below its previous sales price. *See* Claimants' Section 1335(c) Motion at 2. But "full value" means "fair market value"—i.e., the price that a property may actually command in a transaction right now, not its sales price at an earlier time under different circumstances (e.g., before it became the object of forfeiture litigation due to allegations of connections to unlawful conduct), or even its currently "appraised value." And an actual auction price is generally more probative of fair market value than is an appraisal. *See* Fed. Tax Coordinator 2d (RIA) ¶ P-6019 Auction Prices ("The prices for which two lots of personal property were sold at auction were found to reflect the fair market value of the included items accurately, and the values set by a professional appraiser were disregarded . . . ."). To the extent that the *Amadea*'s sale price might be suppressed from its appraised value by contested claims of ownership[5] or by "the thin market

---

[4] Section 1335(c) was enacted in 1992.

[5] Should the *Amadea* be sold at a lower price than what Claimants believe is its "full" value, such a result could just as well be attributed to Claimants, whose public comments regarding their intention to continue asserting their ownership over the *Amadea* in international courts could predictably have a chilling effect on bidding at the vessel's auction. *See* Gov't Mem. at 2-3 (quoting Claimants' counsel as publicly stating their intention to challenge any sale of the *Amadea* and as stating that this Court's forfeiture order may not be respected outside of the United States).

10

of potential buyers for luxury yachts," Claimants' Section 1355(c) Motion at 2 n.3, that would only mean that its "fair market value" is less than what Claimants believe it ought to be.

In sum, even setting aside the governing four-factor analysis for a stay request pending appeal and focusing solely on, as Claimants would have it, whether a stay is "necessary" to preserve the "full value" of the *Amadea*, the record before the Court is insufficient to make such a finding.

### 2. Bond or Injunction Against Sale

Claimants' request for other forms of relief fails principally for the same reasons as their request for a stay: they have not met their burden under the four factors governing an entitlement to relief pending appeal. With respect to their request for an order requiring the Government to post bond pending appeal, Claimants cite no authority for the proposition that such relief would be appropriate. The same holds true for their alternative request for an injunction prohibiting the Government from selling the *Amadea* for below a certain price level. And in any event, as noted, the record currently before the Court is insufficient to establish that whatever price the Government could obtain for the *Amadea* at auction is in fact below its fair market value.

## CONCLUSION

For the reasons stated above, Claimants' Section 1355(c) Motion is **DENIED**. The Clerk of Court is respectfully directed to terminate ECF No. 478. The Court will decide the Government's pending motion to require Claimants to post bond, ECF No. 482, in due course.

**SO ORDERED.**

Dated: June 6, 2025
New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　　　　　　　　　　　DALE E. HO
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge