**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        -v-<br><br>THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,<br><br>        Defendant-*In-Rem*,<br><br>        and<br><br>EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,<br><br>        Claimants. | 23 Civ. 9304 (DEH) |

### NOTICE OF GOVERNMENT'S MOTION FOR RECONSIDERATION

Plaintiff the United States of America ("the Government") respectfully seeks reconsideration of the Court's July 16 Order denying the Government's motion for a bond of $25.6 million in past-incurred taxable costs (ECF No. 500). The Government submits a memorandum of law in support of this motion herewith. Claimants oppose this motion.

1

                Respectfully submitted,

                JAY CLAYTON
                United States Attorney
                Southern District of New York
                U.S. Department of Justice

By:    */s/ Rachael Doud*
                DOMINIKA TARCZYNSKA
                RACHAEL DOUD
                Assistant United States Attorneys

                MARGARET A. MOESER
                Chief
                Money Laundering and Asset Recovery
                Section, Criminal Division
                U.S. Department of Justice

By:    */s/ Joshua L. Sohn*
                JOSHUA L. SOHN
                LINDSAY P. GORMAN
                Trial Attorneys
                Money Laundering and Asset Recovery
                Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        -v-<br><br>THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,<br><br>        Defendant-*In-Rem*,<br><br>        and<br><br>EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,<br><br>        Claimants. | 23 Civ. 9304 (DEH)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION FOR RECONSIDERATION WITH RESPECT TO COST BOND** |

**PLAINTIFF UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION FOR
RECONSIDERATION WITH RESPECT TO COST BOND**

      The Government respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's July 16 Order denying the Government's motion for a bond for $25.6 million in past-incurred taxable costs. ECF No. 500 (the "Order").

1

**FACTUAL BACKGROUND**

The relevant factual background is set forth in the Government's memorandum of law concerning taxation of costs, which the Government incorporates by reference. ECF No. 477-2.

As set forth therein, since the Government took custody of the *Amadea* in June 2022, the United States Marshals Service has incurred approximately $32 million in transportation, maintenance, storage and other costs. The substantial scale of these costs is largely the result of Claimants' actions to delay resolution of this case and block the sale of the *Amadea*. The Court entered a forfeiture judgment on March 18, 2025. ECF No. 473. Claimants sought a stay or for the Government to post a bond for the value of the *Amadea* pending appeal, which the Court denied on June 6, 2025. ECF No. 499.

The Government separately moved for Claimants to post a cost bond of $25.6 million as security for past taxable costs already incurred by the Government through March 18, 2025. ECF No. 482. In its combined memorandum in support of its motion for a cost bond and in opposition to Claimant's motion for a stay pending appeal, the Government offered to consent to a stay if Claimants posted an additional cost bond of $10.37 million as security for future taxable costs expected to be incurred during appeal. *See* ECF No. 483 at 1. On July 16, 2025, the Court denied the Government's motion for Claimants to post a $25.6 million bond for taxable costs that the Government had incurred through the date of judgment.[1] ECF No. 500 ("Order").

---

[1] This motion for reconsideration concerns only the Court's decision not to require Claimants to post a $25.6 million bond for past costs. The Government agrees that the Court's denial of Claimants' motion for a stay moots the Government's offer to consent to a stay conditioned upon Claimants posting an additional bond of $10.37 million for estimated future maintenance costs during the pendency of Claimants' appeal.

**ARGUMENT**

In denying the Government's motion for a bond under Local Civil Rule 54.2, the Order acknowledged that "[t]o be sure, the factors courts typically consider in adjudicating motions under Local Rule 54.2 generally counsel *in favor* of imposing a bond on Claimants." *Id.* at 5 (Court's emphasis). These factors include: "[1] the financial condition and ability to pay of the party at issue; [2] whether that party is a non-resident or foreign corporation; [3] the merits of the underlying claims; [4] the extent and scope of discovery; [5] the legal costs expected to be incurred; and [6] compliance with past court orders." *Selletti v. Carey*, 173 F.R.D. 96, 100-01 (S.D.N.Y. 1997) (internal citations omitted). Focusing on the factors relating to the merits of the underlying claims and compliance with past court orders, the Court noted that it struck Claimants' claim for lack of "standing after an evidentiary hearing and also as a sanction for repeated violations of court orders," that Claimants "made no effort to demonstrate that they have a likelihood of success on appeal on either issue," and that "Claimants' pattern of violating court orders also weighs in favor of a bond." Order at 5.

