**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>-v-<br><br>THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,<br><br>      Defendant-*In-Rem*,<br><br>and<br><br>EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,<br><br>      Claimants. | 23 Civ. 9304 (DEH) |

**REPLY IN SUPPORT OF GOVERNMENT'S MOTION FOR RECONSIDERATION**

      Claimants' Opposition to the Government's Motion for Reconsideration ("Opp." [ECF No. 504]) does not rebut the core basis for the Government's Motion: imposing a bond at this juncture is the only way to secure the Government's right to costs because it will likely be impossible for the Government to recover costs after the U.S. litigation is over. Thus, a bond is both appropriate and critically important, especially given the Court's findings that the relevant factors weigh in favor of a bond. Accordingly, the Court should reconsider its prior decision to correct a clear error and avoid manifest injustice.

      On the critical point of the likelihood that Claimants would obey an order to post bond, the Government's Motion ("Gov't Br." [ECF No. 501]) explained that while Claimants remain U.S.

litigants with a pending appeal of this Court's forfeiture judgment, they have an incentive to obey this Court's orders and there are levers to compel their compliance. *See* Gov't Br. at 5-6. Claimants do not rebut this point at all. As to the unlikelihood that Claimants would honor a costs bill at the ultimate conclusion of the case, the Government's Motion explained how Claimants, as foreigners with no U.S. assets, would at that point have no incentive to honor a large costs bill. *Id.* at 3-4. Claimants do not dispute this point either. Indeed, Claimants do not even state that they would honor a costs bill at the ultimate conclusion of the case.

Thus, the crux of the Government's Motion is **undisputed**: imposing a bond would serve to secure the Government's right to costs, while it would be near-hopeless for the Government to seek costs after the U.S. litigation is over. Given this reality, the Court clearly erred in reasoning that "there is no reason to think that collecting costs now (in the form of a bond) will be less difficult than collecting taxable costs in the future," Order [ECF No. 500] at 5—reasoning that led the Court to deny a bond even though the relevant factors favored one. This error will have dramatic negative consequences for the Government and U.S. taxpayers by preventing the Government from recovering $25.6 million in taxable costs. This result constitutes a "manifest injustice" that justifies reconsideration.

Claimants also do not dispute that they are able to post a bond or that, as the Government argued, "there is no reason to believe that imposing a bond would cause [Khudainatov] to abandon the appeal that he has already commenced." Gov't Br. at 8. Thus, to the extent the Court's bond denial was based on a concern that ordering bond could chill Claimants' appellate rights (*see* Order at 6), that basis has now been shown to be unfounded. Claimants do not even assert that a bond order would cause them to abandon their appeal.

Unable to rebut the crux of the Government's Motion, Claimants seek to relitigate the Court's finding that "the factors courts typically consider in adjudicating motions under Local Rule 54.2 generally counsel *in favor* of imposing a bond on Claimants." Order at 5 (Court's emphasis). For example, Claimants now try to argue that their claims on appeal have a likelihood of success. *Compare* Opp. at 4-5 to Order at 5 ("Claimants have made no effort to demonstrate that they have a likelihood of success on appeal on either issue, which undermines any assertion as to the strength of the merits of their underlying claim."). But as the Court recognized, Claimants lost this case on both standing grounds and sanctions grounds, and they would need the Second Circuit to overturn both decisions to prevail on appeal. Moreover, the Court's opinions on both rulings were grounded in detailed findings of fact that are subject to a demanding "clear error" standard on review. *See* Fed. R. Civ. P. 52(a)(6).

On standing, the Court held that: (1) Khudainatov was never the *Amadea*'s genuine owner because he lacked the financial means to have commissioned the boat; (2) he and Millemarin exercised no attributes of ownership after the September MOA; and (3) the September MOA effected a *de facto* sale of the boat to the Kerimov family, who exercised all attributes of ownership after that date. *See* ECF No. 467. Any of these factual findings would be sufficient to sustain the Court's conclusion that Claimants are straw owners, and Second Circuit precedent is clear that straw owners lack standing. *United States v. 500 Delaware St.*, 113 F.3d 310 (2d Cir. 2002). Claimants likewise have no meaningful likelihood of success on appeal of the Court's sanctions opinion, given the Court's findings concerning Khudainatov's wrongful efforts to avoid deposition. *See* ECF No. 468.

Next, Claimants argue that their foreign status should not weigh heavily in favor of requiring a bond because of Khudainatov's "stable financial status and ample resources." Opp. at

3

6. This argument misses the point. Khudainatov does have significant resources, but they will all be beyond the Court's reach at the end of this litigation. Contrary to Claimants' suggestion, the Government urged the Court to consider Claimants' foreign status in context, not "in isolation." *See* Gov't Br. at 3-5 (relevant factors weigh *overwhelmingly* in favor of a bond). And as the Court noted, "Claimants' pattern of violating court orders also weighs in favor of bond." Order at 5. Claimants' non-compliance with the Court's orders, together with Claimants' foreign status and lack of U.S. assets, make this case more in line with *Kensington Int'l Ltd. v. Rep. of Congo*, No. 03 Civ. 4578(LAP), 2005 WL 646086 (S.D.N.Y. Mar. 21, 2025), than the other cases cited by Claimants. Again, it is important to stress that Claimants do not even assert that they would honor a costs bill at the ultimate end of the case. Once the litigation concludes, Claimants and their assets (available for a cost bond now) will be beyond the reach of the Court, and there would be no levers to compel them to honor a costs bill at that juncture.

