25-869-cv
United States v. The M/Y Amadea, a Motor Yacht
Bearing Int'l Mar. Org. No. 1012531, Including All
Fixtures, Fittings, Manuals, Stocks, Stores,
Inventories, & Each Lifeboat, Tender, and Other
Appurtenance Thereto

# United States Court of Appeals
# For the Second Circuit

August Term, 2025

(Argued: April 23, 2026   Decided: June 1, 2026)

Docket No. 25-869-cv

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

EDUARD YURIEVICH KHUDAINATOV, MILLEMARIN INVESTMENTS LTD.,

*Claimants-Appellants*,

THE M/Y AMADEA, A MOTOR YACHT BEARING INTERNATIONAL
MARITIME ORGANIZATION NO. 1012531, INCLUDING ALL FIXTURES,
FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH
LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO,

*Defendant-in-rem.*

_____

Before:

   PARKER, LOHIER, and MERRIAM, *Circuit Judges*.

   The Government initiated a civil forfeiture action against the *M/Y Amadea*,

a luxury superyacht that the Government alleges is really owned by a Russian national subject to sanctions by the United States. Claimants Eduard Yurievich Khudainatov and Millemarin Investments Ltd. filed a claim to the *Amadea*, alleging that Khudainatov was the ultimate beneficial owner of the *Amadea* through his company, Millemarin. The Government moved to strike the Claimants' claim, arguing that the Claimants were mere straw owners of the *Amadea* and therefore lacked constitutional standing to contest its forfeiture. Following an evidentiary hearing pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States District Court for the Southern District of New York (Ho, *J.*) granted the Government's motion and struck the Claimants' claim. We agree with the District Court's conclusion that Claimants lack constitutional standing and therefore **AFFIRM**.

> ALEXANDRA A.E. SHAPIRO, Shapiro Arato Bach LLP, New York, NY (Theodore Sampsell-Jones, William I. Taylor, Shapiro Arato Bach LLP, New York, NY, Susan E. Brune, Brune Law P.C., New York, NY, Adam C. Ford, Ford O'Brien Landy LLP, New York, NY, *on the brief*), *for Claimants-Appellants*.
>
> JENNIFER JUDE, Assistant United States Attorney (Rachael Doud, Dominika Tarczynska, Benjamin H. Torrance, Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY, A. Tysen Duva, Assistant Attorney General, Margaret A. Moeser, Chief, Joshua L. Sohn, Trial Attorney, Criminal Division, United States Department of Justice, Washington, DC, *on the brief*), *for Plaintiff-Appellee*.

LOHIER, *Circuit Judge*:

This appeal arises from a civil forfeiture action against the *M/Y Amadea*, a

348-foot luxury superyacht that the Government alleges is beneficially owned by

2

Suleiman Kerimov, a Russian national "[o]ligarch" subject to sanctions by the United States.  App'x 79.  The Claimants-Appellants, Eduard Yurievich Khudainatov and his company, Millemarin Investments Ltd., filed a claim challenging the forfeiture of the *Amadea* on the ground that they, not Kerimov, owned the *Amadea*.  After an evidentiary hearing, the United States District Court for the Southern District of New York (Ho, *J.*) granted the Government's motion to strike the claim, finding by a preponderance of the evidence that the Claimants were mere straw owners of the *Amadea* and thus lacked Article III constitutional standing to object to its forfeiture.[1]  The District Court entered a default judgment on March 11, 2025 when no other claimant appeared to contest the forfeiture, and entered a final judgment of forfeiture on March 18, 2025.  On appeal, the Claimants challenge the District Court's conclusion that they failed to establish constitutional standing.  We **AFFIRM**.

I

The Government seized the *Amadea* "in or about April 2022," App'x 277, and this forfeiture action commenced in October 2023 when the Government

---

[1] Because we conclude that the Claimants lack constitutional standing to contest the forfeiture of the *Amadea*, we do not reach the District Court's alternative conclusion striking the Claimants' claim as a case-dispositive discovery sanction.