In addition to these two factors that the Court found weigh in favor of a bond, Claimants' status as foreign nonresidents, their undisputed lack of assets in the United States, and the substantial $25.6 million in costs to the Government also weigh heavily in favor of a bond. Under Local Rule 54.2, "a significant consideration in the decision whether to impose a security requirement is whether the party in question is a non-resident or foreign corporation." *Selletti v. Carey*, 173 F.3d. 104, 112 n.11 (2d Cir. 1999); *see also Sea Trade Co. v. Fleetboston Fin. Corp.*, 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008) (party's status as foreign corporation "weigh[ed] heavily" in favor of cost bond). While the Order noted in passing that Khudainatov is a Russian national (Order at 1), the Court gave no apparent weight to this "significant consideration" in its

3

analysis. When considered in combination with a litigant's lack of reachable assets in the United States, as is the undisputed case here, Claimants' foreign status becomes even more relevant. *See Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, 2008 WL 2876508, at *3 (S.D.N.Y. July 21, 2008) (party's "foreign status and lack of United States assets . . . supports the posting of a bond"); *Knight v. H.E. Yerkes & Assocs., Inc.*, 675 F. Supp. 139, 142 (S.D.N.Y. 1987) (requiring cost bond because party "[p]laintiff is a resident of Thailand, and if defendant prevails in this litigation, collection of costs would likely prove difficult"); *see also Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33, 36 (S.D.N.Y. 1989) ("Cases requiring a security bond generally involve [parties] with no reachable assets."). Moreover, the "legal costs" in this case are substantial: straw owners Khudainatov and Millemarin caused the Government to incur *more than $25 million* in unnecessary costs through their unsupported claim and their prolongation of discovery and adjudication of this litigation. ECF No. 477-2. Claimants do not contest that these costs are substantial. Thus, "the factors courts typically consider in adjudicating motions under Local Rule 54.2" weigh *overwhelmingly* in favor of requiring bond.

Despite its own findings and the uncontroverted weight of these factors, the Court nonetheless denied the Government's motion for a cost bond. While a court has broad discretion to grant or deny a bond under Local Rule 54.2, the Government respectfully submits that denial of a cost bond when the applicable legal factors overwhelmingly favor such a bond constituted legal error. Highlighting this error, the Court itself acknowledged that the applicable factors weigh in favor of bond. *See, e.g., L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir. 1996) ("A failure to consider relevant factors or to apply the proper legal standard constitutes such an abuse [of discretion]") (quoting *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d

4

971, 973-74 (2d Cir. 1987)). Moreover, none of the three grounds cited by the Court as supporting its decision to set aside its own determination of the Rule 54.2 factors supports such a departure.

First, the Court found that requiring a bond would not advance the primary purpose of Local Rule 54.2 because "there is no reason to think that collecting costs now (in the form of a bond) will be less difficult than collecting taxable costs in the future." Order at 5. The Government respectfully submits that this conclusion is clearly incorrect. Claimants are a foreign national and foreign shell entity with no United States assets. Thus, if Claimants refuse to honor an award of costs at the ultimate conclusion of the case (*i.e.*, after appeal), enforcing that award would be nearly impossible. In contrast, now, while Claimants remain subject to this Court's jurisdiction as U.S. litigants with a pending appeal of this Court's forfeiture judgment, they have a strong incentive to obey the Court's orders and the Court has strong levers to compel their compliance. For example, Claimants presumably would not want to jeopardize their appeal by willfully ignoring an order from this Court to post bond. In short, the Court's conclusion that "there is no reason to think that collecting costs now (in the form of a bond) will be less difficult than collecting taxable costs in the future" ignores that a foreign litigant whose assets are outside the United States is far more likely to pay a cost bond while he remains an active litigant than he is to pay a costs bill post-litigation when he has no incentive to honor it.

To elaborate on this point: if this Court ordered Claimants to post bond and they refused, this Court could hold Claimants in contempt. And if that were not enough to compel compliance, the Government could move the Second Circuit to hold Claimants' appeal in abeyance until they obeyed this Court's order. *Cf. Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 279 (2d Cir. 1997) (dismissing appeal as sanction where appellants had disobeyed district court orders in order to frustrate opposing party's ability to collect on district court judgment). More generally,

5

Claimants might reasonably conclude that putting themselves in contempt of a bond order from this Court could imperil their appeal, in which they seek to overturn this Court's order striking their claim for lack of standing and sanctioning them for contempt of prior Court orders. Thus, there are strong tools and levers to collect costs via a bond while Claimants remain live U.S. litigants, but these tools and levers would vanish if Claimants lose their appeal and the Government presents a costs bill at the ultimate conclusion of the U.S. litigation.

The Second Circuit has held that "the primary purpose of the bond requirement is to insure that whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999) (underlining added, italics in original). Here, Khudainatov has considerable assets, but they would be "unreachable" at the ultimate end of the case because they are located abroad and the Government would not be able to obtain them to satisfy costs. Thus, this is a paradigmatic case to require a bond. *See Kensington Int'l, Ltd. v. Republic of Congo*, 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005) ("[t]he primary purpose of [Rule 54.2] is to ensure that the prevailing party will be able to collect the costs and fees owed to it in situations where the other party is unlikely or unwilling to pay.") (citing, *inter alia*, *Selletti*, 173 F.3d at 111-12).