Claimants' other arguments mostly rehash issues briefed by the parties in the initial round of bond briefing. For example, Claimants reassert that 28 U.S.C. § 1355(c) precludes the Government's requested bond. Opp. at 10. This is untrue: Section 1355(c) protects the rights of non-prevailing parties (by authorizing bonds from prevailing parties) while Rule 54.2 bonds protect the rights of prevailing parties (by authorizing bonds from non-prevailing parties). Because Section 1355(c) and Rule 54.2 protect different parties, the two provisions can coexist harmoniously and neither provision displaces the other. *See also* ECF No. 496 at 9-13.

Claimants also argue that the Government is not entitled to a bond because it could recover costs out of the *Amadea*'s sale proceeds. Opp. at 8-9. Claimants even assert that only a small fraction of the *Amadea* is forfeitable, to argue that the Government is "oversecured." *Id.* This is incorrect. The Court already forfeited the *Amadea* in full and found that Claimants had no

legitimate claim to the vessel. The Government is entitled to recover taxable costs from Claimants *in addition to* the ship itself. There is no authority or logic for the position that a prevailing plaintiff must cannibalize its underlying judgment to recover taxable costs. If that were the law, then few if any prevailing plaintiffs could ever recover costs, because a non-prevailing defendant could simply demand that costs be taken out of the judgment. Needless to say, this is not the law. A prevailing plaintiff is entitled to its full judgment *and* taxable costs.

Claimants next argue that a bond is improper because the $25.6 million in maintenance costs is not taxable or because there are "weighty question marks" about its taxability. Opp. at 10. However, the Government cited four civil forfeiture cases taxing maintenance costs against unsuccessful claimants, as well as one other case and one treatise stating the same rule that such costs are taxable. *See* ECF No. 496 at 3-4. Claimants cite no case, treatise, or other authority stating the opposite rule. Thus, there is no serious doubt that the claimed costs are taxable. In any event, even if the taxability question were in doubt, a bond would preserve the Government's ability to *potentially* recover these costs, while denying a bond makes it practically impossible for the Government to do so. Denying a bond is tantamount to ruling that the Government cannot recover these costs even if they later prove taxable, because Claimants' actions in this litigation to date cast grave doubt on whether they would honor a costs bill at the ultimate end of the case. In contrast, Claimants point to no hardship they would suffer in posting the bond pending the conclusion of this litigation and the Court's determination of taxable costs.

On the equities, Claimants' recent media campaign to frustrate the *Amadea*'s auction also weighs in favor of a cost bond to ensure the Government can at least recover costs if Claimants succeed in frustrating the auction. *See generally* Order at 6 (weighing "the equities" in deciding whether to impose bond). The Government's August 7, 2025 letter (ECF No. 502) detailed certain

5

statements from Claimants' media campaign, but Claimants have since issued other, more blatantly false statements. For example, in a recent statement to the popular YouTube channel *SuperYacht News*, Claimants' counsel Adam Ford stated: "We are aware that the United States plans to auction the M/Y Amadea – *property that lawfully belongs to Mr. Khudainatov*. The sale is improper and premature; *we retain title* and are actively appealing the forfeiture ruling." *See* www.youtube.com/watch?v=ageWR4_ZmOw (at 14:54 mark) (emphases added). The italicized passages are unequivocally false. Neither Mr. Khudainatov nor Millemarin "retain[s] title" to the *Amadea*. Rather, the Court's forfeiture judgment vested the *Amadea*'s title in the Government. *See, e.g., United States v. McNamara Buick-Pontiac, Inc.*, No. 92-CV-2070, 2009 WL 10712887, at *2 (E.D.N.Y. Oct. 29, 2009) ("once a final judgment of forfeiture is entered, title to the property vests in the Government"). As the Court explained, "[t]he Government is now free to sell the *Amadea*..." Order at 6. The fact that Claimants have resorted to outright falsehoods to try to frustrate this Court's orders and the *Amadea*'s auction weighs heavily in favor of a cost bond.

    For all these reasons, the Government respectfully seeks reconsideration of the bond denial.

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York
U.S. Department of Justice

By:   */s/ Rachael Doud*
DOMINIKA TARCZYNSKA
RACHAEL DOUD
Assistant United States Attorneys

MARGARET A. MOESER
Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By:   */s/ Joshua L. Sohn*

>JOSHUA L. SOHN
>LINDSAY P. GORMAN
>Trial Attorneys
>Money Laundering and Asset Recovery
>Section

# CERTIFICATE OF COMPLIANCE

      Pursuant to Local Civil Rule 7.1(c) of this Court, it is certified that this Reply in Support of the Government's Motion for Reconsideration was prepared using a computer and, as measured by the word processing system used to prepare it, contains 1,702 words. This complies with the word-count limitation of Local Civil Rule 6.3. This word count excludes the caption, signature block, and this certificate, but includes material contained in footnotes or endnotes.

Dated: August 19, 2025

*/s/ Joshua L. Sohn*

Joshua L. Sohn

Attorney for Plaintiff United States of America