3

filed a complaint, pursuant to 18 U.S.C. §§ 981 and 983, seeking forfeiture of the *Amadea* as an asset owned by Kerimov. The Government alleged that, after Kerimov became subject to sanctions, Kerimov "or others acting on his behalf . . . spent more than a million dollars to maintain and provision the *Amadea*, routing the money through U.S. financial institutions." App'x 278. The Government contended that these transactions violated the sanctions imposed on Kerimov and therefore constituted "specified unlawful activity" under 18 U.S.C. § 1956(c)(7), rendering the *Amadea* subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

The Claimants filed their claim contesting the forfeiture in November 2023, asserting that Khudainatov, not Kerimov, was the beneficial owner of the *Amadea* through his ownership of Millemarin, which holds legal title to the yacht. The Government responded in May 2024 that the Claimants lacked constitutional standing to challenge the forfeiture. Asserting that the Claimants were mere straw owners of the *Amadea*, the Government moved for summary judgment and to strike the claim on that basis, relying on Rule G(8)(c)(i)(B) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").[2]

The District Court declined to resolve the Government's motion to strike on summary judgment given the existence of factual disputes between the parties. The court opted instead to conduct an evidentiary hearing to determine whether the Claimants could demonstrate by a preponderance of the evidence that they were not mere straw owners of the *Amadea*. Following a four-day hearing, the District Court granted the Government's motion to strike. The court found by a preponderance of the evidence that, to the extent the Claimants had ever owned the *Amadea*, they had transferred possession, dominion and control, any financial stake, and all other indicia of ownership via a September 2021 Memorandum of Agreement (the "September 2021 MOA" or "MOA"). As part of the MOA, Millemarin committed to sell the *Amadea* for €225 million to a Cayman Islands entity formed less than one week before the MOA was signed.

---

[2] The Supplemental Rules are a set of procedural rules that apply to civil forfeiture actions. *See* 18 U.S.C. §§ 983(a)(3)(A), (4)(A). Supplemental Rule G, which governs forfeiture actions *in rem*, was adopted in 2006 "to bring together the central procedures that govern civil forfeiture actions." Supp. R. G advisory committee's note to 2006 adoption. To the extent that Supplemental Rule G is silent on an issue, the Federal Rules of Civil Procedure, as well as Supplemental Rules C and E, also apply. *See* Supp. R. G(1).

The MOA also provided that the buyer acquired and the seller relinquished the right to use the *Amadea* and the responsibility to pay its operating costs after the first installment of €45 million was paid. The full purchase price of €225 million was ultimately paid by the end of October 2021.

On March 10, 2025, the District Court struck the Claimants' claim, finding by a preponderance of the evidence that after the September 2021 MOA the Claimants held only bare title to the *Amadea*. On that basis, the court concluded, the Claimants were mere straw owners who lacked constitutional standing to contest the *Amadea*'s forfeiture. Because no other claimants remained in the proceeding, the District Court entered a default judgment of forfeiture on March 11, 2025 and, one week later, on March 18, 2025, the District Court entered a final judgment of forfeiture.

The Claimants timely appealed.

## II

The threshold question before us is what evidentiary standard applies when a district court decides a motion to strike a claim for lack of standing following an evidentiary hearing under Supplemental Rule G(8)(c). Before the District Court, the Claimants argued that a motion to strike at an evidentiary

hearing must be resolved under the summary judgment standard in Rule 56 of
the Federal Rules of Civil Procedure. The District Court rejected that argument
and concluded that it could weigh evidence, make credibility determinations,
and resolve factual disputes based on a preponderance of the evidence standard
if it conducted an evidentiary hearing. The Claimants do not challenge this
aspect of the District Court's decision on appeal; indeed, they conceded to the
District Court and at oral argument before this Court that they must establish
standing by a preponderance of the evidence. *See* Supp. App'x 7–8; Oral Arg.
8:40–9:16. That issue is therefore waived. *See Schneiderman v. Am. Chem. Soc'y*,
172 F.4th 158, 165 n.3 (2d Cir. 2026).