In reaching the opposite conclusion, the Order misapplied the Second Circuit's ruling in *Selletti*, which *affirmed* the district court's imposition of a cost bond and found that it was well within the court's discretion to require a bond where "the merits of plaintiff's claims were questionable, . . . plaintiff had violated discovery orders and otherwise had failed to prosecute his claims adequately, and . . . defendants' ultimate ability to recover costs that might be awarded by the court was in doubt." *Selletti*, 173 F.3d at 111; *Id.* at 111 n.9 (district court did not abuse

6

discretion in setting security requirement). Claimants are similarly situated here, and, as in *Selletti*, this Court should require Claimants to post a bond to enable recovery of costs.

While the Second Circuit did go on to reverse the district court in *Selletti*, it only did so with respect to the district court's dismissal of the plaintiff's case after he failed to post the required bond. Here, it would be premature for the Court to consider what the appropriate enforcement mechanism or sanction would be if the Court requires Claimants to post a bond for past costs incurred through judgment and they fail to comply. *See Sea Trade Co.,* 2008 WL 161239 at *2 (finding it premature to decide whether failure to post bond should result in dismissal where court has not yet ordered a bond and plaintiff had not had the opportunity to comply with the order). As the Court has already held, Claimants have the ability to post a bond to cover the $25.6 million in costs that they caused. Order at 7. Only if Claimants fail to comply would enforcement and potential sanctions become relevant. And, as noted above, the Court has several other options for enforcement of its order in addition to dismissal. *See also Selletti*, 173 F.3d at 111 n.9 ("[I]f a court sets an amount that proves to exceed the party's ability to pay, the court retains the option of accepting partial or periodic payment, or rescinding the obligation altogether, rather than dismissing the suit.").

The other two considerations cited by the Court for denying the Government's motion for a cost bond likewise do not support that denial. As a second basis for departing from the Rule 54.2 factors, the Court found that the Government's motion for an additional bond of $10.37 million for future costs pending appeal "appears moot" because the Government is now free to sell the *Amadea.* Order at 6. The Government agrees, but this says nothing about the propriety of a bond for the $25.6 million in *past* costs.

7

Third, the Court found that the "equities" did not "counsel in favor of the imposition of a bond" because Claimants "remain entitled to appeal this Court's decisions" and "[t]o the extent the Government seeks to deter Claimants from appealing, the Court declines in its discretion to impose a bond on that basis." *Id.* But the Court expressly found that "the imposition of a $25.6 million bond on Khudainatov, a self-described billionaire who claims to have commissioned the construction of several yachts collectively worth over $1 billion, should not be an insurmountable barrier to appeal." *Id.* at 7 (citation omitted). Accordingly, there is no equitable basis to deny a bond for fear of deterring an appeal. In any event, Khudainatov already *has* appealed, so the specter of paying costs clearly did not deter him from pursuing his claims on appeal. Further, there is no reason to believe that imposing a bond would cause him to abandon the appeal that he has already commenced. Indeed, Claimants have not suggested that they would abandon their appeal if ordered to post a bond.[2]

Finally, it is notable that this is a case brought by the Government, and if the $25.6 million in past taxable costs cannot be collected against Claimants, these significant costs will fall on the U.S. taxpayer. Thus, the Court's bond denial disserves the public interest by making it near-impossible for the Government and U.S. taxpayer to ever recover the $25.6 million in taxable costs. Accordingly, to the extent the equities are relevant to the Rule 54.2 determination, they weigh heavily *in favor* of the Court requiring Claimants to post a bond for the substantial $25.6 million in past costs they caused the Government to incur.

---

[2] Contrary to Claimants' assertions, their request for a bond pursuant to 28 U.S.C. § 1355(c) has no relevance to the Government's motion for a cost bond under Local Rule 54.2 and Federal Rule of Appellate Procedure 7. *See* Order at 4 (suggesting novelty of argument). By its terms, Section 1355(c) authorizes imposition of a bond to preserve a litigant's right "to the full value of the property" pending appeal. In contrast, Local Rule 54.2 and F.R.A.P. 7 seek security for future payment of specific taxable costs, not the value of the defendant assets. In any case, the Court already denied Claimants' motion.

8

For these reasons, the Government respectfully seeks reconsideration. *See Schoolcraft v. City of NY*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) ("a court may grant reconsideration where the party moving for reconsideration demonstrates . . . the need to correct a clear error or prevent manifest injustice."); *see also* ECF No. 188 (granting reconsideration on one prior issue in this case).

    Respectfully submitted,

    JAY CLAYTON
    United States Attorney
    Southern District of New York
    U.S. Department of Justice

By:   */s/ Rachael Doud*
    DOMINIKA TARCZYNSKA
    RACHAEL DOUD
    Assistant United States Attorneys

    MARGARET A. MOESER
    Chief
    Money Laundering and Asset Recovery
    Section, Criminal Division
    U.S. Department of Justice

By:   */s/ Joshua L. Sohn*
    JOSHUA L. SOHN
    LINDSAY P. GORMAN
    Trial Attorneys
    Money Laundering and Asset Recovery
    Section

**Certificate of Compliance**

Pursuant to Local Civil Rule 6.3, the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,909 words.