Even if the issue were not waived, we agree with the District Court that
the Claimants bore the burden of proving standing by a preponderance of the
evidence at the evidentiary hearing. Supplemental Rule G(8)(c) identifies three
procedures for addressing standing: (1) "on the pleadings," (2) "by summary
judgment," or (3) "after a hearing." Supp. R. G(8)(c)(ii)(B); *see also* Supp. R.
G(8)(c)(ii) advisory committee's note to 2006 adoption. An "evidentiary hearing"
thus provides a separate procedure for evaluating standing that is appropriate
precisely when "a grant of summary judgment" is "preclud[ed]" because

"material facts are disputed." Supp. R. G(8)(c)(ii) advisory committee's note to 2006 adoption. So, "[i]f a threshold issue of Article III standing raises material fact disputes, including credibility issues, the district court may conduct an evidentiary hearing [to] resolve" those disputed facts. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003); *see All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) ("[I]f a genuine dispute of material fact exists [as to standing], the Court may conduct a hearing limited to Article III standing.").

In a forfeiture proceeding, as in other civil actions, the claimant's burden to establish standing changes at each successive stage of litigation. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012); *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A claimant can defeat a motion for summary judgment simply by adducing admissible evidence that creates a genuine dispute of material fact as to standing. But we require more of the claimant when the district court conducts a full evidentiary hearing on standing. At that point, the claimant bears the burden of proving standing by a preponderance of the evidence adduced. *See* Supp. R. G(8)(c)(ii)(B); *cf. Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("[T]he plaintiff must establish jurisdiction

8

by a preponderance of the evidence . . . at a pretrial evidentiary hearing.").  In

sum, "the fact that the claimant put forward enough evidence of ownership to

create a material issue of fact in opposition to a motion for summary judgment

does not mean that he will necessarily be able to establish his standing by a

preponderance of the evidence in an evidentiary hearing."  Stefan D. Cassella,

Asset Forfeiture Law in the United States § 9-3(b), at 463 (3d ed. 2022).

III

With the standard of proof established, we review the District Court's legal

conclusions relating to standing *de novo* and its factual findings for clear error.

*See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  "[B]efore a

claimant can be heard to contest a civil forfeiture claim, he must demonstrate

both Article III and statutory standing."  *United States v. Ross*, 161 F.4th 100, 109

(2d Cir. 2025).  To be sure, a claimant "need not prove the full merits of [their]

underlying claim" to demonstrate Article III standing.  *United States v.*

*$557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (citation

modified).  Rather, the claimant "need show only a facially colorable interest in

the property at issue."  *Ross*, 161 F.4th at 110 (citation modified).

9

The Claimants insist that they have made that basic showing. Their uncontested legal title in the *Amadea* alone, they say, constitutes a facially colorable interest sufficient to establish Article III standing. Not quite. Although "an owner of property seized in a forfeiture action will normally have standing to challenge the forfeiture," "it is the injury to the party seeking standing that remains the ultimate focus" of the standing inquiry. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999). "'[S]traw' owners who do indeed 'own' the property, but [who] hold title to it for somebody else," do not have Article III standing to contest the property's forfeiture because they "do not themselves suffer an injury when the property is taken." *Id.*; *see United States v. Premises & Real Prop. with Bldgs., Appurtenance & Improvements at 500 Del. St., Tonawanda, N.Y.*, 113 F.3d 310, 312 (2d Cir. 1997).

Here, the Government made a *prima facie* showing that the Claimants were mere straw owners. Once that *prima facie* showing was made, the Claimants were required to rebut it. The District Court correctly concluded that the Claimants' legal title to the *Amadea* did not itself establish standing to contest the *Amadea*'s forfeiture. *See United States v. JP Morgan Chase Bank Acct. No. Ending*

10

*8215*, 835 F.3d 1159, 1166 (9th Cir. 2016) (noting that "bare title, standing alone,"

does not suffice to confer standing to challenge a forfeiture).

The Claimants argue that they *did* present evidence of a facially colorable

interest in the *Amadea* beyond bare title.  They point to evidence that

Khudainatov commissioned the *Amadea* and that he and his family used the

*Amadea* before the September 2021 MOA became effective.  But the District Court

concluded, and the Claimants do not dispute on appeal, that Khudainatov and

his family stopped using the *Amadea* following the September 2021 MOA and

that none of Khudainatov's personal possessions were on the *Amadea* when it

was seized.  None of the Claimants' asserted connections to the *Amadea* before

the September 2021 MOA supports their claim of a facially colorable interest in

the *Amadea* after that date.

The Claimants also assert that they have a facially colorable interest

sufficient to confer standing because they remained involved in managing the

*Amadea* after the September 2021 MOA by maintaining insurance for the vessel.

But timing again works against the Claimants.  As the District Court pointed out,

the "Claimants offer[ed] no evidence that they made any insurance payments

*after* the September 2021 MOA was consummated," Spec. App'x 48 (emphasis

added), and it accordingly found that the Claimants did not bear any insurance or other costs for the *Amadea* after that date. That finding in turn fully supported the District Court's conclusion that the Claimants were straw owners after the September 2021 MOA. *See 500 Del. St.*, 113 F.3d at 312. The Claimants moreover failed to show that holding the insurance policy at the time of the seizure "established a continuing ownership interest in the property." *Id.*

Taking a different tack, the Claimants assert that the District Court impermissibly converted the threshold standing inquiry into a premature merits assessment of the *Amadea*'s ownership. We agree that "[c]ourts should not . . . conflate the constitutional standing inquiry with the merits determination that comes later." *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003). But here the District Court explicitly recognized as much when it explained that the Claimants "need not prove the full merits of [their] underlying claim" but instead need only show that they have "an interest in the property that goes beyond mere title." Spec. App'x 63–64 (citation modified). And "in order to resolve the jurisdictional question" of whether the Claimants had a facially colorable interest in the *Amadea* to establish Article III standing, the

12

District Court "did not need to resolve the ultimate merits question" of whether Kerimov is, as the Government alleges, the beneficial owner of the *Amadea. Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d Cir. 2019). That some evidence relevant to standing may also ultimately bear on the merits question of who owns the *Amadea* does not transform the threshold standing inquiry into an improper merits determination.

Finally, the Claimants challenge the District Court's exclusion of Khudainatov's declaration as hearsay. Relying on the more relaxed application of evidentiary rules at suppression and sentencing hearings, the Claimants argue that "judges in ancillary hearings can consider hearsay." Appellants' Br. 42. But unlike evidentiary hearings under Supplemental Rule G, suppression and sentencing hearings are by rule generally exempt from the Federal Rules of Evidence. *See* Fed. R. Evid. 104(a), 1101(d)(1), 1101(d)(3). The Claimants also assert that the District Court provided "no clear ruling" before the evidentiary hearing "as to whether [the Claimants] were allowed to establish any part of their case via declarations." Appellants' Br. 41. The record belies this assertion. The District Court issued an order in advance of the hearing stating that "[d]eclarations of the type Claimants seek to enter are not admissible because

13

they are hearsay." Dist. Ct. Dkt. No. 343 at 2. The District Court further stated

"that it [wa]s not inclined to consider a declaration at the evidentiary hearing if

the witness [wa]s neither presented live for cross-examination nor . . . made

available for deposition." *Id.* So, the Claimants had ample notice that

Khudainatov's declaration likely would be excluded as hearsay, and the District

Court's order to that effect was not error.[3]

IV

For the foregoing reasons, we **AFFIRM** the judgments of the District

Court.

---

[3] The Claimants argue for the first time in their reply brief that the District Court violated their due process rights by failing to clarify in advance of the evidentiary hearing whether it would be "proceeding in a summary judgment posture" or if it was "departing from the summary judgment realm altogether and proceeding more akin to a trial." Appellants' Reply Br. 17 (citation modified). But contrary to the Claimants' assertions, the District Court informed the parties that "[t]he upcoming evidentiary hearing on standing [would be] for purposes of resolving disputed factual issues, not to determine if summary judgment is appropriate, with respect to [the] Claimants' standing." Dist. Ct. Dkt. No. 343 at 1.